Marc Wolstenholme
5 Shetland Close
Coventry, England CV5 7LS
Telephone: 044 7827964404
Email: marc@mvwolf-fiction.co.uk
Plaintiff in Pro Per

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| MARC WOLSTENHOLME, | CASE NO. 2:25-CV-00053-FMO-BFM |
|---|---|
| Plaintiff, | HON. FERNANDO M. OLGUIN NOTICE OF ADR ATTEMPTS |
| vs. | |
| RIOT GAMES, INC., | FEBRUARY 13, 2025 |
| Defendant | |

Dated this: FEBRUARY 13, 2025

*M.WOLSTENHOLME*
[MARC WOLSTENHOLME]

NOTICE OF ADR ATTEMPTS

Evidence of Good Faith Negotiations

1
NOTICE OF ADR ATTEMPTS

1. **Introduction:**

I, Marc Wolstenholme, am the plaintiff in this matter, representing myself pro se. This declaration is to log my ADR attempts and my Evidence of Good Faith Negotiations, to submit additional evidence relevant to my claims against Riot Games, Inc. for copyright infringement, unfair competition, and intentional infliction of emotional distress. This shows that I have made attempts to mitigate costs and prove my reasonableness in a number of failed ADR attempts. These settlement offers demonstrate "good faith negotiations" under Federal Rule of Civil Procedure 68. The Alternative Dispute Resolution Act of 1998 (28 U.S.C. § 651), mandates courts to encourage ADR before full litigation, but Riot Games have consistently been unwilling to engage in ADR. Riot's outright refusal to negotiate supports the Plaintiff's claims for enhanced damages due to bad faith litigation tactics.

The Plaintiff is willing to engage in court-directed ADR if the court deems it beneficial.

# EMAIL FEBRUARY 13, 2025

***ADR attempts- Without prejudice save as to costs- Update.***

*External*

*Inbox*

*Marc Wolstenholme <marc@mwwolf-fiction.co.uk>*

*21:43 (1 hour ago)*

*to Aaron, dan.chang, Joshua, contact, andrew.gardner*

*Dear Aaron,*

*Thank you for a pleasant exchange in the conference today. It makes things easier.*

*I understand that Riot are extremely unlikely to settle at this point, but I'll make them an offer anyhow, I'm mapping a history of my ADR attempts.*

**Fourth Attempt- 13 February 2025.**

*1, My bottom end of negotiations is now 20 million British Pound Sterling.*

*2, Like the other offers, it will increase with every legal technicality attempted and with every step of proceedings I am forced to endure.*

*3, I still want a trip to LA to finalise, all paid for by Riot- you gotta love a freebie.*

*4, We can negotiate all over points.*

***Offer Expires February 28th, 2025.***

3

NOTICE OF ADR ATTEMPTS

My First Without prejudice save as to costs letter, Tue, 7 Dec 2021 at 22:26, would have settled things, and saved both parties a whole lot of trouble for what amounts to pocket change for Riot. When things go south, I can show I tried to limit the damage.

Many Thanks,

Marc Wolstenholme

**First Attempt- Tue, 7 Dec 2021 at 22:26.**

"My silent settlement proposal is for Riot to pay me £200,000 pound sterling for my work and my writing name (M.W. Wolf) to be added to the credits as a ghost-writer and thus I can add a writer involved in the source material of Arcane to my writing credentials."

**Second Attempt - 20/11/2024**

"Option A: The price of exposure.

1, Linke is exposed and fired, he makes a public apology for his fraudulent activities.

2, I am given credits as the true source material writer of Arcane.

3, I receive royalties for the next 100 years.

4, I am paid 10 million in English Pounds as damages.

5, I can speak about this IP infringement and the 4 open cases in public and in the media as I please.

*6, I'd quite like a free trip to Riot and LA out of this to settle and show no lingering ill will, all paid for by you- you gotta love a freebie.*

*7, I'm free to open whatever other cases I please against Linke, Netflix, Riot, Fortiche and anyone else that I wish.*

*Option B: The price of silence.*

*1, Linke keeps his position (If you wish to still harbour thieves) and is not exposed but he admits subconscious IP infringement after reading my manuscript of Bloodborg. You can say what you like, perhaps something like, "you looked back through the developmental material and found that my manuscript was being considered, thus this did amount to subconscious IP infringement, and you have taken the steps to correct it."*

*2, I am given credits (Not primary) as a collaborative writer of Arcane.*

*3, I receive lesser royalties for the next 100 years.*

*4, I am paid 100 million in English Pounds as damages.*

*5, I cannot speak about this IP infringement and the 4 open cases in public nor in the media.*

*6, I'd still quite like a free trip to Riot and LA out of this to settle and show no lingering ill will, all paid for by you- you gotta love a freebie.*

*7, I will not open any cases against you, or the other named people and organizations named or not named in connection to these 4 cases.*

*If we don't settle.*

5

NOTICE OF ADR ATTEMPTS

*1, I'm taking all Arcane and all of its profits.*

*2, I'm stripping out all traces of Arcane and everything in connection to it.*

*3, I now own the characters you have shoehorned into my narratives as they are fused.*

*4, I own all of your Lore as it has been backdated to fit Arcane.*

*5, I'll sue the hell out of who I want until the end of days and then some, with Linke at the very top of the list.*

*6, I'll involve whoever I like into these proceedings including a long list of actors, producers, companies and government agencies.*

*7, I'll snowball these four cases into 10 before the end of the year and I'll snowball those into wider global concerns and cases for the rest of my days to show how you have mistreated me."*

### *Third Attempt- 19/12/2024*

*"I'm feeling festive and forgiving, also, I have a lot of personal stuff and litigations finally being resolved in the new year. I want closure from all the negative stuff so that I can concentrate on writing and being a father.*

*Thus, a one time offer to settle quietly and swiftly.*

*The offer-*

*1, I am paid 10 million in English Pounds.*

*2, This payment is paid as compensation.*

*3, I'll sign your NDAs and never speak about this again.*

*4, You will not hear from me ever again and I'll remove all of the evidence and negativity towards Riot from my posts and documents and future plans.*

*5, I'd still quite like a free trip to Riot and LA out of this to settle and show no lingering ill will, all paid for by you- you gotta love a freebie.*

*6, I will not open any cases against you, or the other named people and organizations named or not named in connection to these 4 cases.*

*All done and dusted, settled and everyone can move on.*

*I have two very important UK cases on Jan 7th and Jan 8th 2025. After this the Riot Games cases will be top of my agenda.*

*Merry Christmas and Happy New Year."*

Despite my repeated efforts to limit damages and litigation costs, Riot has continued to escalate the legal process. During the Rule 26(f) Conference today (FEBRUARY 13, 2025) it was clear that Riot's legal representatives are still pushing to have the case kicked out on legal technicalities. Thise two main topics were what Riot referred to as "the issue of Access," which I believe I have already proven, and "the issue of Copyright registration," which has also already been covered, and the judge has already made the motion moot and terminated over this.

I'd like to remind Riot Games, if settlement is not reached, my legal approach will remain firm:

I will pursue full ownership of Arcane's rights and profits.

All disputed characters and lore elements will be legally contested.

Further legal actions will be initiated against involved parties, including individual executives, talent agencies, and production companies.

Additional government and regulatory bodies may be engaged.

My next legal steps will be based on Riot's response, or lack thereof, to this final preliminary settlement attempt. I trust that Riot's legal team will advise accordingly.

# LEGAL ARGUMENTS: "ACCESS" AND "COPYRIGHT REGISTRATION"

### I. The Issue of Access

*Legal Argument: Establishing Access to Plaintiff's Work*

Riot Games has argued that the Plaintiff cannot establish that the Defendants had access to Bloodborg: The Harvest or any other protected work prior to the development of Arcane. However, the Plaintiff has provided substantial evidence demonstrating that multiple entities and individuals involved in Arcane had direct or indirect access to the Plaintiff's work.

### A. Direct Access through Talent Agencies & Submissions

*Curtis Brown Group & United Talent Agency (UTA):*

The Curtis Brown Group (CBG) received the Plaintiff's manuscript in 2019 and 2020. CBG collaborated with United Talent Agency (UTA), which represented at least six of the top-billed voice actors in Arcane. Given CBG's direct involvement with Riot Games' talent procurement, it is highly probable that the manuscript was circulated within relevant circles, providing direct access to Riot.

Moreover, CBG are just one of many agencies who had access to the Bloodborg manuscript in full.

*Riot Forge & Manuscript Submissions:*

Riot Forge, Riot's publishing arm, received unsolicited submissions from authors for story development. This has been confirmed by Linke and Yee in Bridging the Rift, The Making of Arcane, and by Jane Hoffacker in a podcast. If Riot received the manuscript in any capacity, this constitutes direct access.

### B. Indirect Access through Industry Practices

*Common Industry Practices:*

Industry professionals frequently share creative materials during recruitment and pitching processes.

This includes writers, producers, and consultants, many of whom had access to third-party submissions.

*Executive & Writer Admissions:*

Jane Hoffacker, Executive Producer on Arcane, admitted that when they restarted production- before they didn't yet have the story- they reviewed many submitted manuscripts.

This confirms that externally submitted content was reviewed, further strengthening the case for access.

### C. Legal Precedent Supporting Access Claims

Courts have repeatedly found access where there is a reasonable possibility that the defendant encountered the plaintiff's work.

Three Boys Music Corp. v. Bolton, 212 F.3d 477 (9th Cir. 2000):

The court held that circumstantial evidence of access is sufficient, particularly when the defendant operates within the same industry as the plaintiff.

Gaste v. Kaiserman, 863 F.2d 1061 (2d Cir. 1988):

Established that proof of access does not require direct physical possession, but can be inferred when the plaintiff's work was widely disseminated.

Sheldon v. Metro-Goldwyn Pictures Corp., 309 U.S. 390 (1940):

Established that courts may find access where the defendant is connected to entities that received the plaintiff's work.

### D. Conclusion on Access

Given the overwhelming circumstantial and direct evidence, Riot Games had access to the Plaintiff's copyrighted material. Riot's attempt to dismiss the claim based on a lack of access is factually incorrect and legally unfounded. It also points at attempts to circumnavigate justice, to not have the case decided on its merits but on technicalities, even after the Judge has terminated these issues.

## II. The Issue of Copyright Registration

Legal Argument: Copyright Protection Without Registration

Riot's legal team has argued that the Plaintiff's claims should be dismissed due to copyright registration technicalities. However, this argument is moot, as the court has already ruled against it, and it is legally irrelevant to the Plaintiff's ability to enforce copyright protection.

A. Copyright Exists Upon Creation – Registration is NOT Required for Ownership

Under the U.S. Copyright Act of 1976, copyright automatically vests upon creation of an original work in a fixed, tangible medium.

17 U.S.C. § 102(a):

Provides protection for original works from the moment of fixation, meaning once a work is written or recorded, it is automatically copyrighted.

17 U.S.C. § 408:

States that registration is not a condition of copyright protection, but rather a procedural step required for filing an infringement lawsuit.

### B. Registration is Required for U.S. Lawsuits, but Plaintiff Has Already Met This Requirement

While registration is required to initiate litigation in the U.S. (per 17 U.S.C. § 411(a)), the Plaintiff has already fulfilled this requirement, making Riot's argument irrelevant.

Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC, 139 S. Ct. 881 (2019):

The Supreme Court confirmed that while registration is required before litigation, copyright protection exists from the moment of creation. Copyright is enforceable even if registration is still pending,

### C. Common Exceptions and Additional Protections

Foreign Copyright Protections (Berne Convention): International Copyright Protection

Berne Convention for the Protection of Literary and Artistic Works (1886)

The UK (where Bloodborg was created) and the U.S. (where Riot is based) are both signatories.

Under the Berne Convention, registration is not required for protection, thus Plaintiff's work is automatically protected worldwide. Riot cannot use the lack of registration as an excuse, since international law overrides domestic procedural rules in this case.

As a UK-based author, Plaintiff's work is automatically protected under the Berne Convention for the Protection of Literary and Artistic Works.

Under Article 5 of the Berne Convention, foreign authors do not need to register in the U.S. to enforce copyright claims.

UK Copyright Law Protections:

The Plaintiff's work is also protected under the UK Copyright, Designs and Patents Act 1988, which does not require registration.

This further invalidates Riot's claim, as UK law recognizes copyright protection without registration.

**Registration Processing Time is NOT a Defense**

Riot cannot claim a delay in registration invalidates the Bloodborg copyright.

The Plaintiff has filed a copyright application, and the U.S. Copyright Office allows lawsuits to proceed after registration is pending if the plaintiff requests expedited processing. Riot's use of this is perceived as a weak delay tactic, which will cause further harm to the Plaintiff. We could ask the court for a stay until registration is officially completed, but the case remains valid, and this would be a needless and harmful delay, without having any material benefit to the case.

**D. Riot's Argument is Legally Moot**

The court has already dismissed Riot's motion regarding copyright registration, making this issue no longer relevant to the proceedings, yet Riot's legal team pushed on this issue during the Rule 26(f) Conference today (FEBRUARY 13, 2025).

**Legal Argument: Copyright Registration Delay Does Not Invalidate the Bloodborg Copyright.**

*1. Riot's Argument is a Weak Delay Tactic*

Riot's attempt to use the pending copyright registration as a basis for dismissing or delaying the case is legally unfounded and amounts to a delay tactic. Under 17 U.S.C. § 411(a), a copyright infringement lawsuit may proceed once a registration application has been filed, provided that the work is registered before a final judgment.

The U.S. Supreme Court ruling in Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC, 139 S. Ct. 881 (2019) clarified that registration must be completed before filing an infringement lawsuit but does not require waiting for an official certificate if the application is in process.

The Copyright Act allows for expedited processing in cases of active litigation (which the Plaintiff has already pursued) to eliminate unnecessary delays.

*2. Riot Cannot Claim the Work is Unprotected*

Even if the copyright registration is pending, copyright protection exists the moment a work is fixed in a tangible medium, per 17 U.S.C. § 102(a). The Plaintiff's work, Bloodborg, was completed before Riot's infringing use, and evidence exists of its distribution and submission to Curtis Brown Group, many other agents, and Riot-related entities.

Copyright ownership does not depend on the timing of the registration, but rather the creation and fixation of the work.

Riot cannot claim they did not have access to the copyrighted work, as substantial evidence exists of its submission to parties involved in Arcane's development.

### 3. Asking for a Stay is Unnecessary and Harmful

Riot's suggestion to pause the case due to pending registration serves no legitimate purpose and only causes undue harm to the Plaintiff.

Courts have discretion to allow cases to proceed while copyright registration is pending, and delaying the case would further prejudice the Plaintiff.

### 4. Legal Citations Supporting Plaintiff's Position

Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC, 139 S. Ct. 881 (2019) – Establishes that a lawsuit may proceed once an application is filed, not when the certificate is issued.

17 U.S.C. § 411(a) – States that a registration is required before filing but does not require delay if the registration process is in motion.

17 U.S.C. § 102(a) – Confirms that copyright protection begins at the moment of fixation, not upon registration.

Katz v. Chevaldina, 900 F. Supp. 2d 1314 (S.D. Fla. 2012) – Courts can permit ongoing litigation while registration is pending, especially with expedited processing.

Roberts v. Gordy, 877 F.3d 1024 (11th Cir. 2017) – The absence of a certificate at the early stage does not prevent a court from considering infringement claims.

### 5. Conclusion

Riot cannot use pending registration as a reason for dismissal—the Plaintiff's copyright is still legally valid.

The U.S. Copyright Office permits expedited processing, ensuring the case is not unduly delayed.

Riot's arguments are frivolous and intended to obstruct rather than address the merits of the case.

The Plaintiff's claims stand on strong legal grounds, and Riot's continued delay tactics only strengthen the need for compensatory damages.

### Final Conclusion

Access: Riot Games and its affiliates had both direct and indirect access to the Plaintiff's copyrighted work. The evidence presented satisfies legal precedent for proving access in copyright cases.

Copyright Registration: Plaintiff's work is protected under U.S. and UK copyright law, and the registration argument is moot, as it has already been addressed by the court.

Thus, any further procedural delays by Riot Games using these arguments are frivolous and should not be entertained by the court.

**Declaration**

I, Marc Wolstenholme, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief. I submit this declaration to log my ADR attempts and my Evidence of Good Faith Negotiations, to submit additional evidence relevant to my claims against Riot Games, Inc. for copyright infringement, unfair competition, and intentional infliction of emotional distress. This shows that I have made attempts to mitigate costs and prove my reasonableness in a number of failed ADR attempts.

The Plaintiff, Marc Wolstenholme, M.W. Wolf.

Date: FEBRUARY 13, 2025

Signed: *M.WOLSTENHOLME.*