AARON J. MOSS (SBN 190625)
AMoss@ggfirm.com
JOSHUA M. GELLER (SBN 295412)
JGeller@ggfirm.com
ANDREW P. LUX (SBN 345915)
ALux@ggfirm.com
GREENBERG GLUSKER FIELDS CLAMAN &
MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067
Telephone:   310-553-3610
Facsimile:   310-553-0687

Attorneys for Defendant
Riot Games, Inc.

MARC WOLSTENHOLME
marc@mvwolf-fiction.co.uk
5 Shetland Close
Coventry, England CV5 7LS
Telephone: 044 7827964404

Plaintiff in Pro Se

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARC WOLSTENHOLME,<br><br>              Plaintiff,<br><br>       v.<br><br>RIOT GAMES, INC.,<br><br>              Defendant. | Case No. 2:25-cv-00053-FMO-BFM<br><br>*Hon. Fernando M. Olguin*<br><br>**JOINT RULE 26(F) REPORT**<br><br>Date: March 6, 2025<br>Time: 10:00 a.m.<br>Crtrm.: 6D |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

Not the Judge

The stuff highlighted in blue is what the Plaintiff has had to add in after the bullying tactics of Riot's legal team, who have engaged in unethical and deceitful practices making this report much longer than it should be. Then after being called out on their actions, they tried to finalize the report as they wanted it, without even asking me if I had finished. This was at 04:27 after I had stayed up all night with a sleeping disorder having to deal with their manipulation. I've been in the doctor's and chemist all afternoon because I missed medication because of these distractions. I need to sleep now so I'm getting it sent as they have not replied to me.

"Lux, Andrew

Attachments

04:27 (14 hours ago)

to Aaron, Joshua, me

Marc,

We agree to your revisions and consider the Rule 26(f) report final.  Please countersign and send back to us and we will file tomorrow.

Andrew"

Pursuant to the Federal Rules of Civil Procedure, Rule 26(f), the Local Rules for the Central District of California, Rule 26-1, and the Court's January 30, 2025, Order Setting Scheduling Conference (Dkt. 34), plaintiff Marc Wolstenholme ("Wolstenholme") and defendant Riot Games, Inc. ("Riot") submit the following Joint Rule 26(f) Report. The parties held a virtual meeting via Zoom to discuss these issues pursuant to Rule 26(f) on February 13, 2025.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

In light of Wolstenholme's *pro se* status and the unique circumstances of this case, the parties jointly request that the court conduct a hearing on the scheduling matters set forth in this report on the March 6, 2025, hearing date. As Wolstenholme currently resides in the United Kingdom, Riot is amenable to his request to appear remotely at the March 6, 2025, Scheduling Conference. In addition, as discussed below, the parties believe that this case would benefit from an early settlement conference before the Court.

## I.   **PROCEDURAL HISTORY**

On October 31, 2024, Wolstenholme filed a complaint against Riot for copyright infringement (direct and vicarious), unfair competition, and intentional infliction of emotional distress in the Superior Court for the County of Los Angeles. Dkt. 1, Exh. A. Because federal courts have exclusive jurisdiction over complaints alleging copyright infringement, Riot removed the action to this Court on January 3, 2025. Dkt. 1. On January 10, 2025, Riot filed a motion to dismiss under FRCP 12(b)(6) or, in the alternative, for a more definite statement under FRCP 12(e). Dkt. 7. Wolstenholme thereafter filed a First Amended Complaint ("FAC") on January 13, 2025. Dkt. 11.

On January 27, 2025, Riot filed a motion to dismiss Wolstenholme's FAC. Dkt. 19. Two days later, on January 29, 2025, Wolstenholme filed a motion for leave to amend the FAC (Dkt. 28) concurrently with filing a proposed Second Amended Complaint ("SAC"). Dkt. 27. On January 30, 2025, the Court denied Riot's Motion to Dismiss the FAC as moot in light of Wolstenholme's pending Motion for Leave to Amend. Dkt. 33. On February 18, 2025, the Court granted Wolstenholme's Motion for Leave to Amend. Dkt. 52. Riot understands that Wolstenholme has attempted to file a Second Amended Complaint, but that due to its volume, it has not yet been filed with CM/ECF, and so Riot has not yet had an opportunity to review the SAC. Wolstenholme has often to send Riot the SAC and exhibits, but they did not answer.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

## II.    STATEMENT OF CASE

### *Wolstenholme's Position*

Plaintiff Marc Wolstenholme is extremely concerned about A. Moss's bad conduct during the last-minute pressure, the manipulation of the document, placing words under the Plaintiff's position to fabricate his claims and subtly introducing a last-minute request for a security bond, and other legal traps aimed at causing harm. harassment and pressure, during the creation of this joint report. These tricks are low and unethical whilst the Plaintiff has agreed to stay up late into the night, with a sleep disorder, to finalize this report. This is direct bullying and exploitation of the Plaintiff's goodwill and vulnerabilities of a disadvantaged party to deliberately cause harm and pressure. This isn't just bad faith, it's criminal.

Plaintiff asserts claims for copyright infringement, unfair competition, and intentional infliction of emotional distress against Riot Games, Inc., alleging unauthorized use of his copyrighted work, Bloodborg: The Harvest, in the Netflix series Arcane and spin-off products, shows, merchandise and material. Wolstenholme contends that Riot Games obtained direct access to his manuscript via:

Widespread dissemination of his manuscript submissions (around 100 avenues listed in the Second Amended Complaint's EXHIBIT B- CHRONOLOGY OF WIDE DISSEMINATION AND ACCESS OF BLOODBORG: THE HARVEST.

Direct submission to Riot Forge's online submission portal who were soliciting narrative material (April 15 and April 19, 2020).

Submission to Curtis Brown Group (CBG), a subsidiary of United Talent Agency (UTA), which had substantial involvement in Arcane's development and an unusual monopoly of casting talent and screen time. Moreover, Jonny Geller and Felicity Blunt of CBG have long been suspected of Copyright Infringement of

Plaintiff's work, and UK investigations have been initiated.

Plaintiff contends Riot executives, including key decision-makers for Arcane, reviewed submissions, including Plaintiff's manuscript, and soliciting and reading manuscripts for Arcane is confirmed by both Showrunners and Jane Chung (Executive Producer).

Plaintiff further emphasizes that Riot's previous copyright registration defence is now moot following his formal copyright registration (Certificate TXu 2-470-268), effective February 14, 2025, under expedited processing.

Plaintiff further emphasizes that PLAINTIFF'S EXHIBIT U - COUNTERARGUMENTS AGAINST INDEPENDENT CREATION, shows that Arcane could not reasonably have been independently created, as it demonstrates thousands of striking similarities matching his work, personal trauma and medical records, Riot Games has a documented pattern of appropriating external material, Riot were soliciting and reading external material, for Arcane, Riot talked about not being able to make it work in Bridging the Rift, Riot's misleading and contradictory timelines and manipulation, and all of the backstories have been retconned.

Additionally, Plaintiff accurately predicted 42 out of 47 key plot points and narrative details of Arcane's second season based solely on Bloodborg, an 90% accuracy rate. Such a high correlation further underscores the Plaintiff's contention that Arcane substantially appropriated creative elements from Bloodborg. This level of accuracy significantly exceeds what could be reasonably attributed to coincidence or independent creation. That's without thousands of threads of evidence which have been analyzed and provided to the court.

Plaintiff acknowledges Riot's agreement to a settlement conference but strongly urges meaningful, good-faith participation. Plaintiff notes Riot's contradictory statements about settlement willingness, which Plaintiff interprets as

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

1   procedural posturing detrimental to Plaintiff's emotional well-being due to anxiety-

2   related impacts of litigation. Plaintiff warns that delays in settlement negotiations

3   will result in increased settlement demands reflective of continuing damages.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

Wolstenholme's Legal Argument:

Copyright Infringement and Access:

Access through Widespread Dissemination:

Three Boys Music Corp. v. Bolton, 212 F.3d 477, 482-83 (9th Cir. 2000) (holding widespread dissemination as sufficient circumstantial evidence of access).

Access through Intermediaries (Literary Agencies and Agents):

Art Attacks Ink, LLC v. MGA Entm't Inc., 581 F.3d 1138, 1143-44 (9th Cir. 2009) (affirming that intermediary access via third-party agents or talent agencies can support an inference of access).

Substantial Similarity and Independent Creation:

Skidmore v. Led Zeppelin, 952 F.3d 1051, 1069-70 (9th Cir. 2020) (en banc) (explaining the analysis of substantial similarity in copyright infringement claims).

L.A. Printex Indus., Inc. v. Aeropostale, Inc., 676 F.3d 841, 848 (9th Cir. 2012) (demonstrating how evidence of substantial similarity combined with access can rebut independent creation).

Plaintiff's Accurate Predictions (90% Accuracy):

Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp., 562 F.2d 1157, 1164 (9th Cir. 1977) (affirming that a high degree of similarity between

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

works strongly supports inference of copying rather than coincidence or independent creation).

Retconning as Evidence of Appropriation:

Sheldon Abend Revocable Trust v. Spielberg, 748 F. Supp. 2d 200, 206 (S.D.N.Y. 2010) (retconning original content to align with later infringed material can be indicative of copying rather than independent creation).

Copyright Registration Issue (Now Moot):

Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC, 139 S. Ct. 881, 892 (2019) (establishing the requirement of completed registration before litigation commencement).

17 U.S.C. § 411(a) (establishing registration requirement).

Plaintiff's valid expedited registration (TXu 2-470-268) now meets this requirement.

Discovery and Preservation of Evidence:

Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) (highlighting the duty of litigants to preserve evidence relevant to litigation, particularly electronic metadata and communications).

Insurance and Settlement Negotiations:

GREENBERG GLUSKER FIELDS CLAMAN<br>& MACHTINGER LLP<br>2049 Century Park East, Suite 2600<br>Los Angeles, California 90067

1    Federal Rule of Civil Procedure 26(a)(1)(A)(iv) (mandatory disclosure of

2    applicable insurance information).

3

4    In re General Motors LLC Ignition Switch Litigation, No. 14-MD-2543

5    (JMF), 2015 WL 221057, at *2 (S.D.N.Y. Jan. 15, 2015) (holding disclosure of

6    insurance coverage relevant for meaningful settlement negotiations).

7

8    Good Faith Settlement Participation:

9

10    Nick v. Morgan's Foods, Inc., 270 F. Supp. 2d 1135, 1139 (C.D. Cal. 2003)

11    (emphasizing parties' obligation to engage in settlement conferences in good faith,

12    not merely procedural formality).

13

14    Damages related to Emotional Distress from Litigation:

15

16    In Molien v. Kaiser Foundation Hospitals, the California Supreme Court

17    recognized that emotional distress damages are recoverable where the defendant's

18    conduct exacerbates preexisting psychological vulnerabilities. See Molien, 27 Cal.

19    3d at 930. Here, Plaintiff contends that Riot Games' unauthorized use of deeply

20    personal trauma themes from Bloodborg, without Plaintiff's consent, constitutes

21    reckless and extreme conduct likely to cause severe emotional distress.

22    Furthermore, Riot's bad faith legal maneuvers, including repeated delay

23    tactics, improper dismissals, and procedural arguments designed to frustrate

24    Plaintiff's ability to seek justice, have worsened the Plaintiff's emotional distress.

25    Courts have held that a pattern of oppressive litigation tactics may contribute to a

26    viable IIED claim. See Kiseskey v. Carpenters' Trust for S. Cal., 144 Cal. App. 3d

27    222, 230 (1983) (holding that oppressive litigation tactics intended to cause undue

28    hardship can support IIED claims).

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

However, Plaintiff's IIED claim extends beyond Riot's legal strategy. It also encompasses gaslighting, public taunting, and psychological abuse facilitated through Riot's corporate culture and the toxic online community it fosters. Riot Games has failed to take reasonable steps to prevent the hostile and abusive conduct of its community, employees, and affiliated parties, despite being aware of the ongoing harassment directed at Plaintiff.

Under Molien and related cases, Plaintiff's preexisting psychological vulnerabilities, which were exploited through the misappropriation of trauma themes and Riot's conduct, make the emotional distress inflicted on Plaintiff legally compensable.

Plaintiff asserts that because copyright infringement is the primary cause of action, the Intentional Infliction of Emotional Distress (IIED) claim and Unfair Competition claim (Cal. Bus. & Prof. Code § 17200) should be adjudicated only after the resolution of the copyright claim.

This approach is justified on several legal and procedural grounds:

IIED & Unfair Competition Are Dependent on the Copyright Claim

The IIED claim is rooted in the fact that Riot Games not only misappropriated Plaintiff's copyrighted work but also gaslit Plaintiff by embedding elements of their own misconduct into Arcane, taunting and misleading the Plaintiff.

The Unfair Competition claim similarly arises from Riot's unauthorized use of Plaintiff's intellectual property, which enabled Riot to gain a competitive advantage while causing harm to the Plaintiff's business and reputation.

Judicial Efficiency & Avoiding Premature Dismissal

Courts may be hesitant to rule on an IIED claim based on artistic misrepresentation or public discourse without first determining whether the underlying copyright infringement occurred.

By prioritizing the copyright claim, the court will establish whether Riot

unlawfully took protected elements from Bloodborg. If copyright infringement is found, it will substantiate the IIED and Unfair Competition claims, making them more difficult for Riot to dismiss under FRCP 12(b)(6).

The "Primary Rights" Doctrine in California Law

Under California's primary rights theory, a plaintiff may bring multiple causes of action, but if they arise from the same primary right (e.g., ownership over original work), courts typically address the root cause first. See Crowley v. Katleman, 8 Cal. 4th 666, 681 (1994).

Here, the primary right at issue is Plaintiff's exclusive right to their copyrighted material, making copyright the threshold question.

To ensure judicial efficiency and avoid prejudicing the case, the Plaintiff requests: Judicial notice that the IIED and unfair competition claims remain viable pending the outcome of the copyright ruling.

Legal Argument for Not Attaching the Manuscript to the Complaint

I. Plaintiff's Right to Protect Confidential Work

The Plaintiff is not required to attach the full manuscript of Bloodborg: The Harvest to the complaint, as doing so would:

Expose proprietary work to unauthorized access by individuals affiliated with Riot Games, including external legal teams, executives, and third parties who may misuse the document again.

Compromise the Plaintiff's control over his intellectual property, making it vulnerable to further unauthorized distribution or modification.

Under Federal Rule of Civil Procedure 8(a), a complaint must only provide sufficient factual allegations to state a claim, not full evidence. The manuscript is not necessary at this stage and should only be disclosed in a controlled discovery process with protective measures in place.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

II. Legal Precedent & Protective Measures for Copyrighted Works

Courts recognize that full disclosure of a copyrighted manuscript is not required at the pleading stage. Instead, courts allow controlled disclosure under protective orders during discovery.

Golan v. Gonzales, 501 F.3d 1179 (10th Cir. 2007) – The court recognized an author's interest in protecting their unpublished or limited-distribution works from potential exploitation.

Harper & Row v. Nation Enterprises, 471 U.S. 539 (1985) – The Supreme Court ruled that unauthorized use or premature exposure of a literary work constitutes a significant threat to the author's control over their intellectual property.

Federal Rule of Civil Procedure 26(c)(1)(G) – Allows courts to issue protective orders to limit access to confidential business information, including literary works.

Thus, Plaintiff is fully within his rights to withhold the manuscript from general court filings and limit access only to necessary parties under strict protective measures.

III. Precedent for Summarizing Work Instead of Full Attachment

Instead of filing the manuscript, Plaintiff has:

Provided extensive descriptions of the work in the complaint and exhibits.

Cited thousands of detailed comparisons between Bloodborg and Arcane.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

1  Filed a copyright registration (TXu 2-470-268), proving legal ownership.

2

3  Courts have accepted this approach in prior copyright cases:

4

5  Three Boys Music Corp. v. Bolton, 212 F.3d 477 (9th Cir. 2000) – Copyright

6  ownership can be proven without submitting the full work at the initial pleading

7  stage.

8

9

10  Bright Tunes Music v. Harrisongs Music, 420 F. Supp. 177 (S.D.N.Y. 1976)

11  – Courts ruled that detailed allegations of similarity were sufficient for an initial

12  complaint, and full materials could be disclosed later under a protective order.

13

14  Thus, Plaintiff's approach, describing and extensively quoting, but not

15  attaching the manuscript, is legally valid and strategically sound.

16

17  IV. Controlled Access Through Discovery & Protective Orders

18  If the court requires Riot Games to access Bloodborg, Plaintiff requests the

19  following safeguards under Federal Rule of Civil Procedure 26(c):

20

21  Protective Order – Limiting access only to Riot's outside counsel and

22  experts, not employees, executives, or third-party agents.

23  View-Only Format – Riot's counsel may review the manuscript in a secure

24  setting without digital or physical copies being distributed.

25  Prohibition on Internal Use – Riot must not use the manuscript for any

26  business, creative, or developmental purposes beyond litigation.

27  Sealing of Documents – Any filing containing manuscript excerpts must be

28  filed under seal to prevent public access.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

1    This ensures that Riot does not gain further unauthorized access to Plaintiff's

2    intellectual property while still complying with legal procedures.

3

4    V. Conclusion – Plaintiff is Not Required to Attach the Manuscript

5    There is no legal obligation to attach the manuscript at the pleading stage.

6    Plaintiff has sufficiently described the work and provided evidence of

7    ownership.

8    Courts favor protective measures for sensitive intellectual property,

9    especially against parties accused of misuse.

10    If required, disclosure should occur only under strict protective conditions.

11    Thus, Plaintiff will not attach the manuscript to the complaint and will only provide

12    controlled access during discovery under a protective order to prevent misuse by

13    Riot Games.

14

15    **_Riot's Position_**

16    Riot denies each of Wolstenholme's claims. With respect to Wolstenholme's

17    copyright infringement claims, Riot contends that *Arcane* was created entirely

18    independently of, and without reference to, "Bloodborg: The Harvest." Riot denies

19    that it had access to Wolstenholme's manuscript, and has not seen the manuscript to

20    this day, as Wolstenholme has not attached it to his complaint. Riot also denies that

21    Wolstenholme's manuscript was widely disseminated at any point. In addition,

22    Riot contends that Wolstenholme has not plausibly alleged substantial similarity

23    between *Arcane* and any protectable elements appearing in "Bloodborg: The

24    Harvest," and that the works are not substantially similar as a matter of law. Even

25    if Wolstenholme could establish access and substantial similarity, Riot contends

26    that his claims will still fail because *Arcane* was independently created, which is an

27    absolute defense to Wolstenholme's claims. Riot also contends that

28    Wolstenholme's claim for vicarious infringement fails because his underlying

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

claims for direct infringement fail.  With respect to Wolstenholme's claim for unfair competition, Riot contends that this claim is preempted by the Copyright Act.  Riot contends that Wolstenholme's claim for intentional infliction of emotional distress is barred by the statute of limitations, barred by the litigation privilege, and that Wolstenholme fails to allege any sufficiently outrageous or otherwise actionable conduct as a matter of law.

## III.  <u>SUBJECT MATTER JURISDICTION</u>

This Court has exclusive jurisdiction over all actions arising under the Copyright Act.  28 U.S.C. § 1338(a).  Wolstenholme asserts that the court has supplemental jurisdiction over his claims for unfair competition and intentional infliction of emotional distress.  28 U.S.C. § 1367.

## IV.  <u>LEGAL ISSUES</u>

The Riot identify the following key legal issues:

1. Whether Riot had access to "Bloodborg: The Harvest"; (Plaintiff has proven they did)

2. Whether *Arcane* and "Bloodborg: The Harvest" are substantially similar in their protectable elements;

3. Whether Riot independently created *Arcane*; and

4. Whether and to what extent Wolstenholme is entitled to damages or other relief.

Wolstenholme identifies the following additional issues:

5. The Plaintiff believes that the above legal issues of Riot are Moot as he has proved: thousands of substantial similarities, access and that Arcane could not have been independently created.

6. A. MOSS's conduct should be addressed by the court.

7. Full discovery of all involved in Arcane

8. Whether wider violations and complaints need to be raised.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

9.  Whether criminal procedures should follow.

## V.    PARTIES AND EVIDENCE

Plaintiff: Marc Wolstenholme is an individual who resides at 5 Shetland Close, Coventry, England, CV5 7LS.

Defendant: Riot Games, Inc., is a Delaware corporation headquartered in Los Angeles, California, and operates as a wholly-owned subsidiary of Tencent Holdings, Ltd.

**Wolstenholme's Statement of Key Relevant Evidence and Witnesses:**

Plaintiff's submissions and communications evidencing dissemination and access by Riot Games, Riot Forge, and associated literary agencies (Curtis Brown Group, Austin Macauley Publishers, and others).

Riot Games' internal development documents, scripts, storyboards, mood boards, and communications regarding the creation of Arcane, especially from the period between 2018 and 2021.

Evidence of revisions made to the scripts, maps, and visual materials of Arcane, particularly those made after Riot had direct or indirect access to Bloodborg: The Harvest.

Deposition testimony from Arcane's writers, producers, animators, voice actors, and staff involved in narrative and character development, as well as external agencies and talent representatives.

Financial records and agreements related to Riot's dealings with literary and talent agencies, especially UTA and Curtis Brown Group.

The Plaintiff's detailed breakdown of all of Arcane, exhibits A through U have been added to the SAC and many more will follow.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

1    Plaintiff's checklist of discovery added to this Joint report.

2

3

4    Corporate Structure: Riot Games, Inc. is a Delaware corporation

5    headquartered in Los Angeles, California, and is a wholly owned subsidiary of

6    Tencent Holdings, Ltd.

7

8    Key Evidence: Critical evidence includes but is not limited to:

9

10    Plaintiff's U.S. Copyright Registration Certificate for Bloodborg: The

11    Harvest.

12    Plaintiff's submissions of Bloodborg to Riot Forge (April 2020), and many

13    others, which directly provided Riot Games with access to Plaintiff's manuscript.

14    Documents evidencing the timing and nature of revisions made to Arcane's

15    scripts and settings, particularly post-April 2020, which align closely with

16    submissions of Bloodborg.

17    Detailed comparative analyses between specific elements from Bloodborg

18    and substantially similar elements found in Arcane.

19    Testimonies or declarations from Plaintiff and Riot personnel regarding the

20    creation and development processes of the works.

21    Importance of Evidence: The identified evidence will demonstrate Riot

22    Games' direct or indirect access to Plaintiff's manuscript and establish substantial

23    similarities that are quantitatively and qualitatively significant enough to invalidate

24    Riot's anticipated defense of independent creation.

25

26

27

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

1    At this time, Wolstenholme identifies the following potential percipient

2  witnesses:

3

4    *Primary Witnesses (Direct Involvement in Arcane Production)*

5

6    Nicolo Laurent (Former CEO of Riot Games, Greenlit the show)

7    Christian Linke (Showrunner, Arcane)

8    Alex Yee (Showrunner, Arcane)

9    Jane Chung Hoffacker (Executive Producer, Arcane)

10    Melinda Dilger (Global Head of Animation Production, Riot Games)

11    David Lyerly (Casting Director, Riot Games, conflicting timelines)

12    Monica Macer (Consulting Producer, Arcane)

13    Rowan Parker (Director of Riot Forge)

14    Alexis Wanneroy (Animation Supervisor at Fortiche Productions).

15    Amanda Overton (Writer, Arcane)

16    Alex Seaver (Music Composer, Riot Games/Fortiche)

17    Barthelemy Maunoury (Fortiche, Technical Production)

18    Kathy Cavaiola (Script Coordinator and VOManager)

19

20

21    *Actors & Voice Talent (Statements Regarding Arcane's Development)*

22

23    Ella Purnell (Jinx, represented by Curtis Brown Group, talks about things

24  exclusive to Bloodborg and work beginning during covid- mid 2020)

25    Katie Leung (Caitlyn, represented by Curtis Brown Group)

26    Harry Lloyd (Viktor, represented by Curtis Brown Group)

27    Hailee Steinfeld (Vi, represented by UTA)

28    Jason Spisak (Silco, represented by UTA, provided insight into Arcane's

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

late-stage script changes and recording process)

Kevin Alejandro (Jayce, represented by UTA)

Reed Shannon (Ekko, conflicting casting timelines)

Mia Sinclair Jenness (Powder, conflicting recording timelines)

JB Blanc (Vander, statements about late-stage script changes)

Katy Townsend (worked during Covid restrictions)

Toks Olagundoye (Proof of late 2020 recordings)


*Agency Representatives (Curtis Brown & UTA - Key Links to Riot)*


Johnny Geller (Curtis Brown Group - Received Plaintiff's Manuscript)

Felicity Blunt (Curtis Brown Group - Received Plaintiff's Manuscript)


*UTA Representative (Involved in talent representation for Arcane)*


Legal & Administrative Personnel (Litigation-Related)

Aaron Moss (Attorney, Greenberg Glusker, Riot's Legal Team)

Andrew Lux (Attorney, Greenberg Glusker, Riot's Legal Team)

Josh Geller (Attorney, Greenberg Glusker, Riot's Legal Team)


Plaintiff disputes Riot's assertion that only Wolstenholme, Linke, and Yee are

relevant witnesses, emphasizing the importance of testimony from a broader range

of key individuals involved in Arcane's creation and development.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

**Riot's Statement of Key Relevant Evidence and Witnesses:**

Riot anticipates that key relevant evidence will include Wolstenholme's manuscript "Bloodborg: The Harvest," Riot's television series Arcane, as well as documents and testimony concerning alleged Riot's alleged access to the manuscript and substantial similarity.

At this time, Riot identifies the following potential percipient witnesses:

1. Marc Wolstenholme;

2. Christian Linke;

3. Alex Yee

4. Corporate representative of Riot to address the operation and cessation of Riot Forge, its submissions policies and practices, if any, and other information pertinent to access.

## VI.    INSURANCE

Riot has an insurance policy that may cover Wolstenholme's claims, subject to a retention (deductible) that has not yet been satisfied.  Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(iv), Riot will produce for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

**Wolstenholme's Position**

Plaintiff requests disclosure from Riot regarding its insurance coverage potentially applicable to claims, including:

The full insurance policy and relevant sections.

Policy limits and retention (deductible) information.

Communications between Riot and insurers regarding coverage for this

litigation.

Riot's notification to insurers and insurers' participation in defense strategy and settlement discussions.

Plaintiff argues that the existence of insurance contradicts Riot's stated unwillingness to settle and insists Riot disclose relevant insurance details immediately to facilitate meaningful settlement discussions.

## VII.  **MAGISTRATE JUDGE**

Plaintiff does NOT consent to a magistrate judge and requests that all proceedings remain before the assigned district judge for consistency, reliability and to aid his disclosed vulnerabilities and disabilities, to prevent further disadvantages.

## VIII.  **DISCOVERY**

Pursuant to Rules 26(f)(2) and 26(f)(3), Local Rule 26-1(f), and the Court's Order Setting Scheduling Conference (Dkt. 34), the parties discussed a potential discovery plan, and whether discovery should be conducted in phases or be limited to or focused on particular issues.

### ***Wolstenholme's Position***

Wolstenholme has provided a checklist of which he plans to push discovery for. The plaintiff anticipates conducting full and wide discovery on all matters including written discovery and depositions into the legal issues discussed above relating to Riot's alleged infringement and potential damages. In particular, Wolstenholme anticipates conducting discovery on the following issues:

(a)     The role of Curtis Brown Group and United Talent Agency (UTA) in the development of Arcane.

(b) The full timeline of Arcane's development, including script revisions and internal communications regarding manuscript reviews.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

(c) Evidence of submitted manuscripts, including Riot's handling of third-party literary submissions from 2018-2024.

(d) Riot's internal communications regarding narrative development, character creation, and thematic direction.

(e) Financial agreements related to Riot's engagement with talent agencies, including Curtis Brown Group and UTA, and potential "quid pro quo" arrangements related to cast selection.

(f) Statements from all cast members and behind the scenes members of Arcane.

(g) Riot Forge servers Metadata.

(h) Statements from all Fortiche Production SAS employees who worked on Arcane, and evidence of the development of Arcane, including storyboard development and all production steps.

The plaintiff has provided a wider checklist of Discovery, added as an exhibit.

The Plaintiff does not agree to limiting discovery nor bifurcation and states that this case should be conducted and concluded on its merits without favor or limitations, and any restrictions are attempts at circumnavigating the law and processes at the expense of justice.

Furthermore, the Plaintiff asserts that his SAC and the exhibits A-U close the arguments of: Access, Copyright Registration and Independent Creation and to keep reverting back to these issues is a waste of the court's, and the Plaintiff's, time and resources. These are perceived to be delay tactics.

Legal Citations to support Discovery:

Scope and General Right to Broad Discovery:

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

Federal Rule of Civil Procedure 26(b)(1) (establishing broad scope of permissible discovery to include any nonprivileged matter relevant to claims or defenses).

Hickman v. Taylor, 329 U.S. 495, 507 (1947) (emphasizing the liberal policy favoring broad discovery).

Opposition to Bifurcation and Limitations on Discovery:

Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1021 (9th Cir. 2004) (affirming broad discretion of the court in managing discovery, generally favoring comprehensive discovery absent clear justification for bifurcation).

In re Cathode Ray Tube (CRT) Antitrust Litig., 281 F.R.D. 531, 532-33 (N.D. Cal. 2012) (denying motion to bifurcate discovery, citing inefficiency and potential prejudice).

Duty to Preserve Evidence and Metadata Discovery:

Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 217-18 (S.D.N.Y. 2003) (establishing standard for preservation of electronic discovery, including server metadata).

Federal Rule of Civil Procedure 34(a)(1)(A) (allowing discovery of electronically stored information, including metadata).

Discovery into Third-Party Communications and Financial Agreements:

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) (allowing discovery of third-party agreements and financial documents if reasonably calculated to lead to the discovery of admissible evidence).

Seattle Times Co. v. Rhinehart, 467 U.S. 20, 30 (1984) (recognizing that discovery can reach financial arrangements and third-party relationships where relevant to the claims).

Discovery Related to Narrative Development and Creative Process:

Metcalf v. Bochco, 294 F.3d 1069, 1075 (9th Cir. 2002) (affirming discovery related to the development and revision process of allegedly infringing works).

Depositions and Witness Statements:

Federal Rule of Civil Procedure 30(a)(1) (permitting depositions of parties and witnesses without leave of court).

Federal Rule of Civil Procedure 26(a)(3)(A)(i) (requiring identification of individuals likely to have discoverable information).

Rejection of Repetitive or Delaying Tactics:

Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1368 (11th Cir. 1997) (criticizing tactics intended to delay discovery or unnecessarily prolong litigation).

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

1     In re Phenylpropanolamine (PPA) Prod. Liab. Litig., 460 F.3d 1217, 1227

2  (9th Cir. 2006) (discouraging repetitive litigation tactics as wasteful of judicial

3  resources).

4

5     These citations support Plaintiff's stance on comprehensive and thorough

6  discovery, opposition to bifurcation, the importance of evidence preservation, and

7  preventing delay tactics.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

### Riot's Position

Riot anticipates conducting written discovery and depositions into the legal issues discussed above relating to access, substantial similarity, and damages. However, Riot anticipates filing a motion to bifurcate discovery to allow an initial phase as to access, with all other discovery stayed pending further order of the Court, and to permit Riot to file an initial motion for summary judgment limited to the potentially dispositive issue of access, without prejudice to Riot filing a second motion for summary judgment as to other issues after the close of remaining discovery should the initial motion be denied. *See Changing World Films LLC v. Parker*, No. CV 22-9021-DMG (PVCX), 2024 WL 4744006, at *2 (C.D. Cal. Mar. 12, 2024) (Gee, J.) (finding bifurcation on the issue of access would promote efficiency as a discrete and dispositive issue that "will save significant time and resources for both sides.").

### Wolstenholme's Additional Concerns Regarding Discovery:

Wolstenholme objects to Riot's attempt to bifurcate discovery by limiting the initial scope to the issue of "access." Wolstenholme maintains that discovery should proceed on all issues simultaneously, including substantial similarity and damages.

Wolstenholme also raises concerns about data retention, given that Riot Forge has been shut down and key personnel have left Riot during these proceedings. Wolstenholme contends that there is a substantial risk that relevant documents may be deleted or altered, which Wolstenholme asserts is an ongoing pattern of timeline manipulation by Riot.

### Riot's Response to Wolstenholme's Additional Concerns:

Riot informed Wolstenholme during the Rule 26(f) conference that Riot has taken and continues to take all necessary steps to preserve potentially relevant information.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

1  IX.    **INITIAL DISCLOSURES**

2          Wolstenholme proposes that the parties exchange initial disclosures by

3  March 20, 2025.  Riot objects to an initial disclosure deadline that deviates from

4  FRCP 26(a)(1)(C), which provides that the parties "must make the initial

5  disclosures at or within 14 days after the parties' Rule 26(f) conference unless a

6  different time is set by stipulation or court order."  Riot will make its initial

7  disclosures in conformity with the time period set forth in FRCP 26(a)(1)(C).

8

9  X.    **MANUAL FOR COMPLEX LITIGATION**

10         The parties agree that the procedures set forth in the Manual for Complex

11 Litigation do not apply to this case at this point.

12         Wolstenholme's Additional Comments:

13         Wolstenholme contends that should concurrent criminal proceedings or

14 additional charges be introduced, Plaintiff believes specialized management

15 procedures outlined in the Manual for Complex Litigation (Fourth) may become

16 applicable. Plaintiff respectfully requests the Court's guidance on whether adopting

17 these procedures would promote efficient and effective case management.

18         Wolstenholme contends:

19         *Complexity indicators:*

20         International aspects (Plaintiff based in the UK, Defendant in the US).

21         Potentially extensive discovery, especially electronic discovery and metadata

22 analysis.

23         Depositions involving high-profile witnesses and significant third-party

24 involvement (literary agencies, talent agencies, production companies, actors).

25         Potential for intricate legal arguments on independent creation, substantial

26 similarity, and damages analysis.

27

28

Plaintiff's mental health vulnerabilities, including dyslexia, Complex PTSD, anxiety, and related disabilities, which may impact case management and procedural considerations.

Defendant's bad faith and worrying history of dishonesty and IP misappropriation.

## XI.   PROPOSED CASE SCHEDULE

Pursuant to Local Rule 26-1(f), the parties discussed a proposed case schedule.  Their respective positions are set forth below.

***Wolstenholme's Proposed Case Schedule***:

Wolstenholme believes that discovery should commence on May 1, 2025 and that all other dates, including motion deadlines and trial dates, may be set by the Court as it sees fit.

***Riot's Proposed Case Schedule***:

As discussed above, Riot proposes a bifurcated schedule, focusing first on access, and then (if necessary) on the balance of the issues in the case.  In the event the that the case is not dismissed in its entirety and the Court grants Riot's Motion to Bifurcate, Riot proposes the following schedule:

| Event | Date |
|---|---|
| Last Day for Early Mandatory Settlement Conference | May 16, 2025 |
| Close of Fact Discovery on Access | June 6, 2025 |
| Summary Judgement Deadline re Access | July 18, 2025 |
| Summary Judgment Opposition re Access | August 8, 2025 |
| Summary Judgment Reply re Access | August 29, 2025 |
| Summary Judgment Hearing re Access | As set by the Court |

Should the Court deny Riot's Motion to Bifurcate, or alternatively grant Riot's Motion to Bifurcate but deny Riot's Motion for Summary Judgment regarding access, Riot's proposes the following schedule, taking into account the

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

fact that, absent bifurcation, this case will be costly and time-consuming to litigate. While the issue of access would be limited to discovery of just two or three percipient witnesses and a limited time period, more expansive fact discovery would be needed on the other issues in the case—including substantial similarity, independent creation, secondary liability and damages.  Significant expert discovery may be needed for the substantial similarity inquiry, whereas no experts would be needed for the access issue.  It is unrealistic to conduct this voluminous discovery on the truncated schedule proposed by Wolstenholme:

| Event | Date |
|---|---|
| Non-Expert Discovery Cut-Off (includes hearing of discovery motions) | February 6, 2026 |
| Initial Expert Disclosures and Reports | February 27, 2026 |
| Rebuttal Expert Disclosures and Reports | March 20, 2026 |
| Close of Expert Discovery | April 20, 2026 |
| Dispositive Motion Cut-Off (filing deadline) | May 11, 2026 |
| Dispositive Motion Oppositions | June 1, 2026 |
| Dispositive Motion Replies | June 22, 2026 |
| Last Day to File Motions *in Limine* | August 26, 2026 |
| Opposition to Motions *in Limine* | September 2, 2026 |
| Final Pretrial Conference | September 16, 2026 |
| Trial Date | October 19, 2026 |

## XII.   MOTIONS TO AMEND OR TRANSFER

At this time, Riot Games does not anticipate any motions seeking to add other parties or claims or transfer venue.  On January 29, 2025, Wolstenholme filed a Motion for Leave to File a SAC (Dkt. 28).  Riot filed its Opposition to Wolstenholme's Motion for Leave to Amend on February 5, 2025. Dkt. 36.  On

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

February 18, 2025, the Court granted Wolstenholme's Motion for Leave to Amend. Dkt. 52.

The Plaintiff may file a motion to compel early discovery so Riot cannot use ADR to block evidence collection. The Plaintiff requests that any ADR delays do not pause case deadlines.

Motion to Strike Riot's Security Bond Request (FRCP 12(f))

This formally removes Riot's improper security bond request from the Rule 26(f) Report.

FRCP 12(f) allows courts to strike "redundant, immaterial, impertinent, or scandalous matter" from filings.

Riot included the bond request improperly in the Rule 26(f) Report without proper notice, subtly without highlighting or telling the Plaintiff, at midnight. The Suzhou Angela case Riot cites is not applicable to an individual U.S. copyright holder. Plaintiff has a registered U.S. copyright, and a bond request is not justified in a case with extensive evidence. Relief Sought: Strike Riot's request for a security bond from the court record. Prevent Riot from reintroducing this argument without a formal motion. Issue an order stating that the case is not frivolous and should proceed on the merits.

Given A. Moss's continued abusive conduct, and Riot's pattern of continued bad faith, after already causing 3 years of intimidation and delay, the Plaintiff seeks a Motion for Sanctions for Litigation Misconduct (FRCP 11 & 37)

To penalize Riot for bad faith legal tactics and seeks monetary or procedural relief.

Rule 11 – Sanctions for frivolous filings and bad faith arguments.

Rule 37 – Sanctions for abuse of discovery process and misconduct.

Riot's attempt to introduce a security bond request at the last minute without notice is bad faith conduct. Riot has a pattern of procedural maneuvers to delay and intimidate, rather than argue the merits. Riot's improper "frivolous case" argument

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

is unsupported by law and intended to suppress a valid copyright claim.

Relief Sought: Monetary sanctions against Riot for filing improper procedural arguments. Striking any reference to security bonds or "frivolous case" claims from the record. An order requiring Riot to disclose procedural motions in advance, preventing surprise tactics.

In Wolstenholme's SAC, he has listed POTENTIAL ADDITIONAL CLAIMS, as stated:

The Plaintiff reserves the right to amend this complaint to include additional causes of action as discovery progresses. At this time, the Plaintiff is considering, but has not yet formally filed, additional claims for:

1. Fraudulent Misrepresentation (Cal. Civ. Code § 1709)

2. Misappropriation of Trade Secrets (Cal. Civ. Code § 3426)

3. Unjust Enrichment (Common Law)

4. Fraudulent Inducement (Cal. Civ. Code § 1572)

5. False Designation of Origin (Lanham Act - 15 U.S.C. § 1125(a))

6. Negligent Infliction of Emotional Distress (NIED) (Cal. Civ. Code § 1714)

7. Civil Conspiracy to Commit Fraud (Common Law)

8. Disability Discrimination & Retaliation (ADA - 42 U.S.C. § 12101)

9. Spoliation of Evidence (Cal. Code of Civ. Proc. § 2023.030)

10. Unfair Business Practices (Cal. Bus. & Prof. Code § 17200)

11. Assortment of other civil and criminal claims around the globe, predominantly in the UK and Europe, including claims against Fortiche, claims of violations under The European Convention on Human Rights (ECHR) and criminal proceedings.

These claims are currently being evaluated based on the Defendant's conduct and may be formally added through an amended complaint as these cases progress, if warranted. The Plaintiff will continue to assess Riot Games' actions, including

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

1   potential fraudulent misrepresentation and violations of trade secret protections, and

2   additional harm caused, before finalizing these claims.

3

4   **XIII.  CLASS CERTIFICATION**

5       The parties agree that a class certification is inapplicable.

6   **XIV.  DISPOSITIVE MOTIONS**

7       Riot anticipates filing a motion to dismiss Wolstenholme's SAC on the

8   grounds that, *inter alia*, Wolstenholme has (1) failed to plausibly allege that Riot

9   had access to his work; and (2) failed to plausibly allege substantial similarity of

10  any protected expression.  Riot also anticipates filing motions for summary

11  judgment on issues including access, substantial similarity, and independent

12  creation.

13

14  **Plaintiff's Response to Defendant Riot Games, Inc.'s Anticipated**

15  **Dispositive Motions**

16

17      Plaintiff Marc Wolstenholme hereby provides his preliminary response to

18  Riot Games, Inc.'s anticipated dispositive motions as stated in the Joint Rule 26(f)

19  Report:

20

21      2. Response to Motion to Dismiss on Access

22

23      Plaintiff asserts substantial evidence supporting Riot's access to his

24  manuscript, Bloodborg: The Harvest, including:

25

26      Direct Submission Evidence: Plaintiff directly submitted his manuscript to

27  Riot Forge's narrative portal on April 15 and April 19, 2020.

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

1    Third-party Agency Submissions: Plaintiff's manuscript was submitted

2  through Curtis Brown Group (CBG), a subsidiary of United Talent Agency (UTA),

3  agencies deeply involved in Arcane's casting and production. Plaintiff will present

4  testimony and documentary evidence supporting these claims during discovery.

5

6    Widespread Dissemination: Approximately 100 avenues of dissemination,

7  documented explicitly in Plaintiff's Second Amended Complaint, substantiate the

8  reasonable probability of Riot's access.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

1

Supporting Citations:

2

3      Three Boys Music Corp. v. Bolton, 212 F.3d 477, 482-83 (9th Cir. 2000).

4

5      Art Attacks Ink, LLC v. MGA Entm't Inc., 581 F.3d 1138, 1143-44 (9th Cir.

6      2009).

7

8      3. Response to Motion to Dismiss on Substantial Similarity

9

10     Plaintiff maintains that substantial similarity between Bloodborg and Arcane

11     significantly surpasses the threshold required for plausible infringement claims.

12     Plaintiff's Exhibits A-U clearly illustrate detailed, unique, and complex similarities

13     between both works, significantly exceeding coincidental similarity or genre tropes.

14

15     Supporting Citations:

16

17     Skidmore v. Led Zeppelin, 952 F.3d 1051, 1069-70 (9th Cir. 2020).

18

19     Metcalf v. Bochco, 294 F.3d 1069, 1075 (9th Cir. 2002).

20

21     4. Response to Motion for Summary Judgment

22

23     Should Riot move for summary judgment on issues including access,

24     substantial similarity, or independent creation, Plaintiff anticipates presenting

25     compelling factual evidence obtained through discovery, depositions, internal

26     communications, and expert analysis, demonstrating:

27

28     Documented timelines, internal communications, and manuscript

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

submissions directly refuting independent creation claims.

Expert analysis comparing character arcs, thematic elements, plot points, and trauma-writing techniques.

Detailed metadata and third-party communications confirming Riot's receipt and review of Plaintiff's manuscript submissions.

Supporting Citations:

Federal Rule of Civil Procedure 56(d) (allowing time for discovery to adequately respond to summary judgment).

L.A. Printex Indus., Inc. v. Aeropostale, Inc., 676 F.3d 841, 848 (9th Cir. 2012).

Metcalf v. Bochco, 294 F.3d 1069, 1075 (9th Cir. 2002).

Plaintiff firmly believes Riot's anticipated dispositive motions lack merit and urges the court to reject these procedural barriers, thus allowing the case to proceed on its substantive merits without undue delay.

## XV. SETTLEMENT/ALTERNATIVE DISPUTE RESOLUTION (ADR)

The parties have mutually selected Alternative Dispute Resolution (ADR) Procedure No. 1, which involves a settlement conference with the district judge assigned to this case, pursuant to Local Rule 16-15.4.

**Plaintiff's Position:** Plaintiff agrees to participate in a settlement conference

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

facilitated by the assigned district judge. Plaintiff emphasizes that participation should reflect genuine willingness to negotiate and not serve merely as procedural posturing. Plaintiff asserts significant confidence in the merits of his claims, supported by extensive evidence and detailed documentation, and anticipates a favorable outcome should this matter proceed to summary judgment or trial. Plaintiff further notes that delays or procedural tactics by Riot exacerbate Plaintiff's emotional distress, anxiety, and associated damages, which may result in increased settlement demands reflective of ongoing harm. Plaintiff states his willingness to attend ADR aimed at early favorable settlements and not at intimidation, harassment or besieging the Plaintiff. The plaintiff demands good-faith participation in a settlement conference and asks the court to penalize Riot if they engage in delay tactics. The plaintiff will extensively increase settlement demands with each delay. Are Riot seriously considering settlement, or are they just stalling? Can Riot prove they are engaging in good faith?

**Riot's Position:** In the event it is not dismissed at the pleading stage, Riot believes that this case would benefit from an early settlement conference with the Court or the Magistrate Judge.  In this regard, Wolstenholme has made several settlement demands that Riot has rejected.  Wolstenholme believes he is entitled to significant damages.  Riot respectfully believes that Wolstenholme does not understand U.S. Copyright Law, that there has been no infringement, and that he is not entitled to any damages whatsoever.  Needless to say, the parties have a fundamental disagreement as to the merit of the claims that have been asserted. Riot believes that an early settlement conference by which a neutral party evaluates the case and opines as to the likely result if the matter proceeds to summary judgment or trial may be helpful in getting the matter resolved.

**Areas of Fundamental Disagreement, as articulated by Wolstenholme:**

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

1    The parties acknowledge fundamental disagreement regarding:

2    The factual and legal merit of Plaintiff's allegations.

3    The potential damages Plaintiff seeks.

4

5    **XVI.  PRETRIAL CONFERENCE AND TRIAL**

6       **Wolstenholme's Proposal**: Wolstenholme proposes that the Final Pretrial

7    Conference and Trial should be set by the Court and should be set at the soonest

8    opportunity to prevent further hardship and wellbeing concerns.

9       **Riot's Proposal**: Riot proposes the following deadlines:

10      - Final Pretrial Conference: **September 16, 2026**

11      - Trial: **October 19, 2026**

12   **XVII. TRIAL ESTIMATE**

13      Riot expect that the trial will last approximately 4-6 days.

14

15   Plaintiff - Given the extensive scope of discovery, the significant number of high-

16   profile witnesses, substantial documentary and digital evidence, and the complexity

17   of legal issues involved, Plaintiff estimates that trial proceedings will realistically

18   require approximately 10-15 court days to adequately present evidence and

19   testimony, if no extra charges are added.

20   **XVIII.      TRIAL COUNSEL**

21      Wolstenholme intends to represent himself at trial. Riot will be represented at

22   trial by Aaron Moss and Joshua Geller.

23   **XIX.  INDEPENDENT EXPERT OR MASTER**

24      Riot states that this is not a case that would benefit from the appointment of a

25   master pursuant to Fed. R. Civ. P. 53 or an independent scientific expert.

26

27      Plaintiff reserves the right to reconsider the appointment of an independent

28   expert or special master pursuant to Fed. R. Civ. P. 53 if complexities arise during

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

1  discovery, particularly regarding electronic discovery, forensic metadata analysis,

2  or medical records interpretation, that would benefit from specialized oversight or

3  independent evaluation, such as a psychological expert testimony related to trauma,

4  or criminal, or other oversight.

5  **XX.  OTHER ISSUES**

6  Wolstenholme:

7

8  Plaintiff Wolstenholme has formally requested that his Discovery Checklist

9  (Exhibit A), Conference Notes (Exhibit B), and Witness List (Exhibit C) be

10  attached to this report. Riot has consented to attaching these exhibits to avoid

11  dispute.

12

13  Additionally, Plaintiff requests:

14

15  Confirmation from Riot, in writing, that all documents, communications, and

16  electronically stored information (ESI) relevant to the creation and production of

17  Arcane will be preserved, and no further deletion or alteration will occur.

18  Clarification from Riot regarding its intentions for good-faith participation in

19  settlement negotiations to avoid unnecessary procedural delays and additional

20  damages arising from protracted litigation.

21  Immediate disclosure from Riot regarding insurance policies and coverage

22  limits applicable to this litigation pursuant to Federal Rule of Civil Procedure

23  26(a)(1)(A)(iv).

24  Immediate preservation and retrieval of Christian Linke's planning,

25  development, board meeting minute's discussing the approval and financing of

26  Arcane, internal memos, emails, and slack communications referencing the show's

27  production. Linke has reportedly resigned, but it remains unclear if he is still

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

working at Riot in a different role. Please also clear up whether he is or is not still working for Riot.  Please also provide Alex Yee's current position at Riot Games.

Riot:

Riot would like to address with the Court that Wolstenholme has been repeatedly filing lengthy and extraneous court papers setting forth his position on the merits that are not called for or tied to any motion or other proceeding before the court.  Riot would respectfully request that Wolstenholme be advised that such filings are inappropriate and do not serve the purposes of judicial efficiency.

In addition, Riot believes this is a frivolous case, and that the end of the litigation, Wolstenholme will be responsible for Riot's costs and attorney fees. Riot intends to make a motion requiring Wolstenholme to post a bond as required to secure an award of costs and attorney's fees which may be awarded in the action. *See Suzhou Angela Online Game Tech. Co. v. Snail Games USA Inc*., No. 221CV09552CASSKX, 2023 WL 2465972, at *3 (C.D. Cal. Mar. 9, 2023).

**Plaintiff's Response to Riot Games' Claim of a Frivolous Case and Motion for Security Bond**

The Plaintiff would like to express his concern at Arron Moss of Riot's Legal Team trying to sneak things into the Joint rule 26 report at the last moment without highlighting them. More specifically their motion for a bond. Riot Games' attempt to introduce this motion in the Joint Rule 26(f) Report, without prior discussion or proper notice, constitutes litigation misconduct and procedural bad faith. The request for a bond is an unjustified attempt to financially burden Plaintiff and deter pursuit of a valid copyright infringement claim.

Riot Games' assertion that this case is frivolous and its threat to seek a security bond for attorney's fees is both legally unfounded and an attempt to intimidate and suppress a legitimate copyright claim. This is a disgusting continuation of the harassment, intimidation, bullying, manipulation and pressure

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

the Plaintiff has faced from Riot and its legal team for over 3 years. Because of this, at 12 pm at night, an hour and a half ago, the Plaintiff is yet again kept up stressed and worried about the unethical practices and tactics of Riot Games and its legal team. Directly because of this, the Plaintiff does not believe Riot are able to be honest about anything in these proceedings or in business and early settlements would allow them to move on to abuse others.

I. Riot Games' Frivolous Litigation Argument is Meritless

Under 17 U.S.C. § 505, attorney's fees in copyright cases are discretionary and awarded only under exceptional circumstances. Courts assess factors such as:

The objective reasonableness of the plaintiff's claim.

Whether the plaintiff acted in bad faith or pursued the case vexatiously.

The need to advance considerations of compensation and deterrence.

See Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994).

This Case is Not Frivolous

Plaintiff possesses a registered copyright for Bloodborg: The Harvest – Copyright Reg. No. TXu 2-470-268.

Plaintiff has presented detailed evidence of access and substantial similarity between Arcane and Bloodborg.

Plaintiff made accurate pre-release predictions about Arcane's content based on Bloodborg, demonstrating striking similarities.

Riot has a documented history of incorporating external influences, including fan theories and outside sources, into Arcane.

In Kirtsaeng v. John Wiley & Sons, Inc., 579 U.S. 197 (2016), the Supreme Court ruled that even unsuccessful claims do not automatically warrant attorney's fees, especially when the plaintiff brings a reasonable claim in good faith.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

Thus, Riot's "frivolous case" argument is legally baseless and an improper attempt to discredit a valid copyright infringement claim, yet again, after they attempted the very same intimidation tactics three years ago, causing emotional and financial harm.

II. Riot Games' Attempt to Force a Security Bond is a Litigation Suppression Tactic

Riot cites Suzhou Angela Online Game Tech. Co. v. Snail Games USA Inc., 2023 WL 2465972 (C.D. Cal. Mar. 9, 2023), to argue that Plaintiff should be required to post a security bond to cover Riot's legal costs.

This Argument is Inapplicable to Plaintiff's Case

In Suzhou Angela, the court required the plaintiff to post a bond because:

The plaintiff was a foreign entity with questionable ability to pay costs.

There was a history of similar unsuccessful litigation by the plaintiff.

The case was weak, with little evidence supporting infringement.

None of these conditions apply here:

Plaintiff is an individual with a registered U.S. copyright, not a foreign corporation.

Plaintiff has no history of frivolous litigation.

Plaintiff has provided extensive evidence supporting his claims.

Furthermore, courts are reluctant to impose financial barriers that would prevent a plaintiff from pursuing a meritorious case. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 153 (1970) (noting that financial barriers should not be used to restrict access to justice).

1

2          Riot's True Intent Behind the Bond Request

3          Continued pattern of bullying and intimidation

4          Discouraging the Plaintiff from continuing litigation by imposing a financial

5   burden.

6          Creating an illusion that Plaintiff's claims are baseless to mislead the court.

7          Attempting to avoid addressing the substantive merits of the case.

8

9          Why Riot's Motion for a Bond Should Be Denied:

10          Plaintiff has a strong case supported by documentary evidence.

11          Security bonds are not typically required in copyright cases unless a plaintiff

12   has a history of non-payment.

13          Riot is desperate to have the case removed on any grounds, accept the merit

14   of the case, what does this say about guilt.

15          This would set a dangerous precedent, discouraging independent creators

16   from protecting their intellectual property.

17          Lady justice is blind to wealth and power, is she not?

18          This adds to anti-competitive behaviors of Riot Game, preventing

19   vulnerable, disadvantaged competitors from gaining justice.

20

21          III. Conclusion: Riot's Motion is Baseless and Should Be Rejected

22          Plaintiff's case is not frivolous; it presents substantial evidence of

23   infringement.

24          Attorney's fees are not automatically granted to defendants in copyright

25   disputes, and Riot has not met the legal threshold for an award.

26          A security bond is an unnecessary and unjustified financial burden designed

27   to suppress Plaintiff's legitimate claims.

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

Request for Court Action

Plaintiff respectfully requests that:


The Court deny any future motion by Riot for a security bond.

Riot be ordered to cease intimidation tactics intended to burden and suppress Plaintiff's claims.

The Court recognize that this case is being litigated in good faith by the Plaintiff and should proceed on the merits.

The Plaintiff would like to make an official complaint about the conduct of Riot's legal team in these matters and ask the Judge to penalizes both Riot Games and its Legal team for their repeated pattern of bad faith, intentional emotional harm, manipulation and bad conduct.

Plaintiff will oppose any motion for attorney's fees or security bond and seeks full discovery into Riot's internal documents regarding their creative process, access to Bloodborg, and use of external materials.

The Plaintiff seeks extra damages and injunctions, highlighting that Riot's business practices are again proving that they are not fit for civilized markets.


Note to Judge

The Plaintiff respectfully offers an apology for the undue length of this Joint Report. Riot's legal team have used many unethical tactics to cause harassment, distress and triggering of the Plaintiff, long into the night. This has pressured the Plaintiff into replying, reacting from worry. Whilst the Plaintiff has encountered some of these tricks and dishonest traps before, he hasn't been burdened by so many needless, and quite frankly desperate, distraction and delay tactics. The Plaintiff seeks only fairness and justice for misuse of this intellectual property, the misappropriation of his personal trauma and the damage caused to him and his work.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

1       The Plaintiff understands that Riot's legal team has a job to do but only

2  wishes they would do it in an ethical manner to aid the process. The Plaintiff knows

3  in his bones and in every fiber of his being that Arcane is made from his personal

4  trauma. He seeks justice but is worried about the wider implication of others if Riot

5  is allowed to continue in this manner.

6

7

8

9       Respectfully submitted,

10

11  DATED:  February 27, 2025            GREENBERG GLUSKER FIELDS
   CLAMAN & MACHTINGER LLP

12

13  By: */s/ Aaron J. Moss*

14       AARON J. MOSS (SBN 190625)
        JOSHUA M. GELLER (SBN

15       295412)
        ANDREW P. LUX (SBN 345915)

16       Attorneys for Defendant
        Riot Games, Inc.

17  DATED:  February 27, 2025

18

19  By: *M.WOLSTENHOLME*

20       MARC WOLSTENHOLME
        Plaintiff in Pro Se

21

22

23

24

25

26

27

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067