1  AARON J. MOSS (SBN 190625)
   Aaron.Moss@msk.com
2  JOSHUA M. GELLER (SBN 295412)
   Josh.Geller@msk.com
3  HANNAH G. SHEPHERD (SBN 347611)
   Hannah.Shepherd@msk.com
4  MITCHELL SILBERBERG & KNUPP LLP
   2049 Century Park East, 18th Floor
5  Los Angeles, CA  90067-3120
   Telephone: (310) 312-2000
6  Facsimile: (310) 312-3100

7  Attorneys for Defendant Riot Games, Inc.

8               UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10

11  MARC WOLSTENHOLME,              Case No. 2:25-cv-00053-FMO-BFM

12          Plaintiff,              *Hon. Fernando M. Olguin*

13      v.                          **RIOT GAMES, INC.'S NOTICE OF
                                    MOTION AND MOTION TO
14  RIOT GAMES, INC.,               DISMISS SECOND AMENDED
                                    COMPLAINT**
15          Defendant.
                                    [Declaration of Joshua Geller and
16                                  [Proposed] Order filed concurrently
                                    herewith]
17
                                    Date:      May 8, 2025
18                                  Time:      10:00 am
                                    Crtrm:     6D
19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on May 8, 2025 at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 6D of the above-entitled Court, located at 350 W. 1st Street, 6th Floor, Los Angeles, CA 90012, Defendant Riot Games, Inc. ("Riot") will, and hereby does, move to dismiss Plaintiff Marc Wolstenholme's ("Wolstenholme") Second Amended Complaint ("SAC") with prejudice for failure to comply with the pleading requirements of Fed. R. Civ. Pro 8 and for failure to state a claim pursuant to Fed. R. Civ. Pro. 12(b)(6).

The SAC does not contain a "short and plain statement" of Wolstenholme's claims for relief; to the contrary, it is more than 1,200 pages long and is replete with irrelevancies, legal argument, and other improper material.  It therefore violates Rule 8's pleading standard and should be dismissed.

The SAC also does not allege a plausible claim for relief as to any of its four causes of action.  As to its two copyright claims, it fails to plausibly allege (i) that Riot had access to Wolstenholme's purported work(s), or (ii) that Riot unlawfully appropriated any protected expression in Wolstenholme's purported work(s).  As to its unfair competition claim, that claim is preempted by the Copyright Act.  As to its claim for intentional infliction of emotional distress, the claim is time-barred and barred by the litigation privilege, and the alleged conduct is not sufficiently extreme and outrageous to state the claim as a matter of law.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently filed Declaration of Joshua Geller, any reply papers that may be filed, and on such further oral or documentary evidence as may be presented at or before the hearing on this matter.

The motion is made following a conference between counsel and Wolstenholme, who is representing himself *pro se*, pursuant to Local Rule 7-3,

1  which took place by email correspondence on January 26, 2025, after which

2  Wolstenholme refused to meet and confer further.

3

4  DATED: April 4, 2025                MITCHELL SILBERBERG & KNUPP LLP

5

6                                      By: _____

7                                      AARON J. MOSS (SBN 190625)
                                       JOSHUA M. GELLER (SBN 295412)
8                                      HANNAH G. SHEPHERD (SBN 347611)
                                       Attorneys for Defendant Riot Games, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I. .........INTRODUCTION ...............................................................................9

II. ........LEGAL STANDARD ..........................................................................10

III........PROCEDURAL BACKGROUND .......................................................11

IV. ......THE SAC FAILS TO COMPLY WITH FED. R. CIV. PRO. 8..................12

V. ........THE SAC FAILS TO STATE A CLAIM FOR DIRECT COPYRIGHT
INFRINGEMENT. ...............................................................................15

    A. .......Wolstenholme Fails to Plausibly Allege Access. ..............................16

    B. .......Wolstenholme Fails to Plausibly Allege Copying of Protected
Expression. .....................................................................................18

VI. ......THE SAC FAILS TO STATE A CLAIM FOR VICARIOUS
COPYRIGHT INFRINGEMENT. ........................................................25

VII.......THE SAC FAILS TO STATE A CLAIM FOR UNFAIR
COMPETITION UNDER CAL. BUS. CODE § 17200. ............................26

VIII.....THE SAC FAILS TO STATE A CLAIM FOR INTENTIONAL
INFLICTION OF EMOTIONAL DISTRESS. ........................................27

    A. .......The IIED Claim is Barred by the Two-Year Statute of Limitations...27

    B. .......The IIED Claim is Barred by the Litigation Privilege.......................28

    C. .......The Conduct Alleged is Not Sufficiently Outrageous to State a
Claim for IIED. ...............................................................................29

IX. ......CONCLUSION ...................................................................................30

Mitchell
Silberberg &
Knupp LLP

MOTION TO DISMISS SECOND AMENDED COMPLAINT

20629327.2

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

C<span style="font-variant:small-caps">ASES</span>

*Al-Bustani v. Alger*,
  No. C22-5238JLR, 2023 WL 3120747 (W.D. Wash. Apr. 27, 2023) ..............25

*Am. Ass'n of Naturopathic Physicians v. Hayhurst*,
  227 F.3d 1104 (9th Cir. 2000), *as amended on denial of reh'g* (Nov. 1, 2000) ........................................................................................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...............................................................................10, 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................10

*Bennett v. Jakubowski*,
  2023 WL 6519515 (E.D. Cal. Oct. 5, 2023) ..................................................13

*Berkic v. Crichton*,
  761 F.2d 1289 (9th Cir. 1985) .......................................................................20

*Blanchard v. DIRECTV, Inc.*,
  123 Cal. App. 4th 903 (2004) ........................................................................28

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047, 1059 (9th Cir. 2011) ..........................................................9, 15

*Cantu v. Resolution Trust Corp.*,
  4 Cal. App. 4th 857 (1992) ......................................................................27, 29

*Carlini v. Paramount Pictures Corp.*,
  2021 WL 911684 (C.D. Cal. Feb. 2, 2021) ....................................................16

*Cavalier v. Random House, Inc.*,
  297 F.3d 815 (9th Cir. 2002) .........................................................................21

*Esplanade Prods., Inc. v. Walt Disney Co.*,
  2017 WL 5635024 (C.D. Cal. July 11, 2017) ................................................18

*Evans v. McCoy-Harris*,
  2019 WL 1002512 (C.D. Cal. Jan. 4, 2019).................................................19

Mitchell
Silberberg &
Knupp LLP

MOTION TO DISMISS SECOND AMENDED COMPLAINT

20629327.2

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Fillmore v. Blumhouse Prods.,*
    LLC, 2017 WL 4708018 (C.D. Cal. Jul. 7, 2017)................................................16

*Funky Films, Inc. v. Time Warner Ent. Co., L.P.,*
    462 F.3d 1072 (9th Cir. 2006) .........................................................................19

*Kodadek v. MTV Networks, Inc.,*
    152 F.3d 1209 (9th Cir. 1998) .........................................................................26

*Kouf v. Walt Disney Pictures & Television,*
    16 F.3d 1042 (9th Cir. 1994) ...........................................................................20

*Litchfield v. Spielberg,*
    736 F.2d 1352 (9th Cir. 1984) .........................................................................21

*Lois v. Levin,*
    2022 WL 4351968 (C.D. Cal. Sept. 16, 2022)................................................17

*Loomis v. Cornish,*
    836 F.3d 991 (9th Cir. 2016) .....................................................................16, 17

*Luvdarts, LLC v. AT&T Mobility, LLC,*
    710 F.3d 1068 (9th Cir. 2013) .........................................................................25

*Mackintosh v. Lyft, Inc.,*
    2019 WL 5682826, at *5 (E.D. Cal. Nov. 1, 2019), *report and recommendation adopted*, 2019 WL 6528953 (E.D. Cal. Dec. 4, 2019)..........13

*McHenry v. Renne,*
    84 F.3d 1172 (9th Cir. 1996) ...........................................................................13

*Meta-Film Assocs., Inc. v. MCA, Inc.,*
    586 F. Supp. 1346 (C.D. Cal. 1984).................................................................17

*Moncada v. W. Coast Quartz Corp.,*
    221 Cal. App. 4th 768 (2013)...........................................................................29

*Navarro v. Block,*
    250 F.3d 729 (9th Cir. 2001) ...........................................................................10

MOTION TO DISMISS SECOND AMENDED COMPLAINT

Mitchell
Silberberg &
Knupp LLP

20629327.2

1

# TABLE OF AUTHORITIES
## (continued)

2

3

**Page(s)**

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
   494 F.3d 788 (9th Cir. 2007) ........................................................... 25

*Plotnik v. Meihaus*,
   208 Cal. App. 4th 1590 (2012) ........................................................ 29

*Rentmeester v. Nike, Inc.*,
   883 F.3d 1111 (9th Cir. 2018) ........................................................ 15

*Royal 4 Sys., Inc. v. RLI Ins. Co.*,
   No. CV 22-05732-RSWL-RAO, 2022 WL 19263327 (C.D. Cal. Dec. 9,
   2022) ................................................................................................. 27

*Rusheen v. Cohen*,
   37 Cal. 4th 1048 (2006) ................................................................... 28

*Schkeiban v. Cameron*,
   2012 WL 12895722 (C.D. Cal. May 10, 2012) ................................ 16

*Segal v. Segel*,
   2022 WL 198699 (S.D. Cal. Jan. 21, 2022) ..................................... 18

*Silberg v. Anderson*,
   50 Cal. 3d 205 (1990) ...................................................................... 28

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*,
   952 F.3d 1051 (9th Cir. 2020) .................................................... 15, 16

*Soliman v. CVS RX Servs., Inc.*,
   570 F. App'x 710 (9th Cir. 2014) .................................................... 27

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013) .......................................................... 11

*Three Boys Music Corp. v. Bolton*,
   212 F.3d 477 (9th Cir. 2000) .......................................................... 16

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) .......................................................... 27

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberg &
Knupp LLP

7

20629327.2

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Washington v. ViacomCBS, Inc.*,
   2020 WL 5823568 (C.D. Cal. Aug. 20, 2020) ................................................. 16

*Woodland v. Hill*,
   2022 WL 19250191 (C.D. Cal. Dec. 8, 2022) ................................................. 17

*Zella v. E.W. Scripps Co.*,
   529 F. Supp. 2d 1124 (C.D. Cal. 2007) .......................................................... 18

### STATUTES

17 U.S.C.
   § 102 ............................................................................................................. 26
   § 102(a)(1) .................................................................................................... 26
   § 103 ............................................................................................................. 26
   § 301(a) ......................................................................................................... 26

Cal. Civ. Code
   § 47(b) .......................................................................................................... 28

Cal. Civ. Proc. Code
   § 335.1 .......................................................................................................... 27

### OTHER AUTHORITIES

Fed. R. Civ. P.
   8 ....................................................................................................9, 12, 13, 15
   12(b)(6) ................................................................................................... 10, 11
   12(e) ............................................................................................................. 11

MOTION TO DISMISS SECOND AMENDED COMPLAINT

Mitchell
Silberberg &
Knupp LLP

20629327.2

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    **INTRODUCTION**

This is a frivolous copyright case brought by a *pro se* plaintiff who has now filed three pleadings, each of which has failed to state a plausible claim for relief. Dkts. 1, 11, and 58. The subject of this motion is a sprawling 1,220-page Second Amended Complaint ("SAC") that unmistakably confirms that Plaintiff Marc Wolstenholme ("Wolstenholme") has no viable claims. Dkt. 58. The SAC is unintelligible and grossly violates Rule 8's requirement that pleadings contain "a short and plain statement" of the claim. It should be dismissed as an unfair drain on the resources of both this Court and Defendant Riot Games, Inc. ("Riot"). *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011) ("Rule 8(a) has 'been held to be violated by a pleading that was needlessly long, or a complaint that was highly repetitive, or confused, or consisted of incomprehensible rambling.'").

The SAC is not only defective in form, but also fails on the merits. Wolstenholme purports to assert four claims: direct copyright infringement, vicarious copyright infringement, unfair competition, and intentional infliction of emotional distress. The latter two are quickly disposed of—his unfair competition claim is preempted by the Copyright Act; his IIED claim is barred by the statute of limitations, the litigation privilege, and otherwise fails to state a claim.

As to the copyright claims, Wolstenholme's SAC can broadly be divided into two unequal portions: The first 11 pages before the Prayer for Relief (what would traditionally be "the complaint") are conclusory and vague and fail to satisfy basic pleading standards under *Iqbal/Twombly*. The remaining 1,209 pages are impossible to follow and further confirm that Wolstenholme cannot plausibly allege access or substantial similarity of protected expression and therefore *cannot* state a claim.

Mitchell
Silberberg &
Knupp LLP

20629327.2

First, Wolstenholme fails to plausibly allege that anyone involved in the creative development of *Arcane*—Riot's Emmy-award winning animated television series[1] at issue in this case—ever had access to his manuscript. His allegations fall far short of the "reasonable possibility" standard required to establish access. Nor can he allege any widespread dissemination of his manuscript sufficient to raise an inference of access.

Second, his allegations of substantial similarity rely exclusively on unprotectable ideas, generic themes, and random and scattered comparisons that are neither similar nor protectable, as well as innumerable irrelevancies and otherwise facially implausible theories.

Wolstenholme cannot state any cognizable claim for relief and his SAC should therefore be dismissed with prejudice.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure ("FRCP") 8 requires a plaintiff to provide "fair notice of what the claim is and the grounds on which it rests," along with a "short and plain statement" of the claims for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quotation and alteration omitted). Although a plaintiff need not provide "detailed factual allegations," he must provide "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

A motion to dismiss under FRCP 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal under FRCP 12(b)(6) "is proper when the complaint either (1) lacks a cognizable legal

---

[1] *Arcane* is based on Riot's popular videogame *League of Legends*, which has been one of the most played videogames in the world since its release in 2009.

MOTION TO DISMISS SECOND AMENDED COMPLAINT

Mitchell Silberberg & Knupp LLP

20629327.2

theory or (2) fails to allege sufficient facts to support a cognizable legal theory."
*Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  To survive dismissal, "a
complaint must contain sufficient factual matter, accepted as true, to 'state a claim
to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678.

While pleadings filed by *pro se* litigants are often interpreted liberally, "a
*pro se* litigant is not excused from knowing the most basic pleading requirements."
*Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1107–08 (9th
Cir. 2000), *as amended on denial of reh'g* (Nov. 1, 2000).

### III.    PROCEDURAL BACKGROUND

On October 31, 2024, Wolstenholme filed a complaint for copyright
infringement, unfair competition, and intentional infliction of emotional distress in
the Superior Court for the County of Los Angeles.  Dkt. 1, Exh. A.  Because
federal courts have exclusive jurisdiction over copyright cases, Riot removed this
action on January 3, 2025.  Dkt. 1.  The initial complaint consisted of a state-court
form document, akin to a Civil Cover Sheet, with no narrative statement of
Wolstenholme's claims.  Dkt. 1, Exh. A.  Riot informed Wolstenholme of this
defect, and when he failed to file an amended complaint, Riot filed a motion to
dismiss under FRCP 12(b)(6) or, in the alternative, for a more definite statement
under FRCP 12(e).  Dkt. 7.  In response, Wolstenholme filed a First Amended
Complaint ("FAC") on January 13, 2025.  Dkt. 11.

The FAC did not plausibly allege any claims for relief, so Riot filed a
motion to dismiss.  Dkt. 19.  As to its two copyright claims, the FAC failed to
plausibly allege (i) that Wolstenholme had a registered copyright or was otherwise
excepted from the registration requirement, (ii) that Riot had access to
Wolstenholme's purported work(s), or (iii) that Riot unlawfully appropriated any
protected expression in Wolstenholme's purported work(s).  As to its unfair
competition claim, that claim was preempted by the Copyright Act.  As to its claim

1   for intentional infliction of emotional distress, the claim was time-barred and

2   barred by the litigation privilege, and the alleged conduct was not sufficiently

3   extreme and outrageous to state the claim as a matter of law.

4        Rather than oppose, Wolstenholme filed a motion for leave to file a Second

5   Amended Complaint (Dkt. 28) which the Court granted, noting the "extreme

6   liberality" with which the Ninth Circuit permits amendments.  Dkt. 52.

7   Wolstenholme filed the operative SAC on February 23, 2025.  Dkt. 58.  That SAC

8   does not correct any of the defects identified in the FAC, necessitating the instant

9   motion.

10  **IV.    THE SAC FAILS TO COMPLY WITH FED. R. CIV. PRO. 8.**

11       FRCP 8(a) requires that an initial pleading contain "a short and plain

12  statement of the claim showing that the pleader is entitled to relief."

13  Wolstenholme's 1,220-page SAC does not come close to meeting that standard.

14  The SAC's sprawling, rambling and conspiratorial allegations render the pleading

15  unintelligible.

16       Wolstenholme alleges in general terms that his unpublished manuscript

17  "Bloodborg: The Harvest" ("Bloodborg") was infringed by Riot in connection with

18  Riot's popular animated television series *Arcane*.  In the preamble to the SAC,

19  Wolstenholme summarizes his claims as follows:

20               Defendant's animated show and promotional materials
21               derive narrative elements, themes, scenes, chapter /
                 episode titles, aesthetics, trauma writing, central premise,
22               macro and micro details, actual writing converted to
23               visual mediums, expert skill depictions, distinct color
                 usage, deeply nuanced motifs and allegories, symbolism,
24               character arcs, character personalities and backstories,
25               and more, from Plaintiff's copyrighted work.

26               . . .

27               This alleged misuse and monetization of Plaintiff's
28               trauma and deep psychological exploration along with

Mitchell
Silberberg &
Knupp LLP

20629327.2

three years of bad faith negotiations and prolonged litigations, and malicious communications, discrimination, intimidation and harassment via email and other forms, alleged to have been sent by Riot employees, Fortiche Production employees and the wider toxic cultural climate they foster, is alleged to have caused, and continues to cause further emotional-psychological harm and suffering and financial burden on the Plaintiff.

Dkt. 58 at p.3.

What follows is hundreds of pages of rambling discussions of supposed "comparisons" between Bloodborg and *Arcane*, in which it is almost impossible to understand what is being compared and for what purpose, along with references to potential future claims, medical disclosures, theories of psychological injury, and long passages of irrelevant or unintelligible text.  It is impossible to summarize the full scope of what is included, let alone to discern the precise legal and factual claims Riot is expected to answer.

Courts in the Ninth Circuit routinely dismiss complaints that violate Rule 8. *See Bennett v. Jakubowski*, 2023 WL 6519515, at *2 (E.D. Cal. Oct. 5, 2023) (dismissing 75-page complaint); *Mackintosh v. Lyft, Inc.*, 2019 WL 5682826, at *5 (E.D. Cal. Nov. 1, 2019), *report and recommendation adopted*, 2019 WL 6528953 (E.D. Cal. Dec. 4, 2019) (dismissing complaint in excess of 700 pages).  As explained in *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996): "Prolix, confusing complaints such as the ones plaintiffs filed in this case impose unfair burdens on litigants and judges." *Id.*  As a consequence of the lengthy and convoluted pleading style Wolstenholme has employed, both the Court and Riot are unable to use the SAC to frame the issues in dispute and are forced to expend significant time and resources to guess at exactly what Wolstenholme alleges.

Mitchell Silberberg & Knupp LLP

20629327.2

For example, the SAC alludes to additional material that Wolstenholme intends to add at some later date—it is impossible to know how much of this Wolstenholme believes is already part of this case, and how much of it he intends to try to assert later.  Wolstenholme includes a section on "Potential Additional Claims," which include claims ranging from fraudulent misrepresentation and inducement to disability discrimination and retaliation to an "[a]ssortment of other civil and criminal claims around the globe, predominantly in the UK and Europe, including claims against Fortiche, claims of violations under The European Convention on Human Rights (ECHR) and criminal proceedings."  Dkt. 58 at p. 12.  It is impossible to know what is meant by any of these, or how they could possibly apply to Riot.

The SAC also includes many pages of legal argument, making it impossible to know what is intended to be a factual allegation and what is not.  *E.g.*, Dkt. 58 at pp. 233–235, 270–283 (section entitled "Complaint Argument," which cites legal theories including breach of implied contract / idea submission, violation of the U.K. "passing off law," wire fraud, and conspiracy to defraud under the U.K. Fraud Act, among many others), 381–383, 404–407 ("This is more than a case of intellectual property infringement, it is a multi-layered legal violation encompassing fraud, misappropriation, defamation, and discrimination."), 456–457, 1022–1030.

The SAC includes an immense amount of obviously irrelevant material, which even Wolstenholme at times acknowledges.  For example, in a section describing a scene in *Arcane* where characters are engaged in "fighting practice," Wolstenholme notes: "This is just to show the depth of the deceptive tactics; I will not be relying on it in court."  Dkt. 58 at p. 214.  Wolstenholme includes purported excerpts from his own medical records (pp. 247–49), and lengthy discussions of the link between post-traumatic stress disorder and insomnia (pp. 252–254) and

alleges that these "deeply personal experiences, intricately woven into Bloodborg, were allegedly lifted and repurposed in *Arcane* without proper attribution" (p. 251). Wolstenholme "divulge[s] narrative secrets to the court" by referencing material that appears on his "webpage," but not (apparently) in his manuscript. *E.g.*, *id.* at p. 347. The SAC appears to contain nearly 400 pages of public statements about the development of *Arcane*, none of which have any ostensible connection to Wolstenholme's claims. *Id.* at pp. 601–961. While there are too many incomprehensible portions to list, the string of images and graphics at pages 974–994 are particularly indecipherable.

All told, this 1,220 page SAC is not capable of functioning as an operative pleading. A complaint must set out the claims with some reasonable clarity so that the Court and the parties can understand what issues are in dispute and what the scope of discovery will be. Wolstenholme's meandering and conspiratorial musings do not satisfy that requirement. *Cafasso*, 637 F.3d at 1059 (9th Cir. 2011) ("Rule 8(a) has 'been held to be violated by a pleading that was needlessly long, or a complaint that was highly repetitious, or confused, or consisted of incomprehensible rambling.' . . . Our district courts are busy enough without having to penetrate a tome approaching the magnitude of *War and Peace* to discern a plaintiff's claims and allegations."). Accordingly, Riot respectfully requests that the case be dismissed. Moreover, given that this is Wolstenholme's third attempt to state a claim, and given the other insurmountable deficiencies in his allegations described below, Riot requests that it be dismissed with prejudice.

## V.    THE SAC FAILS TO STATE A CLAIM FOR DIRECT COPYRIGHT INFRINGEMENT.

"To state a claim for copyright infringement, [Wolstenholme] must plausibly allege two things: (1) that [he] owns a valid copyright in [the works], and (2) that [Defendants] copied protected aspects of [Wolstenholme's works]." *Rentmeester*

MOTION TO DISMISS SECOND AMENDED COMPLAINT

Mitchell
Silberberg &
Knupp LLP

20629327.2

*v. Nike, Inc.*, 883 F.3d 1111, 1116–17 (9th Cir. 2018) (citations omitted). The second prong has two distinct components: "copying" and "unlawful appropriation." *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020). "In the absence of direct evidence of copying, . . . the plaintiff can attempt to prove it circumstantially by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying." *Id.* (internal quotations and citation omitted). To prove unlawful appropriation, the Ninth Circuit uses a two-part test consisting of a subjective intrinsic test and an objective extrinsic test to determine whether the defendant's work is substantially similar to the plaintiff's copyrighted work. *Id.* "Both tests must be satisfied for the works to be deemed substantially similar." *Id.*

A.    <u>Wolstenholme Fails to Plausibly Allege Access.</u>

In order to properly plead access in a copyright case, a plaintiff must sufficiently allege "a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work." *Loomis v. Cornish*, 836 F.3d 991, 995 (9th Cir. 2016) (internal quotation marks and citation omitted). Access "may not be inferred through mere speculation or conjecture." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000). Courts within the Central District routinely dismiss copyright infringement cases at the pleading stage where a plaintiff's access allegations are merely speculative. *See Washington v. ViacomCBS, Inc.*, 2020 WL 5823568, at *3 (C.D. Cal. Aug. 20, 2020); *Carlini v. Paramount Pictures Corp.*, 2021 WL 911684, at *7 (C.D. Cal. Feb. 2, 2021); *Fillmore v. Blumhouse Prods.*, LLC, 2017 WL 4708018, at *4 (C.D. Cal. Jul. 7, 2017); *Schkeiban v. Cameron*, 2012 WL 12895722, at *1–*2 (C.D. Cal. May 10, 2012).

Mitchell
Silberberg &
Knupp LLP

20629327.2

16

1      Wolstenholme's allegations of "access" in the SAC are wholly insufficient.

2  Wolstenholme alleges that he submitted his manuscript to various "Literary, Film

3  and Gaming talent agencies," and that he engaged in "wide dissemination via

4  email." Dkt. 58, p. 29. He elaborates on these mechanisms in what he calls

5  "Exhibit B – Chronology of Wide Dissemination and Access of Bloodborg: The

6  Harvest," contained at pages 46 through 89 of his SAC. He states that he

7  "[s]ubmitted Bloodborg to Riot via their online portal for submissions" on April

8  15, 2020. Dkt. 58, p. 48. Wolstenholme does not elaborate on what this "online

9  portal" supposedly was, and includes no evidence of such a submission. Even if

10  one were to credit this allegation, Wolstenholme is required to show a nexus

11  between "the individual who possesses knowledge of a plaintiff's work and the

12  creator of the allegedly infringing work." *Meta-Film Assocs., Inc. v. MCA, Inc.*,

13  586 F. Supp. 1346, 1356–59 (C.D. Cal. 1984). Notably, "[b]are corporate receipt .

14  . . without any allegation of a nexus between the recipients and the alleged

15  infringers, is insufficient to raise a triable issue of access." *Loomis*, 836 F.3d at

16  995–96 (a plaintiff "cannot create a triable issue of access merely by showing 'bare

17  corporate receipt' of her work by an individual who shares a common employer

18  with the alleged copier"). Wolstenholme's conclusory statement that he submitted

19  Bloodborg through an unidentified "online portal," without any specific nexus to

20  the creators of *Arcane*, cannot sustain a claim for copyright infringement.

21      Beyond that allegation, Wolstenholme includes a 10-page list of emails he

22  purportedly sent to various agents, publishers, and other unidentified individuals.

23  Dkt. 58, pp. 48–58. Wolstenholme does not allege any nexus between Riot and

24  any of these alleged recipients.

25      To the extent Wolstenholme intends this emailing campaign to be evidence

26  of "widespread dissemination," he misapprehends the law. Widespread

27  dissemination as a mechanism for satisfying the access requirement "centers on the

28

Mitchell Silberberg & Knupp LLP

MOTION TO DISMISS SECOND AMENDED COMPLAINT

20629327.2

degree of a work's commercial success and on its distribution through radio, television, and other relevant mediums." *Loomis*, 836 F.3d at 997. "Although the Ninth Circuit has not identified a specific threshold for the level of public engagement with a work that constitutes 'wide dissemination,' its precedent indicates that a work's degree of commercial success or notoriety must be substantial." *Woodland v. Hill*, 2022 WL 19250191, at *3 (C.D. Cal. Dec. 8, 2022). Importantly, "the mere availability of a work online is insufficient to establish widespread dissemination." *Lois v. Levin*, 2022 WL 4351968, at *3 (C.D. Cal. Sept. 16, 2022). "Put differently, that a work has the capacity to reach anyone with an internet connection by virtue of its presence on the worldwide web renders it merely possible, not reasonably possible, that the alleged infringer viewed that work." *Segal v. Segel*, 2022 WL 198699, at *9 (S.D. Cal. Jan. 21, 2022). Wolstenholme's alleged email submissions to various third-party literary agents cannot establish access as a matter of law.

Because Wolstenholme has no plausible allegation that anyone at Riot involved in the creative development of *Arcane* ever had access to his work,[2] he cannot state a claim for copyright infringement as a matter of law.

B.    Wolstenholme Fails to Plausibly Allege Copying of Protected Expression.

Wolstenholme's claim for copyright infringement is also defective because he fails to adequately allege that "the works at issue are substantially similar in their protected elements." *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1132–1133 (C.D. Cal. 2007) (citing *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002)).

---

[2] Should this case proceed past the pleading stage, Riot will be able to easily prove that no one involved in creating *Arcane* ever saw or considered Wolstenholme's manuscript. Indeed, based on the description and excerpts of his manuscript in the SAC, it is implausible that anyone would *want* to copy Wolstenholme's manuscript.

Wolstenholme has not attached a copy of his manuscript to the SAC. Instead, in the first part of his SAC before the Prayer for Relief (i.e., the first 11 pages), he offers only conclusory statements "that characters, plotlines, thematic elements, and narrative structure in ARCANE mirror those found in 'Bloodborg: The Harvest'" and that "the official music video 'Blood Sweat & Tears' by Riot Games, featuring Sheryl Lee Ralph, derives directly from elements of 'Bloodborg: The Harvest.'"  Dkt. 58 at pp. 5–6, ¶¶ 4–5.  These conclusory statements do not suffice to state a claim for copyright infringement.  *See Esplanade Prods., Inc. v. Walt Disney Co.*, 2017 WL 5635024, at *5 (C.D. Cal. July 11, 2017) (dismissing complaint where plaintiff did not attach the allegedly infringed work, ruling that "the Complaint is filled with conclusory allegations that are not factually specific enough to support Esplanade's claims"); *Evans v. McCoy-Harris*, 2019 WL 1002512, at *3 (C.D. Cal. Jan. 4, 2019) (dismissing complaint where plaintiff did not attach allegedly infringed screenplay and did not allege the protectable elements of the infringed works).

Past those initial 11 pages, Wolstenholme includes hundreds of pages of meandering discussions analyzing his manuscript (Bloodborg) and Riot's television series (*Arcane*).  These discursions confirm that Wolstenholme does not understand what United States copyright law protects and is unable to state a claim as a matter of law.

First and foremost, Wolstenholme does not include any clear articulation of what, exactly, Bloodborg is about and how it supposedly compares to *Arcane*.  He does not identify the "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events" in the two works, as the extrinsic test in the Ninth Circuit requires.  *Funky Films, Inc. v. Time Warner Ent. Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006), *overruled on other grounds by*

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020).

Instead, he alternates between hyper-granular lists of "similarities" that are unprotectable (e.g., two characters have a red hood, Dkt. 58, p. 137) or overgeneralizations at such a high level of abstraction as to be irrelevant (both works "feature protagonists who are struggling with internal conflicts and past trauma," p. 21). He describes how he has catalogued "over 100 instances of direct infringements," highlighting "character dynamics and origin stories," "themes and narrative frameworks" in *Arcane* that "mirror" those in his work, "psychological and emotional states identical to those described in my manuscript," as well as copying of "proprietary trauma-based storytelling elements." Dkt. 58, p. 997. By framing the comparisons this way, Wolstenholme obfuscates the fact that the two works have nothing protectable in common whatsoever.

For instance, Wolstenholme finds similarities in characters based on the fact that "[b]oth characters are shaped by their relationships, particularly the loss of their families, guilt and betrayal, and the weight of protecting those who remain. . . . Trauma is central to both dynamics." Dkt. 58, pp. 1002, 1004 (both characters share "similarities in their trauma, resilience, loyalty, and fight against oppressive forces," but Bloodborg's character has "layers of identity and technological intrigue that make her distinct" from *Arcane*'s character). But such "[g]eneral plot ideas," like "the fact that both works involve a life struggle of kids fighting insurmountable dangers, . . . are not protected by copyright law." *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994).

Under the most charitable reading of Wolstenholme's SAC, he appears to argue that both works involve "[t]he exploration of the blending of humans and machines (cyborgs, advanced technology) with blood engineering to make Bloodborgs," in a "dystopian smog-filled setting marked by stark class divides," in

MOTION TO DISMISS SECOND AMENDED COMPLAINT

Mitchell Silberberg & Knupp LLP

20629327.2

which characters "struggl[e] with personal trauma" and engage in "rebellion and resistance."  Dkt. 58, p. 24.  Even if that were true of both works, this sort of similarity in a story "[a]t a very high level of generality," cannot support a claim of infringement.  *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985).  "General plot ideas are not protected by copyright law; they remain forever the common property of artistic mankind." *Id.*  (finding two works not substantially similar even though they both involved "criminal organizations that murder healthy young people, then remove and sell their vital organs to wealthy people in need of organ transplants").  This is all the more true when the level of generality includes supposedly similar themes like: "War is bad"—a direct quotation from the SAC. Dkt. 58, p. 226.

Wolstenholme also repeatedly highlights *dissimilarities* between the works that undermine any of the comparisons he seeks to draw.  Throughout his SAC, he references a "clear pattern of repurposing from Bloodborg, where the original material has been fragmented, reworded, and layered into *Arcane*'s script, creating an illusion of originality while retaining the same core meaning and character dynamics."  Dkt. 58, p. 287.  Wolstenholme is, at most, alleging copying of unprotectable ideas resulting in dissimilar expressive output.  That is not actionable copying.  *Cavalier*, 297 F.3d at 823 ("Copyright law only protects expression of ideas, not the ideas themselves.").

Beyond these stock concepts and highly generalized themes, Wolstenholme focuses on the quintessential "random similarities scattered throughout the works" that the Ninth Circuit has held are insufficient to sustain a claim of infringement. *Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984).  Nearly every page of the SAC is replete with these comparisons of minutiae—and even if they *could* state a claim, the specific similarities are all facially non-protectable, non-original, and not even similar in the first place.  There are far too many to list given the

MOTION TO DISMISS SECOND AMENDED COMPLAINT

Mitchell
Silberberg &
Knupp LLP

20629327.2

length of the SAC, but the following examples sufficiently demonstrate how far off
the mark Wolstenholme's comparisons are:

- Episode 3 of *Arcane* is titled "The Base Violence Necessary for Change"
  and Bloodborg has dialogue that states "killing is necessary." Dkt. 58 at pp.
  239–242.

- In *Arcane* "we see Silco's Goons making weapons, preparing for war," and
  in "Bloodborg, war or battle perpetrations [sic] are also taking place." *Id.* at
  p. 306.

- In *Arcane*, a character says "I'm on it" and in Bloodborg, a character says
  "I'm on it like boom sonic." *Id.* at pp. 343–344 (Per the SAC: "Key
  Difference: *Arcane* keeps it short and military-like, while Bloodborg adds
  slang and energy with 'like boom sonic.'").

- Wolstenholme highlights *Arcane*'s "trauma narrative," including the fact
  that *Arcane* shows traumatic flashbacks, which he contends were inspired by
  his own personal trauma. *See, e.g., id.* at pp. 479–481 ("If Bloodborg's
  trauma writing techniques are shown, in court, to be unique to the Plaintiff's
  experiences and creative process, then *Arcane* has crossed a legal and ethical
  boundary, one that will need to be scrutinized in criminal courts.").

- Wolstenholme claims that an *Arcane* character's "eye" was "inspired by the
  Eye of Sauron (Mordor) from The Lord of the Rings" (not Bloodborg),
  which he claims "shows a propensity to borrow and swipe stuff." *Id.* at pp.
  516–517.

- Both works purportedly include "items hanging from wires" in completely
  different contexts. The discussion of this non-similarity spans more than ten
  pages. *Id.* at pp. 533–545.

- Wolstenholme compares graffiti-art of a smiling monkey face in *Arcane*
  with graffiti in Bloodborg showing "an army of blue gorillas wearing gas
  masks and armed with broomsticks." *Id.* at pp. 559–568.

- Bloodborg has a character who is "a complex father figure" while *Arcane*
  has a "repeated loss of father figures." *Id.* at p. 972.

Mitchell
Silberberg &
Knupp LLP

20629327.2

22
MOTION TO DISMISS SECOND AMENDED COMPLAINT

Wolstenholme frequently includes comparison charts that, on their face, show a lack of similarity in whatever he intends to compare.

| ELEMENT | ARCANE – SILCO & ZAUN | BLOODBORG – COWBOY MOMAHAN & NEW KOWLOON |
|---|---|---|
| GOAL | Create an independent nation of Zaun | Become the first King of New Kowloon |
| METHOD | Political manipulation, military control, drug trade | Violence, gang unification, blood harvesting |
| LEADER'S VISION | Freedom from Piltover's rule, self-governance | Dictatorship over all rival factions |
| MEANS OF CONTROL | Shimmer (mutant drug), alliances, ideological loyalty | Blood-based drugs, forced recruitment, warfare |

| ELEMENT | ARCANE – VI & POWDER | BLOODBORG – ROOK & MATTEO/MAC |
|---|---|---|
| OLDER SIBLING ROLE | Vi protects Powder, sees her as too weak for combat | Rook protects her brothers, refusing to let them join her |
| KEY PHRASE | "You're not ready." | "You wouldn't keep up." |
| REASON FOR FLARE | Vi gives Powder a flare to protect her and promise to return | Rook is given flares to avoid signal tracking and for emergencies |
| SYMBOLISM OF THE FLARE | Represents a sisterly bond and a promise | Represents tactical survival and reconnection if needed |
| EVENTUAL USE OF FLARE | Powder/Jinx later lights it up to call Vi | No mention of Rook using the flare in this excerpt |

| ELEMENT | ARCANE – BENZO & SILCO | BLOODBORG – BILL REWAN & CHRIS |
|---|---|---|
| ROLE IN STORY | Shopkeeper, supplier, third brother-in-arms | Military Quartermaster (QM), logistics officer, key veteran figure |
| CONNECTION TO THE BETRAYAL | Vander betrays Silco, leaving him for dead | Dillon James unknowingly injures Chris & Bill in "The Rupture" |
| PHYSICAL INJURY | Silco's eye is damaged, forcing him to inject a serum | Bill's eye dangles from its socket, leading to his reliance on bionic acid |
| AFTERMATH OF BETRAYAL | Silco becomes Zaun's dictator, addicted to injections | Bill is broken but remains a supplier and veteran, Cowboy takes this role. |

*See* Dkt. 58, pp. 323, 335, and 341.

Wolstenholme also alleges that there are hidden references in *Arcane* to him personally. While these allegations would not have any bearing on a substantial similarity inquiry, they are indicative of the troubling delusion that permeates the

SAC. Wolstenholme shows images from *Arcane* that he thinks embed his initials, "M.W.", as a sort of "hidden message"—in actuality, those initials do not appear anywhere. *See* Dkt. 58, pp. 386–402 (explaining that he believes his initials have been embedded in the program "to mock" him); *see also* pp. 488–489, 532.[3]

  



**Exhibit F-Trauma Gaslighting**



Look at all the M.Ws in these single frames.

_____

[3] Needless to say, this allegation is false.

Mitchell Silberberg & Knupp LLP

20629327.2

Even interpreting the allegations of the SAC liberally and accepting all well-pleaded facts as true, the reality is unmistakable: there is no similarity of protected expression whatsoever between Bloodborg and *Arcane*.  Wolstenholme's account of the "similarities" between the works is focused entirely on unprotectable ideas, irrelevancies, and imagined or contrived similarities.  This is a frivolous case, and Wolstenholme should not be permitted to continue to drain the resources of Riot and this Court.

## VI.    THE SAC FAILS TO STATE A CLAIM FOR VICARIOUS COPYRIGHT INFRINGEMENT.

Wolstenholme also alleges a cause of action for "vicarious copyright infringement."  Dkt. 58, p. 7, ¶¶ 4–6.  "To state a claim for vicarious copyright infringement, a plaintiff must allege that the defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity."  *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007).  "A plaintiff must therefore plausibly plead the predicate claim for direct infringement in order to survive a motion to dismiss his vicarious infringement claim."  *Al-Bustani v. Alger*, No. C22-5238JLR, 2023 WL 3120747, at *2 (W.D. Wash. Apr. 27, 2023) (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)).

Wolstenholme has not alleged any predicate claim for direct infringement.  As discussed above, Wolstenholme has not alleged any copying of protected expression and therefore cannot state a claim for direct infringement as to anyone.  In addition, Wolstenholme does not even attempt to allege the specific elements of vicarious liability.  The SAC alleges the legal conclusions that Riot "benefited financially from the unauthorized use of Plaintiff's copyright material through partnerships with Netflix, Fortiche Productions SAS, and others," but does not specify how.  Dkt. 58, p. 7, ¶ 4.  It then states that "Defendant had the ability to

1    control and supervise the infringing conduct but failed to prevent it," again without

2    any factual allegations as to how.  *Id.* ¶ 5.  These bare legal conclusions cannot

3    sustain a claim for vicarious copyright infringement.  *See, e.g.*, *Luvdarts, LLC v.*

4    *AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013).  Like the direct

5    infringement claim, this claim must be dismissed with prejudice.

6    **VII.   THE SAC FAILS TO STATE A CLAIM FOR UNFAIR**

7    **         COMPETITION UNDER CAL. BUS. CODE § 17200.**

8         Wolstenholme's state law claim for unfair competition is preempted by the

9    Copyright Act and should similarly be dismissed with prejudice.  "A state law

10   cause of action is preempted by the Copyright Act if two elements are present.

11   First, the rights that a plaintiff asserts under state law must be 'rights that are

12   equivalent' to those protected by the Copyright Act. 17 U.S.C. § 301(a).  Second,

13   the work involved must fall within the 'subject matter'" of the Copyright Act as set

14   forth in 17 U.S.C. §§ 102 and 103.  *Kodadek v. MTV Networks, Inc.*, 152 F.3d

15   1209, 1212 (9th Cir. 1998).

16        Wolstenholme alleges that Riot engaged in "unlawful and unfair business

17   practices by misappropriating Plaintiff's copyrighted material for commercial

18   gain."  Dkt. 58, p. 8 ¶ 7.  Other than this single sentence, Wolstenholme does not

19   allege any other conduct as the basis for his unfair competition claim under

20   California law.  Because Wolstenholme's "complaint expressly bases his unfair

21   competition claim on rights granted by the Copyright Act," it satisfies the first

22   prong of the preemption analysis.  *Kodadek*, 152 F.3d at 1213.  As to the second

23   prong, Wolstenholme alleges infringement of a "literary work."  Dkt. 58, p. 5, ¶ 1.

24   Literary works fall within the scope of the Copyright Act.  17 U.S.C. § 102(a)(1).

25   "Thus, both prongs of the preemption analysis are met, and [Wolstenholme's]

26   unfair competition claim is preempted."  *Kodadek*, 152 F.3d at 1213.  Because this

27   claim fails as a matter of law, it should be dismissed with prejudice.

28

Mitchell
Silberberg &
Knupp LLP

20629327.2

VIII. __THE SAC FAILS TO STATE A CLAIM FOR INTENTIONAL
INFLICTION OF EMOTIONAL DISTRESS.__

Wolstenholme alleges that he suffered emotional distress when Riot's "legal
representatives responded [to his initial demand in November 2021] with threats of
extensive legal fees." Dkt. 58, p. 58 ¶ 10.  His claim for intentional infliction of
emotional distress ("IIED") fails for three independent reasons.  First, it is barred
by California's two-year statute of limitations because the alleged conduct
occurred in 2021, but Plaintiff filed this suit in late 2024.  Second, the claim is
barred by California's litigation privilege because the conduct arises from pre-
litigation correspondence in connection with contemplated litigation.  Third, the
conduct alleged—a routine legal communication—does not meet the high standard
for "outrageous conduct" under California law.  For these reasons, the IIED claim
should be dismissed with prejudice.

A. __The IIED Claim is Barred by the Two-Year Statute of Limitations.__

Under California law, claims for intentional infliction of emotional distress
are subject to a two-year statute of limitations. *Cal. Civ. Proc. Code* § 335.1.  The
statute of limitations begins to run when the plaintiff suffers severe emotional
distress as a result of the defendant's allegedly outrageous conduct. *Cantu v.
Resolution Trust Corp.*, 4 Cal. App. 4th 857, 888 (1992); *Soliman v. CVS RX
Servs., Inc.*, 570 F. App'x 710, 711–12 (9th Cir. 2014) (affirming dismissal of
IIED claim as untimely).

Here, Wolstenholme alleges that Riot's "legal representatives threatened
Plaintiff with excessive legal fees and dismissal of his claims." Dkt. 58, ¶ 10.
While Wolstenholme does not attach the correspondence at issue to his SAC, he
quotes it directly as forming the basis for his claim (*see* Dkt. 58 at pp. 1155–1163)
and so the Court may consider it as incorporated by reference. *United States v.
Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see, e.g.*, *Royal 4 Sys., Inc. v. RLI Ins.*

*Co.*, No. CV 22-05732-RSWL-RAO, 2022 WL 19263327, at *4 (C.D. Cal. Dec. 9, 2022) (incorporating by reference letters that were "referenced in the Complaint" and formed the basis for the plaintiff's claims). The pre-litigation correspondence to which Wolstenholme refers was sent on November 28, 2021. Geller Decl., ¶ 3, Exh. A. Wolstenholme claims that this letter caused him severe emotional distress and exacerbated his PTSD. Dkt. 58, ¶¶ 10–11. However, Wolstenholme did not file this lawsuit until late 2024—nearly three years after the alleged conduct. *See* Dkt. 11, Exh. A (original complaint filed in October 2024). Because the statute of limitations expired in 2023, Wolstenholme's IIED claim is time-barred and must be dismissed with prejudice.

        B.     <u>The IIED Claim is Barred by the Litigation Privilege.</u>

The California litigation privilege provides an absolute bar to tort claims arising from communications made in connection with judicial proceedings. Cal. Civ. Code § 47(b). The privilege applies to communications "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990).

The privilege applies broadly to pre-litigation communications, including correspondence made in anticipation of litigation. *Blanchard v. DIRECTV, Inc.*, 123 Cal. App. 4th 903, 919 (2004) (privilege protects letters "threatening litigation and outlining legal positions"). Here, Wolstenholme challenges a letter sent by Riot's counsel that set forth Riot's legal position and warned of the potential legal consequences of pursuing frivolous claims. Geller Decl., ¶ 3, Exh. A. Because the letter was sent in anticipation of litigation, it is protected under the litigation privilege. To the extent that Wolstenholme alleges that the conduct of Riot's counsel *during* this litigation has caused him emotional harm (*see, e.g.*, Dkt. 58, ¶ 13 (referring to "the endless threats to have the cases kicked out before any

hearing"), that conduct is protected by the litigation privilege as well. *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1064 (2006) (litigation privilege protects filings made "during the course of judicial proceedings"). Wolstenholme's IIED claim, therefore, is barred as a matter of law and must be dismissed with prejudice.

        C.      <u>The Conduct Alleged is Not Sufficiently Outrageous to State a Claim for IIED.</u>

To state a claim for intentional infliction of emotional distress, Wolstenholme must allege: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 1609 (2012). Conduct is considered "outrageous" only if it is "so extreme as to exceed all bounds of that usually tolerated in a civilized society." *Moncada v. W. Coast Quartz Corp.*, 221 Cal. App. 4th 768, 781 (2013). Actions taken in good faith to assert or defend legal rights are not actionable under California law. *Cantu v. Resolution Trust Corp.*, 4 Cal. App. 4th 857, 888 (1992).

Here, Wolstenholme's IIED claim is based on a pre-litigation letter from Riot's counsel that communicated Riot's legal position and warned Plaintiff of potential liability should he proceed with a frivolous claim. Such correspondence, even if it caused Wolstenholme distress, does not rise to the level of "outrageous conduct" as a matter of law. Courts have consistently held that even a "callous disregard" for a plaintiff's well-being does not meet this standard—and a letter factually stating the legal consequences of pursuing a frivolous claim does not even approach that level. *Moncada*, 221 Cal. App. 4th at 780. Because Wolstenholme has not alleged conduct that exceeds "all bounds of that usually tolerated in a civilized society," his IIED claim fails as a matter of law.

# IX.   <u>CONCLUSION</u>

For the foregoing reasons, Riot respectfully requests that the Court dismiss the SAC with prejudice.

DATED: April 4, 2025             MITCHELL SILBERBERG & KNUPP LLP


By: _____
AARON J. MOSS (SBN 190625)
JOSHUA M. GELLER (SBN 295412)
HANNAH G. SHEPHERD (SBN 347611)
Attorneys for Defendant Riot Games, Inc.


## <u>Certification Pursuant to Local Rule 11-6.2</u>

The undersigned, counsel of record for Defendant Riot Games, Inc., certifies that this brief contains 6,101 words, which complies with the word limit of L.R. 11-6.2.

DATED:  April 4, 2025             _/s/ Aaron J. Moss_____
                                 Aaron J. Moss

Mitchell
Silberberg &
Knupp LLP

20629327.2