```
 1  AARON J. MOSS (SBN 190625)
    Aaron.Moss@msk.com
 2  JOSHUA M. GELLER (SBN 295412)
    Josh.Geller@msk.com
 3  HANNAH G. SHEPHERD (SBN 347611)
    Hannah.Shepherd@msk.com
 4  MITCHELL SILBERBERG & KNUPP LLP
    2049 Century Park East, 18th Floor
 5  Los Angeles, CA  90067-3120
    Telephone: (310) 312-2000
 6  Facsimile: (310) 312-3100

 7  Attorneys for Defendant Riot Games, Inc.
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| MARC WOLSTENHOLME,<br><br>        Plaintiff,<br><br>        v.<br><br>RIOT GAMES, INC.,<br><br>        Defendant. | Case No. 2:25-cv-00053-FMO-BFM<br><br>*Hon. Fernando M. Olguin*<br><br>**RIOT GAMES, INC.'S NOTICE OF MOTION AND MOTION TO BIRFURCATE DISCOVERY AND PERMIT INITIAL SUMMARY JUDGMENT MOTION ON ACCESS**<br><br>[Declaration of Aaron J. Moss and [Proposed] Order filed concurrently herewith]<br><br>Date:    May 8, 2025<br>Time:   10:00 a.m.<br>Crtrm:  6D |
|---|---|

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 8, 2025 at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 6D of the above-entitled Court, located at 350 W. 1st Street, 6th Floor, Los Angeles, CA 90012, Defendant Riot Games, Inc. ("Riot") will, and hereby does, move this Court to bifurcate discovery into two phases, with an initial phase to determine the narrow and potentially dispositive issue of access, and a subsequent phase, if necessary, to address remaining issues of liability and damages. Riot also respectfully requests leave to file an initial summary judgment motion without prejudice to filing a later summary judgment motion on other issues at the close of discovery, if the initial motion does not dispose of the case.

This motion is brought pursuant to Federal Rules of Civil Procedure 1, 16, 26, and 42(b), and the Court's inherent authority to manage its docket, schedule, and the conduct of proceedings, on the following grounds:

Plaintiff Marc Wolstenholme, proceeding *pro se*, asserts claims against Riot for direct and vicarious copyright infringement based on his allegation that Riot's animated television series *Arcane* infringes the copyright in his unpublished manuscript, "Bloodborg: The Harvest." In his Second Amended Complaint (Dkt. 58), Wolstenholme advances vague theories by which he claims the creators of *Arcane* could have accessed his manuscript, including submissions through a web portal as well as emails to various literary, talent and gaming agencies. Each theory hinges on an attenuated chain of events involving third parties and indirect relationships. Whether any of those alleged chains leads to the creators of *Arcane* is a discrete, threshold issue. If resolved in Riot's favor, it would dispose of Wolstenholme's copyright claims in their entirety and substantially reduce—if not eliminate—the need for further discovery.

1. Bifurcating discovery to resolve access first would promote judicial economy, conserve party resources, and avoid unnecessary discovery into unrelated issues such as substantial similarity, independent creation, and damages. It would not prejudice Wolstenholme—rather, it would substantially benefit both parties by streamlining proceedings—and is appropriate under this Court's broad discretionary authority to manage discovery.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, any reply papers that may be filed, and on such further oral or documentary evidence as may be presented at or before the hearing on this matter. The Motion is also made following a conference between counsel and Wolstenholme pursuant to Local Rule 7-3, which took place by video conference on February 13, 2025. *See* concurrently-filed Declaration of Aaron J. Moss, ¶ 2.

DATED: April 4, 2025           MITCHELL SILBERBERG & KNUPP LLP

By: _____
AARON J. MOSS (SBN 190625)
JOSHUA M. GELLER (SBN 295412)
HANNAH G. SHEPHERD (SBN 347611)
Attorneys for Defendant Riot Games, Inc.

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 7

I. INTRODUCTION ................................................................................. 7

II. ARGUMENT ........................................................................................ 8

    A. Legal Standard for Bifurcation ................................................. 8

    B. Access is a Discrete and Dispositive Issue. ............................... 9

    C. Bifurcation Would Promote Conservation of Resources and Judicial Efficiency ..................................................................... 12

    D. Bifurcation Will Not Prejudice Wolstenholme ......................... 15

III. CONCLUSION ................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Advertise.com, Inc. v. AOL, LLC*,
   No. CV 09–5983, 2011 WL 13186156 (C.D. Cal. Aug. 15, 2011) ................... 11

*Bassil v. Webster*,
   No. 2:20-cv-05099, 2021 WL 1235258 (C.D. Cal. Jan. 15, 2021)
   .......................................................................................................9, 11, 14, 15

*Changing World Films LLC v. Parker*,
   No. CV 22-9021, 2024 WL 4744006 (C.D. Cal. Mar. 12, 2024) ................ 11, 12

*Changing World Films, LLC v. Parker*,
   No. CV 22-9021-DMG, 2025 WL 466443 (C.D. Cal. Jan. 10, 2025) ............... 12

*Craigslist Inc. v. 3Taps Inc.*,
   942 F.2d 962, 982 (N.D. Cal. 2013) ..................................................................... 9

*Danjaq LLC v. Sony Corp.*,
   263 F.3d 942 (9th Cir. 2001) ................................................................................ 9

*Ellingson Timber Co. v. Great N. Ry. Co.*,
   424 F.2d 497 (9th Cir. 1970) .............................................................................. 12

*Folkens v. Wyland Worldwide, LLC*,
   882 F.3d 768 (9th Cir. 2018) .............................................................................. 10

*Loomis v. Cornish*,
   836 F.3d 991 (9th Cir. 2016) .............................................................................. 10

*M2 Software, Inc. v. Madacy Entm't*,
   421 F.3d 1073 (9th Cir. 2005) .............................................................................. 8

*Moreno v. NBCUniversal Media, LLC*,
   No. CV 13-1038, 2013 WL 12123988 (C.D. Cal. Sept. 30, 2013) .................... 15

*OSHO Int'l Found. v. Way*,
   No. CV 19-00753, 2019 WL 12379558 (C.D. Cal. Sept. 11, 2019) .................. 15

*Perfect 10, Inc. v. Giganews, Inc.*,
   847 F.3d 657 (9th Cir. 2017) .............................................................................. 14

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Shamraev v. TikTok Inc.*,
  No. 2:22-cv-01811, 2022 WL 17882129 (C.D. Cal. Oct. 12, 2022) .................. 15

*Sound & Color, LLC v. Smith*,
  No. 2:22-cv-01508, 2023 WL 6629205 (C.D. Cal. Sept. 6, 2023) ..................... 11

*Three Boys Music Corp. v. Bolton*,
  212 F.3d 477 (9th Cir. 2000) ......................................................................... 10

*Wixen Music Publ'g v. Triller, Inc.*,
  No. 2:20-cv-10515, 2021 WL 4816627 (C.D. Cal. Aug. 11, 2021)
  ............................................................................................................. 8, 9, 11, 16

*Young v. Mophie, Inc.*,
  No. SACV 19-827, 2020 WL 1000578 (C.D. Cal. Jan. 7, 2020) .................. 9, 15

*Zahedi v. Miramax*,
  LLC, No. CV 20-4512, 2021 WL 3260603 (C.D. Cal. Mar. 24, 2021) ............. 11

**STATUTES**

17 U.S.C. § 504(b) ............................................................................................. 14

**OTHER AUTHORITIES**

Fed. R. Civ. P. 42(b) ...................................................................................... 8, 12

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Marc Wolstenholme, proceeding *pro se*, asserts claims against Riot Games, Inc. ("Riot") for direct and vicarious copyright infringement, along with related claims for unfair competition and intentional infliction of emotional distress. All of these claims arise from Wolstenholme's allegation that Riot's animated series *Arcane*[1] infringes his unpublished manuscript, "Bloodborg: The Harvest."

As with any claim of copyright infringement, access is a required predicate element: to prevail, Wolstenholme must ultimately prove that the creators of *Arcane* had a reasonable opportunity to view his work prior to creating the allegedly infringing material. In his Second Amended Complaint ("SAC," Dkt. 58), Wolstenholme asserts vague theories of access, including that he submitted his manuscript through an online web portal for "Riot Forge" and that he separately submitted the manuscript to various third-party talent and literary agents (but not Riot).[2]  Dkt. 58 at p. 5, ¶ 2; p. 40, ¶ xi.  The SAC also includes as an exhibit, a document entitled "Chronology of Wide Dissemination and Access of Bloodborg: the Harvest" which purports to list submissions of Wolstenholme's manuscript to these various agents and other unidentified individuals.  Dkt. 58 at pp. 46–89.

Whether Riot had access to "Bloodborg: The Harvest"—which Riot denies—is a discrete, threshold issue that is logically and practically severable from all others in this case.  Because access is a legally required element of infringement and because Wolstenholme's access theories are limited in scope, this

---

[1] *Arcane* is based on Riot's popular videogame *League of Legends*, which has been one of the most played videogames in the world since its release in 2009.

[2] Riot Forge was formerly a videogame publishing label that partnered with smaller game development studios to publish new games set within Riot's *League of Legends* universe.

case is well-suited for bifurcation. Discovery on access will be targeted and limited, involving only a discrete search of Riot Forge and a limited number of custodians. By contrast, discovery into substantial similarity, independent creation, vicarious liability, and damages would be far more burdensome, and may require voluminous document productions, numerous depositions, and expert discovery. Proceeding immediately to full discovery on all issues would impose a significant and unnecessary burden on the parties and the Court if Wolstenholme cannot meet his threshold burden of showing access. Conversely, bifurcation will not prejudice Wolstenholme; it will merely sequence discovery in a manner that promotes efficiency.

Accordingly, Riot respectfully requests that the Court bifurcate discovery, pending its ruling on Riot's concurrently filed Motion to Dismiss, and allow an initial phase limited solely to the issue of access, with all other discovery stayed pending the Court's resolution of a focused summary judgment motion. If the Court denies that motion, the case would proceed to fact and expert discovery on the remaining issues, including substantial similarity, independent creation, and damages.

## II.  ARGUMENT

### A.  Legal Standard for Bifurcation

Federal Rule of Civil Procedure 42(b) grants the Court "broad discretion to bifurcate proceedings '[f]or convenience or to avoid prejudice, or to expedite and economize.'" *Wixen Music Publ'g v. Triller, Inc.*, No. 2:20-cv-10515, 2021 WL 4816627, at *1 (C.D. Cal. Aug. 11, 2021) (alteration in original) (quoting Fed. R. Civ. P. 42(b)); *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1088 (9th Cir. 2005). That discretion includes the authority to "permit deferral of costly and possibly unnecessary discovery proceedings pending resolution of potentially dispositive preliminary issues." *Wixen*, 2021 WL 4816627, at *1 (quoting

*Ellingson Timber Co. v. Great N. Ry. Co.*, 424 F.2d 497, 499 (9th Cir. 1970)); *Bassil v. Webster*, No. 2:20-cv-05099, 2021 WL 1235258, at *1 (C.D. Cal. Jan. 15, 2021) (same); *see also Young v. Mophie, Inc.*, No. SACV 19-827, 2020 WL 1000578, at *2 (C.D. Cal. Jan. 7, 2020) ("A district court has broad powers of case management, including the power to limit discovery to relevant subject matter and to adjust discovery as appropriate to each phase of litigation.") (quoting *Vivid Techs. v. Am. Sci. & Eng'g*, 200 F.3d 795, 803–04 (Fed. Cir. 1999)).

Courts routinely bifurcate where resolving one issue may render others moot. "One permissible reason to bifurcate is to defer costly discovery on one issue until another potentially dispositive issue has been resolved." *Craigslist Inc. v. 3Taps Inc.*, 942 F.2d 962, 982 (N.D. Cal. 2013) (citing *Ellingson Timber Co.*, 424 F.2d at 499). Another "favored purpose of bifurcation" is to "avoid[] a difficult question by first dealing with an easier, dispositive issue." *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 961 (9th Cir. 2001); *see Wixen*, 2021 WL 4816627, at *1 ("Bifurcation is particularly appropriate when resolution of a single claim or issue could be dispositive of the entire case.") (quoting *Drennan v. Md. Cas. Co.*, 366 F. Supp. 2d 1002, 1007 (D. Nev. 2005)).

In assessing whether bifurcation is appropriate, courts consider several factors, "including separability of the issues, simplification of discovery and conservation of resources, and prejudice to the parties." *Wixen*, 2021 WL 4816627, at *1 (quoting *McDermott v. Potter*, No. C 07–06300, 2010 WL 956808, at *1 (N.D. Cal. Mar. 12, 2010)). Each of these factors weighs in favor of bifurcation.

  B. <u>Access is a Discrete and Dispositive Issue.</u>

Riot seeks to address the issue of access in an initial phase of discovery because it is a discrete, threshold element of Wolstenholme's copyright infringement claims and is severable from all other issues. To establish copyright

1  infringement, a plaintiff must show both "(1) that the defendant had access to the
2  plaintiff's work and (2) that the two works are substantially similar." *Folkens v.*
3  *Wyland Worldwide, LLC*, 882 F.3d 768, 774 (9th Cir. 2018).  "A plaintiff may
4  establish access either by establishing that plaintiff's work was 'widely
5  disseminated' or a 'particular chain of events' from the plaintiff's work to the
6  creators of the allegedly infringing work." *Three Boys Music Corp. v. Bolton*, 212
7  F.3d 477, 482 (9th Cir. 2000).

8       Wolstenholme's allegations of "access" in the SAC are conclusory and
9  speculative.  Wolstenholme alleges that he submitted his manuscript to various
10 "Literary, Film and Gaming talent agencies," and that he engaged in "wide
11 dissemination via email."  Dkt. 58, p. 29.  He elaborates on these mechanisms in
12 what he calls "Exhibit B – Chronology of Wide Dissemination and Access of
13 Bloodborg: The Harvest," contained at pages 46 through 89 of his SAC.  He states
14 that he "[s]ubmitted Bloodborg to Riot via their online portal for submissions" on
15 April 15, 2020.  Dkt. 58, p. 48.  Wolstenholme does not elaborate on what this
16 "online portal" supposedly was and includes no evidence of such a submission.
17 Beyond that allegation, Wolstenholme includes a 10-page list of emails he
18 purportedly sent to various agents, publishers, and other unidentified individuals.
19 Dkt. 58, pp. 48–58.  Wolstenholme does not allege any nexus between Riot and
20 any of these alleged recipients.  Wolstenholme also makes scattered references to
21 "widespread dissemination" in his SAC, but alleges no facts suggesting that
22 "Bloodborg: The Harvest" was ever published, commercially distributed, or
23 otherwise made available to the general public.

24      As Riot's concurrently filed motion to dismiss explains, these allegations do
25 not include any facts connecting the alleged recipients—whether through the
26 "online portal" or to the various agents he allegedly emailed—to the actual creators
27 of *Arcane*, as required under settled Ninth Circuit law.  *Loomis v. Cornish*, 836
28

1  F.3d 991, 995–96 (9th Cir. 2016). Whether any alleged chain of transmission ever
2  reached *Arcane*'s creators is thus a discrete and dispositive issue that can—and
3  should—be resolved at the outset.
4       Bifurcation is appropriate because discovery into access will be limited and
5  targeted. It will require only a narrow search into Riot Forge's submissions to
6  determine whether there is any non-speculative link between Wolstenholme's
7  submissions and *Arcane*'s creators. This inquiry is logically separable from
8  broader aspects of Wolstenholme's claims—such as substantial similarity,
9  independent creation, vicarious liability, and damages—all of which would require
10 voluminous discovery and expert analysis.
11      Courts in this district have regularly bifurcated under similar circumstances.
12 *See, e.g.*, *Zahedi v. Miramax*, LLC, No. CV 20-4512, 2021 WL 3260603, at *2
13 (C.D. Cal. Mar. 24, 2021) (bifurcating on copyright ownership); *Wixen*, 2021 WL
14 4816627, at *2 (same); *Bassil*, 2021 WL 1235258, at *2 (C.D. Cal. Jan. 15, 2021)
15 (bifurcating issues of liability from damages); *Advertise.com, Inc. v. AOL, LLC*,
16 No. CV 09–5983, 2011 WL 13186156, at *3 (C.D. Cal. Aug. 15, 2011)
17 (bifurcating discovery into initial phase on trademark validity); *Sound & Color,*
18 *LLC v. Smith*, No. 2:22-cv-01508, 2023 WL 6629205, at *1 (C.D. Cal. Sept. 6,
19 2023) (bifurcating substantial similarity issue in copyright case).
20      The recent decision in *Changing World Films LLC v. Parker*, No. CV 22-
21 9021, 2024 WL 4744006, at *2 (C.D. Cal. Mar. 12, 2024), is especially instructive.
22 There, the court granted the defendants' motion to bifurcate discovery, ordering
23 that an initial phase be limited solely to the issue of access, with all other discovery
24 stayed pending resolution of a targeted summary judgment motion. The plaintiffs,
25 screenwriters, alleged that the defendants' film *American Skin* infringed their
26 screenplay *A Routine Stop*, which they had submitted to a screenplay competition
27 allegedly linked to the film's creators.
28

Mitchell
Silberberg &
Knupp LLP

20588656.5

11
NOTICE OF MOTION AND MOTION TO BIFURCATE

In granting bifurcation, the court emphasized that access was a "discrete and dispositive" issue, that few witnesses were relevant to that issue, and that no expert discovery was required. It found that resolving access first could eliminate the need for extensive discovery into substantial similarity and damages, thereby saving significant time and resources. The court also rejected plaintiffs' arguments that bifurcation would be prejudicial, concluding that any delay was outweighed by the judicial efficiency gained, and noted that "[i]f the case is resolved on a summary adjudication of the issue of access, it will save significant time and resources for both sides." *Changing World Films*, 2024 WL 4744006, at *2. After completing limited discovery on access, the defendant moved for summary judgment—and the court granted the motion, resolving the case in its entirety. *See Changing World Films, LLC v. Parker*, No. CV 22-9021-DMG (PVCX), 2025 WL 466443 (C.D. Cal. Jan. 10, 2025).

This case presents a similarly appropriate context for bifurcation. The question of whether Riot had access to "Bloodborg: The Harvest"—whether via an online portal submission or any other of the unrelated, third-party agents Wolstenholme alleges he emailed—is narrow, factual, and distinct. It does not overlap with the broader and more complex issues raised by Wolstenholme's claims. If Riot prevails on access, the parties and the Court will be spared significant and unnecessary discovery and litigation on every other issue. As in *Changing World Films*, bifurcation here would promote judicial economy, streamline proceedings, and avoid needless expense.

  C. <u>Bifurcation Would Promote Conservation of Resources and Judicial Efficiency.</u>

Courts routinely consider whether bifurcation will simplify discovery and conserve resources when evaluating whether it is appropriate. *See Ellingson Timber Co.*, 424 F.2d at 499 (purpose of Rule 42(b) is "to permit deferral of costly

and possibly unnecessary discovery proceedings pending resolution of potentially dispositive preliminary issues").

Here, the issue of whether the creators of *Arcane* had access to "Bloodborg: The Harvest" is far more straightforward than the broader and more complex issues that would arise if this case proceeds to full discovery.  Only a limited number of individuals are likely to possess relevant information regarding access, and no expert discovery would be necessary to address that issue.  By contrast, resolving substantial similarity may require expert analysis and testimony, as could any determination of damages.  Discovery into the alleged "chain of events" by which *Arcane*'s creators may have accessed Plaintiff's manuscript is significantly narrower and more manageable than discovery into the other elements of Wolstenholme's claims.

Wolstenholme has already confirmed that he "anticipates conducting full and wide discovery" across virtually every aspect of *Arcane*'s development.  *See* Wolstenholme's Joint [*sic*] Rule 26(f) Report, Dkt. 57 at 21–22.  By way of example only, Wolstenholme has filed pleadings with the Court making clear that his discovery plan is expansive and invasive, and would include, without limitation:

- "Access to Riot Games and Fortiche Production servers for data mining purposes" (Dkt. 38-1 at 4);
- "A record of all email addresses, metadata, and computers used to access *Arcane*-related files" (*id.* at 3);
- "A comprehensive financial breakdown of *Arcane*," including:
    - "Production costs,"
    - "Tax breaks claimed," and
    - "Pay statements and receipts" (*id.*);

- "Statements from all Fortiche Production SAS employees who worked on *Arcane*" and "evidence of the development of *Arcane*, including storyboard development and all production steps" (*id.*);
- "Evidence of submitted manuscripts, including Riot's handling of third-party literary submissions from 2018–2024" (*id.*);
- "Riot's internal communications regarding narrative development, character creation, and thematic direction" (*id.*);
- "Financial agreements related to Riot's engagement with talent agencies, including Curtis Brown Group and UTA," and documents related to "potential 'quid pro quo' arrangements related to cast selection" (*id.*).
- "A full and accurate timeline, with supporting evidence, of the development of *Arcane*" (*id.* at 2);
- "A full list of external agents, agencies, and individuals involved in *Arcane*," including all "[c]orrespondence between Riot Games, Fortiche, Netflix, and other parties" (*id.* at 2.).

Responding to these overreaching discovery requests would require the collection, review, and production of thousands, if not hundreds of thousands, of documents and likely involve dozens of custodians. These requests also include party, non-party, and expert depositions, raise significant privilege and confidentiality concerns, and necessitate motion practice. If the case proceeds beyond access, Riot will also be required to engage in extensive discovery regarding ownership, substantial similarity, independent creation, and damages. Plaintiff's secondary liability claims would raise separate and additional factual and legal issues. *See Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 670 (9th Cir. 2017). Discovery regarding damages alone can be especially complex in copyright actions. *See* 17 U.S.C. § 504(b). Courts have regularly acknowledged the burdens of damages discovery and granted bifurcation on that basis. *See Bassil*

*v. Webster*, No. 2:20-cv-05099, 2021 WL 1235258, at *2 (C.D. Cal. Jan. 15, 2021); *OSHO Int'l Found. v. Way*, No. CV 19-00753, 2019 WL 12379558, at *3 (C.D. Cal. Sept. 11, 2019); *Shamraev v. TikTok Inc.*, No. 2:22-cv-01811, 2022 WL 17882129, at *2 (C.D. Cal. Oct. 12, 2022).

If Wolstenholme cannot establish that the creators or *Arcane* accessed his manuscript, however, much of this discovery will be unnecessary. *Cf. Young*, 2020 WL 1000578, at *3 ("Proceeding immediately on all classwide issues would subject the parties to highly extensive discovery that may ultimately be unnecessary if [Defendant] prevails on dispositive motions regarding Plaintiffs' individual claims.").

Bifurcating discovery will thus streamline this litigation, conserve party and judicial resources, and prevent the parties from litigating complex issues that may never need to be reached.

D. Bifurcation Will Not Prejudice Wolstenholme.

Bifurcation will prevent substantial prejudice to Riot while causing no prejudice to Wolstenholme. His access theories all depend on pure speculation—alleging that "Bloodborg: The Harvest" may have reached the creators of *Arcane* through some chain of unrelated, third-party intermediaries. If no non-speculative evidence supports these chains of access, bifurcation will have spared the parties and the Court significant time, expense, and effort. *See Moreno v. NBCUniversal Media, LLC*, No. CV 13-1038, 2013 WL 12123988 at *2 (C.D. Cal. Sept. 30, 2013) (noting that bifurcation of discovery in a copyright claim "could save both Parties significant time and money") (citation omitted); *Bassil*, 2021 WL 1235258, at *3 ("If the motion is granted, bifurcation would have benefited everyone—the parties are spared needless cost and the Court avoids potential disputes about damages."). There would be no need to reach broader issues like substantial similarity or damages.

Mitchell Silberberg & Knupp LLP

15
NOTICE OF MOTION AND MOTION TO BIFURCATE

20588656.5

Conversely, if Riot's summary judgment motion on access is denied, Wolstenholme will have suffered no prejudice. Access is a threshold issue that must be proven regardless of when discovery occurs. That this discovery occurs first—before the parties embark on far-reaching discovery into substantial similarity, independent creation, damages, and other topics—does not deprive Wolstenholme of any rights. *See Wixen*, 2021 WL 4816627 at *4 ("[Defendant] is not requesting any additional discovery, only that initial discovery that may foreclose later discovery proceed first.").

At most, bifurcation may modestly defer discovery into non-access issues. But that limited delay is far outweighed by the substantial burden Riot would face in litigating every facet of *Arcane*'s development and production before the dispositive issue of access is resolved.

### III. CONCLUSION

For the foregoing reasons, including because bifurcated discovery would further convenience, efficiency, and judicial economy in this case, Riot respectfully requests that the Court bifurcate discovery into two phases, with an initial phase to determine the narrow and potentially dispositive issue of access, and a subsequent phase, if necessary, to address remaining issues of liability and damages. Riot also respectfully requests leave to file an initial summary judgment motion without prejudice to filing a later summary judgment motion on other issues at the close of discovery, if the initial motion does not dispose of the case.

DATED: April 4, 2025

MITCHELL SILBERBERG & KNUPP LLP

By: *[signature]*
AARON J. MOSS (SBN 190625)
JOSHUA M. GELLER (SBN 295412)
HANNAH G. SHEPHERD (SBN 347611)
Attorneys for Defendant Riot Games, Inc.

**Certification Pursuant to Local Rule 11-6.2**

The undersigned, counsel of record for Defendant Riot Games, Inc., certifies that this brief contains 2,853 words, which complies with the word limit of L.R. 11-6.2.

DATED: April 4, 2025         */s/ Aaron J. Moss*
                              Aaron J. Moss