Marc Wolstenholme
5 Shetland Close
Coventry, England CV5 7LS
Telephone: 044 7827964404
Email: marc@mwwolf-fiction.co.uk
Plaintiff in Pro Per

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARC WOLSTENHOLME,<br>                    Plaintiff,<br><br>vs.<br>RIOT GAMES, INC.,<br>                    Defendant | CASE NO. 2:25-CV-00053-FMO-BFM HON.<br><br>*Hon. Fernando M. Olguin*<br><br>DECLARATION OF MARC<br>WOLSTENHOLME<br><br>PLAINTIFF'S OPPOSITION TO<br>DEFENDANT RIOT GAMES, INC.'S<br>MOTION TO DISMISS THE SECOND<br>AMENDED COMPLAINT (SAC) |

Dated this: April 06, 2025

*M.WOLSTENHOLME.*
_____
[MARC WOLSTENHOLME]

1

PLAINTIFF'S OPPOSITION TO DEFENDANT RIOT GAMES, INC.'S MOTION TO DISMISS THE SECOND

AMENDED COMPLAINT (SAC)

**TO THE HONORABLE COURT:**

Plaintiff Marc Wolstenholme respectfully submits this Opposition to Defendant

Riot Games, Inc.'s Motion to Dismiss the Second Amended Complaint ("SAC").


## I. INTRODUCTION

Defendant Riot Games' Motion to Dismiss is a textbook example of abusive

litigation tactics aimed at overwhelming a disabled pro se litigant, rather than engaging with the

merits of the case. Their motion recycles previously addressed arguments, distorts the applicable

legal standards, and seeks to prematurely end a case that must be determined on the merits before

a jury. The same issues have been addressed numerous times over. This is forcing the Plaintiff to

respond, then blaming the Plaintiff for clogging up the docket. The Plaintiff has already raised

concerns over this tit-for-tat elevation of cost, time, and resources. It isn't a legal argument, its

harassment designed to cause harm, which supports the Plaintiff's Intentional infliction of

emotional distress (IIED) tort case.


Stating that a complaint is lengthy because of so much evidence, is like saying the

Gender Discrimination Class Action against Riot isn't fair because they abused so many women.

In the same manner, The SAC is overinclusive only because it had to be. Riot's alleged

infringement was not isolated or speculative; it was broad, deliberate, and systematic. Riot has

consistently attempted to dismiss and delay rather than produce evidence or engage in

meaningful discovery. This motion must be denied, and discovery must proceed.

PLAINTIFF'S OPPOSITION TO DEFENDANT RIOT GAMES, INC.'S MOTION TO DISMISS THE SECOND

AMENDED COMPLAINT (SAC)

## II. LEGAL STANDARD

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief." The Ninth Circuit has emphasized that courts must construe pleadings filed by pro se litigants liberally and that cases should be resolved on the merits where possible.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must merely state a claim that is plausible on its face. It is not the court's role to weigh facts or resolve disputes at this stage.

## III. PLAINTIFF'S SAC SATISFIES RULE 8 AND RULE 12(b)(6)

The SAC Clearly States a Claim Under Copyright Law

The SAC alleges the unauthorized reproduction, adaptation, and public performance of Plaintiff's original copyrighted manuscript "Bloodborg: The Harvest" through the audiovisual medium "Arcane."

The SAC outlines multiple specific, highly detailed and striking similarities between Plaintiff's work and the allegedly infringing work. These are not generic tropes. They include:

3

PLAINTIFF'S OPPOSITION TO DEFENDANT RIOT GAMES, INC.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT (SAC)

Identical character arcs, visual imagery, and sequence of events;

Parallels in location structure, emotional beats, and unique psychological motifs;

Unique phrasing, dialogue, and symbolic reference points;

Psychological frameworks unique to the Plaintiff's trauma-informed narrative;

Foreshadowing structures, mirrored plotlines, character weaponry, and more.

Access Is Plausibly Alleged

The SAC does not make speculative claims. It presents specific pathways through which Riot gained access to the Plaintiff's protected material. These include:

Named agents and agencies (UTA, Curtis Brown Group, Jonny Geller, Felicity Blunt, Riot Forge);

Dated submissions, email records, and overlapping personnel;

4

PLAINTIFF'S OPPOSITION TO DEFENDANT RIOT GAMES, INC.'S MOTION TO DISMISS THE SECOND
AMENDED COMPLAINT (SAC)

Direct access to Plaintiff's submitted manuscripts;

Circumstantial evidence strongly supporting access through industry connections.

The SAC Is Structured and Comprehensible

The SAC is detailed, yes—because it needed to be. But it is not confusing. It contains:

A structured introduction;

Section-by-section breakdowns by episode, theme, character, and violation;

Numbered exhibits and allegations;

Logical layout and citations that fulfill both FRCP 8 and 10.

The SAC is only 42 pages, the rest is exhibits and evidence.

PLAINTIFF'S OPPOSITION TO DEFENDANT RIOT GAMES, INC.'S MOTION TO DISMISS THE SECOND

AMENDED COMPLAINT (SAC)

## IV. DEFENDANT'S BAD FAITH TACTICS SHOULD NOT BE
## REWARDED

Riot has delayed production of discovery, threatened repeated procedural dismissals, lied many times over, ignored multiple settlement opportunities, and tried to bifurcate issues simply to drain Plaintiff's limited resources. This pattern is not just unethical; it's repeated strategic abuse against a vulnerable litigant.

Moreover, Plaintiff has already served discovery requests, participated in Rule 26(f), and complied with every court order in good faith. Riot has not responded to discovery and now attempts to shut the case down before evidence comes to light. Yet again, under the same issues already addressed.

The Plaintiff believes that Riot's tactics hint at an underlaying pathology to their business practices and that it is in the public interest and in the interest of wider international security that full and public discovery litigations are held with the aid of governing bodies. The Plaintiff asserts that healthy and honest companies do not have so many concerns, or so many complaints. With such dishonest and abusive legal tactics, Riot cannot be trusted to not manipulate the evidence or to destroy it entirely. The parties have been involved in litigation and pre-litigation exchanges for almost 3.5 years, and yet Riot has not produced one piece of evidence and has manipulated and elevated proceedings at every opportunity.

PLAINTIFF'S OPPOSITION TO DEFENDANT RIOT GAMES, INC.'S MOTION TO DISMISS THE SECOND
AMENDED COMPLAINT (SAC)

## VI. RIOT'S THREATENED MOTIONS ARE PROCEDURALLY ABUSIVE AND HAVE ALREADY BEEN ADDRESSED

Despite Plaintiff's express willingness to prioritize settlement—evidenced in a detailed April 4, 2025 email proposing a stipulation to extend Riot's SAC response deadline in exchange for a timely, good-faith settlement response—Riot responded not with dialogue, but with aggressive procedural filings: the Motion to Dismiss (Dkt 80), the improper unilateral Rule 26(f) Statement (Dkt 81), and a reply that sidesteps the issue entirely (Dkt 82). None of these matters help to settle anything but are alleged to have been done to cause further harm, harassment and pressure to manipulate proceedings before coming settlement offers and settlement conferences. This is alarming as it follows a solid pattern of abuse and bullying which has long been a concern of the way Riot Games conduct business. How can a company acting like this be safe, given their history of top-down systemic abuse, control of data and their links to Military-civil fusion. No wonder their influence is well known to foster an aggressive, retaliatory, toxic community and culture, harmful to adolescents and young adults. There is a direct link that needs to be addressed. Riot Games are not just an unhealthy company, they are a public health concern and a threat to international security.

Mark My Words.

PLAINTIFF'S OPPOSITION TO DEFENDANT RIOT GAMES, INC.'S MOTION TO DISMISS THE SECOND
AMENDED COMPLAINT (SAC)

These filings signal not an intent to resolve the matter, but to harm, overwhelm, and further burden the Plaintiff. Riot's conduct repeats procedural arguments that have already been considered and set aside by the Court, which has issued multiple orders to move this case forward (see Dkts 34, 66, and 75).

Revisiting these issues again—especially after the Court's clear instructions—is not only disrespectful to the Court's time and judgment, but also harmful to the Plaintiff. Riot's pattern of evasion, delay, and duplicative litigation tactics is particularly egregious when directed at a disabled pro se litigant, and may be sanctionable under Rule 11 or 28 U.S.C. § 1927.

Moreover, Riot's Motion to Dismiss (Dkt 80) fails to address the actual operative content of the SAC. It omits central factual allegations, ignores the attached copyright registration, and makes no serious effort to refute the many structured exhibits illustrating access, similarity, forensic patterning, and psychological framing. Instead, Riot relies on generalizations, tone-policing, and recycled objections that have already been addressed in both party correspondence and prior court orders. This failure to directly engage with the substance of the SAC renders the motion legally defective under Rule 12(b)(6) and may constitute a violation of Rule 11(b)(3) and (b)(4), which requires that a motion be based on a reasonable inquiry and supported by both facts and law.

PLAINTIFF'S OPPOSITION TO DEFENDANT RIOT GAMES, INC.'S MOTION TO DISMISS THE SECOND
AMENDED COMPLAINT (SAC)

## VII. DEFENDANT'S PROCEDURAL INCONSISTENCIES DEMONSTRATE BAD FAITH

Riot's litigation posture is riddled with contradiction. On December 31, 2024, Riot's counsel criticized Plaintiff's original filing as a "short form complaint" and insisted that a more detailed complaint be submitted in federal court. Plaintiff complied, producing a detailed SAC supported by structured exhibits, citations, and forensic analysis.

Now Riot seeks dismissal of that very SAC, calling it too long, too complex, and too detailed. This flip-flop is not just legally contradictory—it reveals strategic gamesmanship designed to block Plaintiff's access to discovery and the merits of his claim. These tactics, viewed against the general abusive history of Riot games, point at a very dark and disturbing core which needs to be investigated.

Over email, and over court filings, Riot has regurgitated the same issues over and over, changing their stance each time, causing harm, harassment and elevating concerns, harm and costs. This isn't a company trying to litigate. It's abusers, abusing a disadvantaged person, which is very clearly at the core of Riot's operations. When one company is shown to be so pathologically abusive, and even their beginning is steeped in concerns of IP theft, sabotage and backed by Military-civil fusion concerns, from the off set, it needs to be shut down for public safety. Such tactics should weigh heavily against dismissal and in favor of preserving the Plaintiff's right to proceed. They should also trigger national concerns.

PLAINTIFF'S OPPOSITION TO DEFENDANT RIOT GAMES, INC.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT (SAC)

## VIII. EVIDENCE THAT ARCANE SYSTEMATICALLY BORROWED FROM BLOODBORG

Plaintiff has submitted a breadth of exhibits showing that Arcane replicates key creative elements from Bloodborg: The Harvest. This is not an abstract claim—it is supported with detailed evidence, and Riot's team have had access to additional evidence including:

Exhibits Alpha, Beta, X, Z — side-by-side narrative comparisons;

Exhibit U — thematic and structural motif overlaps;

Exhibit U2 — statistical modeling proving improbability of independent creation;

Exhibit V — expert memorandum on concealed narrative strategy and symbolic mimicry;

Exhibit Y — AI-assisted adaptation theory showing masked transformation of Bloodborg content.

Except for the final rocket-launcher scene, virtually every critical arc, character function, or thematic beat in Arcane traces back to Plaintiff's copyrighted work.

PLAINTIFF'S OPPOSITION TO DEFENDANT RIOT GAMES, INC.'S MOTION TO DISMISS THE SECOND
AMENDED COMPLAINT (SAC)

## IX. UNFAIR COMPETITION CLAIM IS NOT PREEMPTED AND ADDRESSES ONGOING, NON-COPYRIGHT ABUSE

Riot incorrectly argues that Plaintiff's §17200 unfair competition claim is preempted. This is false.

The SAC and supporting materials make clear that Plaintiff's UCL claim includes conduct that is wholly independent of copyright infringement:

Psychological gaslighting and retaliatory abuse;

Suppression of authorship through public narrative manipulation;

Financial abuse through litigation overreach;

Misuse of power over minors and vulnerable collaborators via Riot's agent relationships;

Misrepresentation of origin, authorship, and timeline of Arcane.

Blacklisting and wider IP infringement concerns linked to Agents who had a monopoly over talent selected for Arcane.

During proceedings, the plaintiff can't write or create, this is further harm.

This misconduct continues today and is supported by Exhibits Beta, U, V, AA, and Z. Such claims are not preempted under Ninth Circuit law and involve distinct business torts and public interest violations.

PLAINTIFF'S OPPOSITION TO DEFENDANT RIOT GAMES, INC.'S MOTION TO DISMISS THE SECOND
AMENDED COMPLAINT (SAC)

## X. DEFENDANT'S CHARACTERIZATION OF PLAINTIFF'S CLAIMS AS "CONSPIRATORIAL" IS BASELESS, HARASSING, AND DISCRIMINATORY

Riot's attempt to label the SAC "conspiratorial" is both offensive and strategically misleading. Riot is attempting to lean into the Plaintiff's disability. CONSPIRATORIAL is a continuation of the patten of retaliation, targeting, name calling, and harassment.

Plaintiff has professional credentials in identifying concealed material and hidden messaging from his service in the British Army. These qualifications will be submitted under seal (see forthcoming Exhibit FF). The analysis in the SAC is based on established investigative technique—not speculation.

Moreover, Plaintiff has been the target of ongoing psychological abuse and harassment during this litigation, including impersonations, discrimination, criminal threats, bomb threats, doxxing, and child exploitation blackmail (see Exhibit BB: Chronology of Harassment and Threats). These actions are not isolated—they correspond directly with key filings and deadlines in the case, with some being traceable, suggesting insider knowledge or coordinated pressure. Some can be linked directly to Fortiche, Goblin Studios Paris, and Riot Games. Moreover, it can be shown that whenever the Plaintiff mentioned CBG to Riot's legal team, his site would be visited by North London based entities, of which are under suspicion of wider systematic infringements of the M.W. Wolf catalogue of Fiction.

12

Such misconduct weaponizes Plaintiff's mental health and trauma history to silence his claims. This is discriminatory, cruel, and consistent with Riot's institutional history of exploiting vulnerable individuals—seen in their $100 million discrimination settlement, CEO scandal, layoffs, sexual harassment allegations, many IP stealing and infringement concerns, retaliations and threats, illegal NDA's, targeting of a young Ukrainian girl for using the word "Arcane" , data concerns, Ai misuse concerns, stealing fan art, spurious IP wars, misuse of tax breaks in three countries to make Arcane, loot box gambling concerns, alleged sabotage and stealing of a rival US based companies and public modders efforts, misuse of minors working for them in none-sexual grooming concerns, Military-civil fusion concerns, control of  public information and sites about them, the toxic "Bromancing" culture, the toxic "Incel" community, the shuttering of Riot Forge, grooming of selected content creators, backdating of data and evidence including back paying, falsifying timelines, monetary blackmailing to lie about timelines and CVs and lies about Arcane script completion dates.

Given all of this, how can Riot Games be trusted to operate safely in the US, let alone be honest during discovery? The Plaintiff cannot get justice without court, CIA and Government oversight into their behaviors. It is alleged that Riot Games poses a public risk and a risk to the Plaintiff.

13

PLAINTIFF'S OPPOSITION TO DEFENDANT RIOT GAMES, INC.'S MOTION TO DISMISS THE SECOND

AMENDED COMPLAINT (SAC)

## XI. ONGOING AVOIDANCE OF COURT DEADLINES AND
## DISCOVERY OBLIGATIONS

The Court extended the deadline for Riot to respond to the Second Amended
Complaint from March 7, 2025, to April 4, 2025 (Dkt 63). Riot failed to submit a valid response.
Instead, it re-raised arguments that have already been addressed by both Plaintiff and the Court
in multiple prior filings. The Plaintiff submits that this is not a legitimate Rule 12(b)(6) response
but an attempt to evade the core factual allegations. Any formal denial Riot might offer would
risk exposing clear factual inconsistencies and potentially fraudulent representations.

Riot Games also has until April 11, 2025, to respond to Plaintiff's formal
settlement offer (as ordered in Dkt 75). Plaintiff believes that Riot's latest filings (Dkts 80, 81,
and 82) were strategically timed to clog the docket, exhaust a disabled Plaintiff, and exert
psychological pressure just before the scheduled settlement exchange. This conduct, if
intentional, may cross the threshold into harassment and retaliation.

Furthermore, Riot's first set of discovery responses are due on April 15, 2025.
Plaintiff asserts that Dkts 80–82 were not filed in good faith but were instead designed to
circumvent discovery obligations. This includes avoiding the production of documents,
metadata, and internal communications that may reveal manipulation, unlawful adaptation, or
coordinated misconduct.

PLAINTIFF'S OPPOSITION TO DEFENDANT RIOT GAMES, INC.'S MOTION TO DISMISS THE SECOND
AMENDED COMPLAINT (SAC)

Given these continuing abuses, the Plaintiff respectfully suggests that judicial oversight be expanded, and—where appropriate—external governing bodies or investigatory authorities be notified. The scope of this alleged infringement spans industries and global platforms. It raises serious public interest and safety concerns regarding not only intellectual property theft, but the misuse of vulnerable individuals and systemic abuse of process.

**CONCLUSION**

For all the above reasons, Plaintiff respectfully requests the Court **DENY** Riot Games' Motion to Dismiss the SAC in its entirety. Plaintiff is entitled to discovery and a fair opportunity to present the evidence of infringement before a jury.

Moreover, the Plaintiff believes that it is in the public interest and safety that governing bodies are introduced into proceedings given the wider concerns, and the expansion and other industries around the world these infringements have allowed Riot Games to enter. Other industries, countries and Governments doing business with Riot Games maybe at harm, including, France, The Uk, Spain, Vietnam and Others.

PLAINTIFF'S OPPOSITION TO DEFENDANT RIOT GAMES, INC.'S MOTION TO DISMISS THE SECOND
AMENDED COMPLAINT (SAC)

# Appendix A – Plaintiff's Exhibit List

The following exhibits are submitted in support of Plaintiff's Opposition to Defendant's Motion to Dismiss and referenced throughout the SAC and this filing.

| Exhibit | Title |
|---------|-------|
| T | Music Video Prologue: Mel's Story – Thematic and Narrative Comparison |
| U | Counterarguments Against Independent Creation |
| U2 | Statistical Report: Probability Analysis Supporting Exhibit U |
| V | Memorandum on the Use of Subtle References in Copyright Infringement |
| W | Detailed Breakdown and Analysis of Episode 5 |
| X | Detailed Breakdown and Analysis of Episode 6 |
| Y | AI-Assisted Adaptation of Bloodborg into Arcane |
| Z | Detailed Breakdown and Analysis of Episode 7 |
| Alpha | Detailed Breakdown and Analysis of Episode 8 |
| Beta | Detailed Breakdown and Analysis of Episode 9 |
| AA | April 4, 2025 Settlement Correspondence from Plaintiff |
| BB | Chronology of Harassment, Threats, and Intimidation |
| FF (Sealed) | Military Credentials – Expertise in Hidden Content Analysis (Filed Under Seal) |

16

**Declaration**

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


Executed on April 06, 2025, in Coventry, England.

Respectfully submitted,


Signature:   *M.WOLSTENHOLME.*


Marc Wolstenholme

Plaintiff in Pro Per

5 Shetland Close

Coventry, England CV5 7LS

marc@mwwolf-fiction.co.uk

PLAINTIFF'S OPPOSITION TO DEFENDANT RIOT GAMES, INC.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT (SAC)