AARON J. MOSS (SBN 190625)
Aaron.Moss@msk.com
JOSHUA M. GELLER (SBN 295412)
Josh.Geller@msk.com
HANNAH G. SHEPHERD (SBN 347611)
Hannah.Shepherd@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA  90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Defendant Riot Games, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARC WOLSTENHOLME,<br><br>            Plaintiff,<br><br>     v.<br><br>RIOT GAMES, INC.,<br><br>            Defendant. | Case No. 2:25-cv-00053-FMO-BFM<br><br>*Hon. Fernando M. Olguin*<br><br>**RIOT GAMES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date:     May 8, 2025<br>Time:     10:00 am<br>Crtrm:    6D |

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 5

I. INTRODUCTION ................................................................................ 5

II. WOLSTENHOLME'S PLEADING VIOLATES FED. R. CIV. P. 8 ............. 5

III. WOLSTENHOLME CANNOT PLEAD THE ELEMENTS OF COPYRIGHT INFRINGEMENT ................................................................. 6

    A. Wolstenholme Cannot Allege Access ....................................................... 6

    B. Wolstenholme Cannot Allege Substantial Similarity ........................... 8

IV. WOLSTENHOLME CANNOT STATE A CLAIM UNDER CAL. BUS. CODE § 17200 ................................................................................ 10

V. WOLSTENHOLME CANNOT STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS .................. 12

VI. WOLSTENHOLME'S MISUNDERSTANDING OF LITIGATION PROCEDURES IS NOT RELEVANT ........................................................ 13

VII. CONCLUSION ................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Berkic v. Crichton*,
  761 F.2d 1289 (9th Cir. 1985) .................................................................... 9, 10

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys.*, Inc., 637 F.3d
  1047, 1059 (9th Cir. 2011) ............................................................................... 5

*Eng. v. Mortg. Store Fin. Inc.*,
  No. 218-CV08776-ODWAGRX, 2019 WL 2918140 (C.D.
  Cal. July 8, 2019) ........................................................................................... 12

*Funky Films, Inc. v. Time Warner Entm't Co.*,
  462 F.3d 1072, 1076 (9th Cir. 2006) ............................................................... 6

*Funky Films, Inc. v. Time Warner Entm't Co.*,
  462 F.3d 1072 (9th Cir. 2006) ......................................................................... 9

*Graff v. CitiMortgage, Inc.*,
  No. CV173439FMOPJWX, 2018 WL 6016951 (C.D. Cal.
  May 21, 2018), *aff'd*, 765 F. App'x 150 (9th Cir. 2019) ................................ 12

*Heraldez v. Bayview Loan Servicing, LLC*,
  No. CV 16-1978-R, 2016 WL 10834101 (C.D. Cal. Dec. 15,
  2016), *aff'd*, 719 F. App'x 663 (9th Cir. 2018) .............................................. 13

*Knuttel v. Omaze, Inc.*,
  No. 2:21-CV-09034-SB-PVC, 2022 WL 1843138 (C.D. Cal.
  Feb. 22, 2022) .................................................................................................. 6

*Layne v. Nationstar Mortg. LLC*,
  No. SACV-150639DOCGJSX, 2015 WL 13917274 (C.D.
  Cal. Aug. 19, 2015) ....................................................................................... 11

*Loomis v. Cornish*,
  836 F.3d 991 (9th Cir. 2016) ....................................................................... 6, 7

*Meta-Film Assocs., Inc. v. MCA, Inc.*,
  586 F. Supp. 1346 (C.D. Cal. 1984) ................................................................ 7

*Nazemi v. Specialized Loan Servicing, LLC*,
  637 F. Supp. 3d 856 (C.D. Cal. 2022) ........................................................... 11

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
 50 Cal. 3d 1118 (1990) .................................................................................... 11

*Razuki v. AmGUARD Ins. Co.*,
 No. 21-CV-01983-AJB-DEB, 2022 WL 17972170 (S.D. Cal. Apr. 20, 2022) ............................................................................................ 11

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*,
 952 F.3d 1051 (9th Cir. 2020) ............................................................................ 6

*Swanson v. U.S. Forest Serv.*,
 87 F.3d 339 (9th Cir. 1996) ................................................................................ 6

*Three Boys Music Corp. v. Bolton*,
 212 F.3d 477 (9th Cir. 2000) .............................................................................. 7

*Zella v. E.W. Scripps Co.*,
 529 F. Supp. 2d 1124 (C.D. Cal. 2007) .............................................................. 9

### STATUTES

Cal. Bus. & Prof. Code
 § 17200 ............................................................................................................. 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Riot Games, Inc. ("Riot") moved to dismiss the Second Amended Complaint ("SAC") of Plaintiff Marc Wolstenholme ("Wolstenholme") because it flagrantly violates the pleading standard of Rule 8 and fails to plausibly allege any claim for relief under Rule 12(b)(6). Wolstenholme's 666-page Opposition (Dkt. 83) confirms that these are incurable defects. Wolstenholme does not respond to any of the substantive arguments in Riot's motion and instead his Opposition is replete with misguided procedural complaints about ordinary litigation conduct.

There are no plausible factual allegations in the SAC that anyone at Riot ever saw a copy of his manuscript, *Bloodborg*, or that there is any substantial similarity of protected expression between *Bloodborg* and Riot's *Arcane*—each, a dispositive defect. Nor does Wolstenholme allege a legally viable claim for unfair competition or intentional infliction of emotional distress. Moreover, because Wolstenholme has not offered any plausible facts that he could allege to cure these defects in his Opposition, Riot respectfully requests that this case be dismissed with prejudice.

## II. WOLSTENHOLME'S PLEADING VIOLATES FED. R. CIV. P. 8

Wolstenholme is unable to overcome the fact that his 1,220-page SAC violates Rule 8 and should be dismissed. In his Opposition, he claims that the SAC "is only 42 pages, the rest is exhibits and evidence." Dkt. 83, p. 5. But Wolstenholme continuously *relies* on those exhibits as part of his allegations—to him, they form an integral part of what he is alleging in this case. *See id.*, p. 8 (referring to "the many structured exhibits [to his SAC] illustrating access, similarity, forensic patterning, and psychological framing"). As such, his "needlessly long" SAC, filled as it is with "incomprehensible rambling," is exactly the sort of pleading that the Ninth Circuit has held warrants dismissal. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys.*, Inc., 637 F.3d 1047, 1059 (9th Cir. 2011)

("Our district courts are busy enough without having to penetrate a tome approaching the magnitude of War and Peace to discern a plaintiff's claims and allegations."). Nothing that Wolstenholme presents in his Opposition cures that defect.

Indeed, in his Opposition, he again attaches voluminous exhibits—more than 600 pages' worth—that he attempts to incorporate by reference. This is improper; Wolstenholme is required to set forth his arguments in his memorandum of points and authorities. *See, e.g.*, *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 345 (9th Cir. 1996) (the Federal Rules of Civil Procedure do not sanction "the incorporation of substantive material by reference"); *Knuttel v. Omaze, Inc.*, No. 2:21-CV-09034-SB-PVC, 2022 WL 1843138, at *3 (C.D. Cal. Feb. 22, 2022) (declining to consider voluminous exhibits submitted in connection with motion to dismiss briefing that effectively circumvented the applicable page limits). The Court should decline to consider any of the material in the exhibits to his Opposition.

## III. WOLSTENHOLME CANNOT PLEAD THE ELEMENTS OF COPYRIGHT INFRINGEMENT

To state a claim for direct or indirect copyright infringement, Wolstenholme must plead *both* that Riot had access to *Bloodborg* during the creation of its animated television series *Arcane* and that *Bloodborg* and *Arcane* are substantially similar in their protected expression. *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006), *overruled on other grounds* by *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020). The SAC pleads neither, and Wolstenholme's Opposition shows that he cannot correct either dispositive defect.

### A. Wolstenholme Cannot Allege Access

As to access, Wolstenholme was required to plead "a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work." *Loomis v. Cornish*, 836 F.3d 991, 995 (9th Cir. 2016) (internal

quotation marks and citation omitted). This sort of access could not "be inferred through mere speculation or conjecture." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000). His Opposition does nothing to clarify his access allegations or elevate them beyond bare conjecture.

He states that the SAC "presents specific pathways through which Riot gained access to [Bloodborg]," namely: (1) "Named agents and agencies (UTA, Curtis Brown Group, Jonny Geller, Felicity Blunt, Riot Forge)"; (2) "Dated submissions, email records, and overlapping personnel"; (3) "Direct access to Plaintiff's submitted manuscripts"; and (4) "Circumstantial evidence strongly supporting access through industry connections." Dkt. 83, pp. 4–5. But Wolstenholme does not elaborate on any of these allegations, nor cite any portion of the SAC that purportedly contains that information. Nowhere does he identify where a supposed allegation of "[d]irect access" can be found; Riot certainly cannot find any such allegation in the 1,220-page SAC.

For example, the main allegations of access in the first 42 pages of the SAC (what Wolstenholme now identifies as the "real" complaint) say nothing about a direct submission. Dkt. 58, pp. 29–30. Instead, Wolstenholme alleges that he submitted the manuscript to "Literary, Film and Gaming talent agencies" through "wide dissemination via email." *Id.* He then "highlight[s] key avenues in which Riot Games had access to the Plaintiff's work and submissions, such as Riot Forge, UTA, CBG and many other agents." *Id.* These allegations of indirect access are completely vague and conclusory, without any explanation of the nexus between these entities and those responsible for creating *Arcane*. *See, e.g.*, *Meta-Film Assocs., Inc. v. MCA, Inc.*, 586 F. Supp. 1346, 1356–59 (C.D. Cal. 1984) (plaintiff must allege nexus between "the individual who possesses knowledge of a plaintiff's work and the creator of the allegedly infringing work"); *Loomis*, 836 F.3d at 995–96 (a plaintiff "cannot create a triable issue of access merely by showing 'bare corporate receipt' of her work by an individual who shares a

common employer with the alleged copier").

Wolstenholme has separately filed a supplemental document (Dkt. 97) that purports to describe the connections between UTA, Curtis Brown Group, and Riot, but which only confirms how completely frivolous his allegations are. He alleges that Curtis Brown Group's CEO is named "Jonny Geller," and notes that Riot's undersigned counsel includes attorney "Joshua Geller"—though he acknowledges that this shared common surname is "[n]ot too suspect." Dkt. 97, p. 5. He then discusses someone named "Amanda Overton" who allegedly "worked on Arcane," either as an "Editor, writer, executive producer and Executive Story Editor, and others." *Id.* He then argues that Amanda Overton's agent at UTA is someone named "Abby Glusker," who shares a surname with one of the names of Riot's undersigned counsel's former law firm, Greenberg Glusker LLP. *Id.* After discussing his suspicions about the surname "Glusker," Wolstenholme states that he "believes he has discovered powerful people in the Entertainment industry linked to heinous crimes which are hidden with bribes and deals to cover far darker allegations." Dkt. 97, p. 6.

These conspiratorial allegations confirm that Wolstenholme has no plausible theory of access. His theory for how a submission to Curtis Brown Group could be connected to *Arcane* is solely based on shared surnames between an executive at Curtis Brown Group, an agent at UTA, and the surnames of one of Riot's litigation counsel and their former law firm—none of that has anything to do with the creation of *Arcane* by Riot or this case. There is no legally viable theory connecting any submission that Wolstenholme allegedly made to any of the people responsible for developing *Arcane*. Absent any such factual allegation, he cannot state a claim for copyright infringement.

B.  Wolstenholme Cannot Allege Substantial Similarity

In addition to pleading a viable theory of access, Wolstenholme was required to plead that *Bloodborg* and *Arcane* "are substantially similar in their

protected elements." *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1132–1133 (C.D. Cal. 2007) (citing *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002)). He failed to do so in his SAC, and nothing in his Opposition suggests he could ever do so.

His Opposition claims that he has identified similarities between the two works, and lists them as follows: "Identical character arcs, visual imagery, and sequence of events"; "Parallels in location structure, emotional beats, and unique psychological motifs"; "Unique phrasing, dialogue, and symbolic reference points"; "Psychological frameworks unique to the Plaintiff's trauma-informed narrative"; "Foreshadowing structures, mirrored plotlines, character weaponry, and more." Dkt. 83, p. 4. Wolstenholme does not include any specifics to any of those in his Opposition (e.g., a particular similar character or plot line)—this is all far too conclusory to support a claim for relief. Moreover, most of those categories themselves are too incoherent to support a copyright claim. For instance, there is no authority to suggest that infringement can be based on shared "emotional beats," "psychological motifs," "psychological frameworks," or "foreshadowing structures," whatever is meant by all of that. *See generally Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985) ("No one can own the basic idea for a story.").

Wolstenholme was required to identify the specific, "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events" in the two works, as the extrinsic test in the Ninth Circuit requires. *Funky Films*, 462 F.3d at 1077. He has not come close to doing that, either in his SAC or in his Opposition.

It is notable that the first "similarity" category he identifies in his Opposition is "character arcs," given how deficient his allegations on that subject are in the SAC. His most direct articulation of what Wolstenholme believes are the similarities between the works' "Characterization and Protagonists" is: "Both *Bloodborg* and *Arcane* feature protagonists who are struggling with internal

conflicts and past trauma, often leading them down paths of rebellion or destruction. The theme of personal growth and change is central to both narratives, and the characters' journeys revolve around navigating complex, morally grey situations." Dkt. 58, p. 21. These over-generalized themes are ubiquitous and not protectable. *Berkic*, 761 F.2d at 1293.

In its Motion, Riot identified numerous alleged "similarities" that were not similar at all, or only at a very high level of abstraction. Dkt. 80, pp. 21–25. Wolstenholme has not responded to a single one of these.

Absent any articulable similarities in protected expression between the two works and given Wolstenholme's failure to remedy this issue in his Opposition,[1] his claims for copyright infringement should be dismissed with prejudice.

## IV. WOLSTENHOLME CANNOT STATE A CLAIM UNDER CAL. BUS. CODE § 17200

In its Motion, Riot demonstrated that Wolstenholme's claim under Cal. Bus. Code § 17200 (a "UCL" claim) was preempted by the Copyright Act, because the unlawful practice Wolstenholme alleges is the misappropriation of his copyrighted material. Dkt. 58, p. 8 ¶ 7. In his Opposition, he claims that there is other conduct that could support a UCL claim—but none of what Wolstenholme alleges is cognizable.

Wolstenholme identifies the following alleged harms: (1) "Psychological gaslighting and retaliatory abuse"; (2) "Suppression of authorship through public narrative manipulation"; (3) "Financial abuse through litigation overreach"; (4) "Misuse of power over minors and vulnerable collaborators via Riot's agent relationships"; (5) "Misrepresentation of origin, authorship, and timeline of

---

[1] While neither Riot nor the Court should be forced to review the 600 pages of exhibits attached to the Opposition—the content of which are not described anywhere in the Opposition itself—even a cursory review confirms that these exhibits are more of the same, insofar as they consist of non-similarities or overly generalized concepts. *E.g.*, Dkt. 83-1, p. 23 (chart titled "comparative breakdown of similarities" showing numerous fundamental differences between the two works being compared), pp. 24–26 (same).

Arcane"; (6) "Blacklisting and wider IP infringement concerns linked to Agents who had a monopoly over talent selected for Arcane"; (7) "During proceedings, the plaintiff can't write or create, this is further harm." Dkt. 83, p. 11.

As a threshold matter, each of the foregoing is a vague, conclusory assertion without any connection to an actual factual allegation in the SAC. Accordingly, these allegations fail to satisfy basic pleading requirements. *See, e.g.*, *Razuki v. AmGUARD Ins. Co.*, No. 21-CV-01983-AJB-DEB, 2022 WL 17972170, at *3 (S.D. Cal. Apr. 20, 2022) (dismissing vague and conclusory allegations of harm under the UCL statute); *Layne v. Nationstar Mortg. LLC*, No. SACV-150639DOCGJSX, 2015 WL 13917274, at *4 (C.D. Cal. Aug. 19, 2015) (same).

But even if they were not completely conclusory, and even if they appeared somewhere in the SAC, these alleged harms still would not be legally cognizable. The UCL prohibits "unlawful, unfair or fraudulent business act[s] or practice[s]." Cal. Bus. & Prof. Code § 17200. These are three distinct categories: the "fraudulent" prong captures conduct that deceives members of the public and must satisfy the heightened fraud pleading standard; the "unfair" prong deals with "incipient violation[s] of an antitrust law"; and the "unlawful" prong covers independent violations of "another statute or common law." *Nazemi v. Specialized Loan Servicing, LLC*, 637 F. Supp. 3d 856, 863 (C.D. Cal. 2022) (dismissing UCL claim and denying leave to amend where plaintiff failed to adequately allege predicate misconduct under any prong). None of what Wolstenholme identifies in his Opposition qualifies under any aspect of the UCL.

Several of the alleged "harms" still turn on allegations of intellectual property infringement and are therefore preempted by the Copyright Act (e.g., "suppression of authorship," "misrepresentation of origin [and] authorship" and "wider IP infringement concerns"). Other of the "harms" relate to litigation conduct, or the alleged emotional toll this litigation is taking on Wolstenholme—those are not cognizable. *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d

1118, 1132 (1990) (litigation privilege bars all tort claims arising out of litigation conduct other than malicious prosecution).  And others still are simply incoherent—"misuse of power over minors," a serious allegation, has no connection to this dispute; Wolstenholme is not a minor.  None of the alleged harms falls into any one of the three UCL categories.

The UCL is not a free pass to assert vague and inarticulable claims of harm untethered from any specific factual allegation of a violation of a statute or false and misleading practice.  The gravamen of Wolstenholme's complaint is plainly copyright infringement, and as to that, a UCL claim is preempted—whatever other grievances Wolstenholme has are not cognizable harms.  His UCL claim should be dismissed with prejudice.

## V. WOLSTENHOLME CANNOT STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Riot moved to dismiss Wolstenholme's claim for intentional infliction of emotional distress ("IIED") on three bases: (1) that it is time barred because it arises out of an injury more than three years before Wolstenholme filed this action; (2) that it is barred by the litigation privilege, because it arises out of pre-litigation correspondence in connection with contemplated litigation; and (3) that the conduct alleged—a routine legal communication—does not meet the high standard for "outrageous conduct" under California law.  Wolstenholme does not respond to *any* of these arguments and does not mention his IIED claim anywhere in his Opposition.  His failure to do so functions as consent to the dismissal.  *Graff v. CitiMortgage, Inc.*, No. CV173439FMOPJWX, 2018 WL 6016951, at *4 (C.D. Cal. May 21, 2018), aff'd, 765 F. App'x 150 (9th Cir. 2019) ("The court construes plaintiff's failure to file a substantive opposition as consent to the granting of defendants' motions."); *Eng. v. Mortg. Store Fin. Inc.*, No. 218-CV08776-ODWAGRX, 2019 WL 2918140, at *1 (C.D. Cal. July 8, 2019) (granting motion where pro se plaintiff "filed an opposition but did not substantively oppose");

Mitchell Silberberg & Knupp LLP
20671171.2

12
REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

1 *Heraldez v. Bayview Loan Servicing, LLC*, No. CV 16-1978-R, 2016 WL 10834101, at *2 (C.D. Cal. Dec. 15, 2016), *aff'd*, 719 F. App'x 663 (9th Cir. 2018) ("Failure to oppose [issue] constitutes a waiver or abandonment of the issue.").

## VI. WOLSTENHOLME'S MISUNDERSTANDING OF LITIGATION PROCEDURES IS NOT RELEVANT

The bulk of Wolstenholme's Opposition consists of complaints about Riot's defense in this frivolous lawsuit; but none of the conduct he describes is improper, and is, in any event, irrelevant to the instant motion. For example, Wolstenholme complains that Riot has "threatened repeated procedural dismissals." Dkt. 83, p. 6. But Riot has done nothing other than file legitimate Rule 12 motions as to each of Wolstenholme's operative pleadings—which he has twice opted to amend in lieu of filing oppositions. *See* Dkt. 11, 58. Wolstenholme's repeated failure to state a cognizable clam for relief in each of his pleadings does not constitute litigation abuse by *Riot*.

In a particularly off-base argument, Wolstenholme suggests that Riot's filing of a motion to dismiss in lieu of acquiescing to Wolstenholme's settlement demands reflects the fact that Riot is "a public health concern and a threat to international security," and he asks the Court to "Mark My Words." Dkt. 83, p. 7. These caustic accusations are baseless. Such "complaints" occupy the vast majority of his Opposition and amount to nothing more than a *pro se* plaintiff's misunderstanding of the ordinary process of litigation. The fact that each of Wolstenholme's pleadings has suffered from the same defects does not preclude Riot from raising those issues in a legitimate motion to dismiss after each filing.

## VII. CONCLUSION

Wolstenholme cannot state a claim for copyright infringement, unfair competition, or intentional infliction of emotional distress despite being given multiple opportunities to do so. Riot respectfully requests that the Court dismiss this case with prejudice.

| | | |
|---|---|---|
| DATED: April 24, 2025 | | MITCHELL SILBERBERG & KNUPP LLP |

By: _____
AARON J. MOSS (SBN 190625)
JOSHUA M. GELLER (SBN 295412)
HANNAH G. SHEPHERD (SBN 347611)
Attorneys for Defendant Riot Games, Inc.

**Certification Pursuant to Local Rule 11-6.2**

The undersigned, counsel of record for Defendant Riot Games, Inc., certifies that this brief contains 2,878 words, which complies with the word limit of L.R. 11-6.2.

DATED:  April 24, 2025          */s/ Aaron J. Moss*
                                 Aaron J. Moss