Marc Wolstenholme
5 Shetland Close
Coventry, England CV5 7LS
Telephone: 044 7827964404
Email: marc@mwwolf-fiction.co.uk
Plaintiff in Pro Per

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARC WOLSTENHOLME,<br>　　　　　　Plaintiff,<br><br>vs.<br>RIOT GAMES, INC.,<br>　　　　　　Defendant | CASE NO. 2:25-CV-00053-FMO-BFM HON.<br><br>*Hon. Fernando M. Olguin*<br><br>DECLARATION OF MARC WOLSTENHOLME<br><br>PLAINTIFF'S COMPREHENSIVE ACCESS, DISSEMINATION, AND MISAPPROPRIATION ARGUMENT- IN SUPPORT OF ACCESS STATEMENTS ALREADY FILED.<br><br><br>Date: May 8, 2025<br>Time: 10:00 am<br>Crtrm: 6D |

Dated this: April 26, 2025

*M.WOLSTENHOLME.*
_____
[MARC WOLSTENHOLME]

**Supplemental Filing related to Access and Discovery.**

1

PLAINTIFF'S COMPREHENSIVE ACCESS, DISSEMINATION, AND MISAPPROPRIATION ARGUMENT

## I. INTRODUCTION: LEGAL STANDARD FOR ACCESS

Under Ninth Circuit law, a plaintiff in a copyright case establishes access by showing either (1) widespread dissemination of the work, or (2) a reasonable possibility that the defendant had an opportunity to view the work (Three Boys Music Corp. v. Bolton, 212 F.3d 477 (9th Cir. 2000)). Critical success or public acclaim is not required, only that the work was available to the defendant through plausible channels.

## II. FACTUAL TIMELINE OF PLAINTIFF'S DISSEMINATION

Over 100 submissions made to:

Literary agencies (e.g., Curtis Brown Group, UTA)

Gaming companies

Animation studios

Talent agencies

Comic book publishers

Many more submission through public portals like QueryTracker and agency direct submission forms.

Bloodborg: The Harvest specifically marketed as a cross-media property (novel, game, animation).

PLAINTIFF'S COMPREHENSIVE ACCESS, DISSEMINATION, AND MISAPPROPRIATION ARGUMENT

**III. CHAIN OF ACCESS**

Submission to Curtis Brown Group (CBG):

CBG had direct and ongoing relationships with UTA and other entities collaborating with Riot Games.

Jonny Geller, CEO of CBG, reviewed Plaintiff's full creative roadmap.

Submission to Riot Forge:

Plaintiff submitted via Riot's online portal systems.

Riot Forge operated specifically to scout creative concepts for development.

The wayback Machine does not show that Riot Forge did not take submissions, to the contrary.

3

PLAINTIFF'S COMPREHENSIVE ACCESS, DISSEMINATION, AND MISAPPROPRIATION ARGUMENT

## IV. ERRONEOUS LEGAL STANDARD AT SETTLEMENT CONFERENCE

Magistrate Judge incorrectly stated that evidence of personal hand-to-hand transfer was necessary.

Judge wrongly stated critical success was required for access.

Legal Correction: Dissemination to companies and agents is sufficient; critical success is irrelevant under Three Boys Music.

## V. EVIDENCE OF INDUSTRY CONNECTIONS: CBG, UTA, AND ARCANE

UTA and CBG represented over 80% of Arcane's top-billed voice cast, with over Amanda Overton, Executive Story Editor, Writer, is UTA Represented.

Characters represented by UTA and Curtis Brown Group received significantly more screen time than most, with Steinfeld, Purnell and Leung being the top three, Kevin Alejandro in fourth place and Lloyd being the 5th most onscreen character. That's the top five roles in Arcane, cast by the same conglomerate, who has been evidence to have been sent Bloodborg, and has a history of ongoing copyright concerns of the M.W. Wolf catalog of Fiction. Moreover, Jason Spisak, as Silco, represented by UTA, is joint 7th for most screen time. Silco is also perhaps one of the most iconic and plot-wise important roles.

4

The cast represented by UTA and CBG had 65 % of screen time of the main cast.

CBG and UTA were in close collaboration leading up to their merger.

This means that the six members of the cast represented by UTA and CBG had almost exactly 50% more screen time than the rest of the eight main cast members.

UTA's agent Abby Glusker shares a rare surname with Riot's original law firm (Greenberg Glusker LLP).

Casting Director David Lyerly worked extensively with UTA-represented talent.

UTA Senior Agent Kathy Cavaiola specialized in animation and literary talent, casting Mia and perhaps Miles who may also be linked to UTA, showing overlapping work with Arcane staffing beyond those listed.

Executive Producer Jane Chung Hoffacker later worked with Netflix/UTA pipelines and UTA is a main contributor of Netflix talent.

Executive Producer Thomas Vu collaborated professionally with UTA/CBG linked creatives on Riot Games properties.

5

PLAINTIFF'S COMPREHENSIVE ACCESS, DISSEMINATION, AND MISAPPROPRIATION ARGUMENT

## VI. JANE CHUNG HOFFACKER'S ADMISSIONS

Jane Chung Hoffacker admitted in interviews:

She reviewed external script submissions.

She recruited writing talent based on external submissions.

She influenced the composition of the writers' room for Arcane with submitted manuscripts.

## VII. RIOT'S CONCEALMENT OF RELEVANT AGENCY CONNECTIONS

Riot repeatedly scrubbed references to UTA and CBG from Joint Rule 26(f) Report drafts making the Plaintiff rewrite them many times over.

Procedural concealment strengthens adverse inference that access routes were material.

6

## VIII. PATTERN OF SUSPECTED MISAPPROPRIATIONS

Plaintiff has identified other instances where:

Works submitted to CBG appeared in modified form in Netflix and Marvel projects.

Represented by Jonny Geller, Lisa Jewell's Marvel novel Breaking the Dark included near-verbatim elements from Plaintiff's creative catalog and this is under review. This includes elements from "After the Black" which literally has the same meaning as Breaking the Dark.

Demonstrates a pattern of wrongful appropriation by entities with access.

## IX. STRATEGIC ACCESS TO PLAINTIFF'S FULL CREATIVE UNIVERSE

Jonny Geller is the only person who accessed the full map of M.W. Wolf's planned fictional universe.

Access to Bloodborg = access to decades of trauma-writing, interconnected plots, characters, and future works.

7

PLAINTIFF'S COMPREHENSIVE ACCESS, DISSEMINATION, AND MISAPPROPRIATION ARGUMENT

## X. BLOODBORG AS CORE TO TRAUMA MEGAVERSE

Bloodborg is not an isolated book but an integral node in an interconnected fictional multiverse.

Access to Bloodborg provided Riot a roadmap to Plaintiff's entire creative architecture and more of it is being infringed upon.

## XI. WIDESPREAD DISSEMINATION ACROSS RELEVANT INDUSTRIES

Submissions targeted precisely at Riot's sectors (gaming, animation, television).

Public portals, agent submissions, and industry overlap confirm reasonable exposure.

## XII. RIOT'S TIMELINE MANIPULATIONS AND PROCEDURAL MISCONDUCT

Riot fabricated false limitations on portal submissions ("150-word limit" defense).

Riot misrepresented the timeline of Arcane's development to obscure access.

Riot suppressed disclosure of material relationships in filings.

Riot has refused to disclose these relationships in discovery.

8

PLAINTIFF'S COMPREHENSIVE ACCESS, DISSEMINATION, AND MISAPPROPRIATION ARGUMENT

## XIII. RIOT'S PRIVACY POLICY CONFIRMING COLLECTION AND SHARING OF SUBMISSIONS

Riot's Privacy Policy (April 3, 2019) confirms:

Riot collects and stores all submitted user content.

Riot internally disseminates submissions across divisions.

No restrictions on file size or character limits for submissions.

## XIV. RIOT'S TERMS OF USE CONFIRMING UNLIMITED LICENSE OVER SUBMISSIONS

Riot's Terms of Use grant Riot a worldwide, perpetual, irrevocable, royalty-free license to:

Use, modify, create derivative works from, and commercially exploit user-submitted materials.

Accept unsolicited ideas and use them without compensation.

## XV. INTERNET ARCHIVE DISCLAIMS ACCURACY, UNDERMINING RIOT'S RELIANCE ON WAYBACK MACHINE EVIDENCE

The Internet Archive (Wayback Machine) explicitly disclaims responsibility for the accuracy, completeness, or currency of archived materials.

PLAINTIFF'S COMPREHENSIVE ACCESS, DISSEMINATION, AND MISAPPROPRIATION ARGUMENT

Materials hosted on the Archive are intended solely for research and scholarship purposes, not as certified evidence.

Content may be incomplete, outdated, manipulated, or otherwise unreliable.

Riot's reliance on unauthenticated Wayback Machine snapshots to assert portal functionality is factually and legally improper.

The settlement Judge questioned none of this but attempted to pressure the Plaintiff into dropping the complaints.


**XVI. REQUESTS FOR ADMISSION TO DEFENDANT RIOT GAMES**

Plaintiff respectfully submits the following Requests for Admission to Defendant Riot Games:

Admit that Hailee Steinfeld, who voiced "Vi" in Arcane, was represented by United Talent Agency (UTA) at the time of her engagement.

Admit that Ella Purnell, who voiced "Jinx" in Arcane, was represented by Curtis Brown Group at the time of her engagement.

Admit that Katie Leung, who voiced "Caitlyn" in Arcane, was represented by Curtis Brown Group at the time of her engagement.

Admit that Harry Lloyd, who voiced "Viktor" in Arcane, was represented by Curtis Brown Group at the time of his engagement.

Admit that Jason Spisak, who voiced "Silco" in Arcane, was represented by United Talent Agency (UTA) at the time of his engagement.

PLAINTIFF'S COMPREHENSIVE ACCESS, DISSEMINATION, AND MISAPPROPRIATION ARGUMENT

Admit that Amanda Overton, an executive story editor and writer for Arcane, was represented by United Talent Agency (UTA) at the time of her engagement.

Admit that Ash Brannon, a co-executive producer and writer for Arcane, was represented by United Talent Agency (UTA).

Admit that David Lyerly, a casting director for Arcane, regularly worked with and cast United Talent Agency (UTA) clients for voice roles in animation projects including Arcane.

Admit that Kathy Cavaiola, a senior agent at United Talent Agency (UTA), specialized in representing animation and screenwriting talent during the development of Arcane.

Admit that Meredith Layne, casting director for Arcane, regularly cast United Talent Agency (UTA) clients for animated projects contemporaneous with Arcane.

Admit that Jane Chung Hoffacker, executive producer for Arcane, collaborated professionally with Netflix and United Talent Agency (UTA) affiliated talent during the development and promotion of Arcane.

Admit that Thomas Vu, executive producer for Arcane, worked professionally with individuals represented by United Talent Agency (UTA) and Curtis Brown Group during the development of Arcane.

Admit that Riot Games were receiving unsolicited manuscripts and reviewing them in the writer's room to build Arcane.

Admit that Riot had access to Bloodborg.

Admit that Riot received manuscripts from UTA or Curtis Brown Group for Arcane.

Admit that Riot engaged in quid-pro-quo deals with listed entities.

PLAINTIFF'S COMPREHENSIVE ACCESS, DISSEMINATION, AND MISAPPROPRIATION ARGUMENT

## XVIII. NOTICE OF LODGING EXHIBITS A, B AND C

Plaintiff hereby provides notice of lodging the following exhibits in support of the Access Argument and Requests for Admission:

Exhibit A- CONFIRMED INDUSTRY CONNECTIONS TABLE

Confirms UTA and CGB's overwhelming and undeniable monopoly of talent involved in Arcane and main "Writer" Overton used to confer the manuscript.

Exhibit B: Riot Games Privacy Policy and Terms of Use, effective April 3, 2019.

Confirms that Riot Games collects, stores, and internally shares submitted content without any express limitations on character count or file size.

Confirms Riot's claimed rights to modify, create derivative works from, and commercially exploit user-submitted materials.

Exhibit C: Internet Archive (Wayback Machine) Terms of Use.

Disclaims accuracy, completeness, or currency of archived materials.

Clarifies that the Wayback Machine is intended solely for research and scholarship, not evidentiary authentication.

Plaintiff respectfully submits these exhibits to assist the Court in evaluating the issues of access, authenticity of evidence, and the procedural fairness of the proceedings to date.

PLAINTIFF'S COMPREHENSIVE ACCESS, DISSEMINATION, AND MISAPPROPRIATION ARGUMENT

**CONCLUSION: ACCESS, MOTIVE, OPPORTUNITY, AND IMPROPER USE ARE CLEAR**

Plaintiff has established:

Access through multiple clear channels;

Motive via agency mergers, content pipeline needs, and profit incentives;

Opportunity based on submissions, portal policies, and industry practices;

Evidence of Misappropriation based on subsequent thematic overlaps and procedural misconduct.

Accordingly, Plaintiff respectfully requests that the Court recognize the extensive circumstantial and documentary evidence of access, and reject Riot's defenses based on factual and procedural misrepresentations.

13

PLAINTIFF'S COMPREHENSIVE ACCESS, DISSEMINATION, AND MISAPPROPRIATION ARGUMENT

## EXHIBIT A - CONFIRMED INDUSTRY CONNECTIONS TABLE

| NAME | ROLE IN ARCANE | CONNECTION |
|------|----------------|------------|
| **HAILEE STEINFELD** | Voiced Vi | UTA Client |
| **ELLA PURNELL** | Voiced Jinx/Older Powder | Curtis Brown Group Client |
| **KATIE LEUNG** | Voiced Caitlyn | Curtis Brown Group Client |
| **HARRY LLOYD** | Voiced Viktor | Curtis Brown Group Client |
| **JASON SPISAK** | Voiced Silco | UTA Client |
| **AMANDA OVERTON** | Executive Story Editor, Writer | UTA Represented |
| **ASH BRANNON** | Co-Executive Producer, Writer | UTA Client (Deadline, Variety, IMDb Pro) |
| **DAVID LYERLY** | Casting Director | Frequent Casting from UTA Talent Pool (IMDb Pro, Animation Magazine Interviews) |
| **KATHY CAVAIOLA** | UTA Senior Literary Agent | UTA Agent specializing in animation/screenwriting (UTA Staff Listings, LinkedIn) |
| **MEREDITH LAYNE** | Animation Casting Director | Frequent Casting of UTA Talent (IMDb Pro, Animation World Network) |
| **JANE CHUNG HOFFACKER** | Executive Producer | Professional Overlap with UTA/Netflix Talent (Animation Magazine, Riot/Netflix Projects) |
| **THOMAS VU** | Executive Producer | Professional Overlap with UTA/CBG Networks (GamesBeat Interviews, Riot Productions) |

14

PLAINTIFF'S COMPREHENSIVE ACCESS, DISSEMINATION, AND MISAPPROPRIATION ARGUMENT

**EXHIBIT B - Riot Games Privacy Policy and Terms of Use, effective April 3, 2019.**

*Exhibit B is 32 pages long, so it has been filed as an attachment.*

PLAINTIFF'S COMPREHENSIVE ACCESS, DISSEMINATION, AND MISAPPROPRIATION ARGUMENT

**Exhibit C: Internet Archive (Wayback Machine) Terms of Use.**

Internet Archive's Terms of Use, Privacy Policy, and Copyright Policy

Terms of Use 31 Dec 2014

This terms of use agreement (the "Agreement") governs your use of the collection of Web pages and other digital content (the "Collections") available through the Internet Archive (the "Archive"). When accessing an archived page, you will be presented with the terms of use agreement. If you do not agree to these terms, please do not use the Archive's Collections or its Web site (the "Site").

Access to the Archive's Collections is provided at no cost to you and is granted for scholarship and research purposes only. The Archive, at its sole discretion, may provide you with a password to access certain Collections, provided that you complete any required application process and provide accurate information in your application. You may use your password only to access the Collections in ways consistent with this Agreement — no other access to or use of the Site, the Collections, or the Archive's services is authorized. You agree not to interfere with the work of other users or Archive personnel, servers, or resources. Further, you agree not to recirculate your password to other people or organizations. Please report any unauthorized use of your password promptly to info@archive.org. You acknowledge that you have read and understood the Archive's Privacy Policy and agree that the Archive may collect, use, and distribute information pursuant to that policy. If you provide any content to the Archive, you grant the Archive a nonexclusive, royalty-free right to use that content.

Some of the content available through the Archive may be governed by local, national, and/or international laws and regulations, and your use of such content is solely at your

PLAINTIFF'S COMPREHENSIVE ACCESS, DISSEMINATION, AND MISAPPROPRIATION ARGUMENT

own risk. You agree to abide by all applicable laws and regulations, including intellectual property laws, in connection with your use of the Archive. In particular, you certify that your use of any part of the Archive's Collections will be limited to noninfringing or fair use under copyright law. If a Creative Commons or other license has been declared for particular material on the Archive, to the extent you trust the declaration and declarer (which is rarely the Internet Archive), you may use the content according to the terms and conditions of the applicable license. In using the Archive's site, Collections, and/or services, you further agree (a) not to violate anyone's rights of privacy, (b) not to act in any way that might give rise to civil or criminal liability, (c) not to use or attempt to use another person's password, (d) not to collect or store personal data about anyone, (e) not to infringe any copyright, trademark, patent, or other proprietary rights of any person, (f) not to transmit or facilitate the transmission of unsolicited email ("spam"), (g) not to harass, threaten, or otherwise annoy anyone, and (h) not to act in any way that might be harmful to minors, including, without limitation, transmitting or facilitating the transmission of child pornography, which is prohibited by federal law and may be reported to the authorities should it be discovered by the Archive.

You agree that we may contact you from time to time with surveys or other questions regarding your opinions about and uses of the Archive, as well as with information we believe may be of interest to you. We encourage you to respond to these surveys because we value your input, which will assist us in improving the Archive. In addition, we request that, according to standard academic practice, if you use the Archive's Collections for any research that results in an article, a book, or other publication, you list the Archive as a resource in your bibliography.

17

PLAINTIFF'S COMPREHENSIVE ACCESS, DISSEMINATION, AND MISAPPROPRIATION ARGUMENT

While we collect publicly available Internet documents, sometimes authors and publishers express a desire for their documents not to be included in the Collections (by tagging a file for robot exclusion or by contacting us or the original crawler group). If the author or publisher of some part of the Archive does not want his or her work in our Collections, then we may remove that portion of the Collections without notice.

The Archive may immediately terminate this Agreement at its sole discretion at any time upon written notice (including via email) to you. Upon termination, you agree that the Archive may immediately deactivate any password it has issued to you and bar you from accessing the Collections or the Site.

The Archive may modify this Agreement from time to time, and your continued use of the Collections and/or the Site constitutes your acceptance of any and all modifications. The Archive will attempt to notify you of substantial modifications via the email address that you have registered with us, if any.

Because the content of the Collections comes from around the world and from many different sectors, the Collections may contain information that might be deemed offensive, disturbing, pornographic, racist, sexist, bizarre, misleading, fraudulent, or otherwise objectionable. The Archive does not endorse or sponsor any content in the Collections, nor does it guarantee or warrant that the content available in the Collections is accurate, complete, noninfringing, or legally accessible in your jurisdiction, and you agree that you are solely responsible for abiding by all laws and regulations that may be applicable to the viewing of the content. In addition, the Collections are provided to you on an as-is and as-available basis. You agree that your use of the Site and the Collections is at your sole risk. You understand and agree

18

PLAINTIFF'S COMPREHENSIVE ACCESS, DISSEMINATION, AND MISAPPROPRIATION ARGUMENT

that the Archive makes no warranty or representation regarding the accuracy, currency, completeness, reliability, or usefulness of the content in the Collections, that the Site or the Collections will meet your requirements, that access to the Collections will be uninterrupted, timely, secure, or error free, or that defects, if any, will be corrected. We make no warranty of any kind, either express or implied.

You agree to indemnify and hold harmless the Internet Archive and its parents, subsidiaries, affiliates, agents, officers, directors, and employees from and against any and all liability, loss, claims, damages, costs, and/or actions (including attorneys' fees) arising from your use of the Archive's services, the site, or the Collections. You agree that this Agreement is governed by California law and that any suit arising from this Agreement will be brought in San Francisco, California, and you further agree that on the election and reasonable notice of either party any litigation shall be referred to arbitration pursuant to the California Code of Civil Procedure, §§1280 et seq. In addition, you agree that should any provision in the Agreement be found invalid, unlawful, or unenforceable, that provision shall not affect the validity or enforceability of the remaining provisions.

Under no circumstances, including, without limitation, negligence, shall the Archive or its parents, affiliates, officers, employees, or agents be responsible for any indirect, incidental, special, or consequential damages arising from or in connection with the use of or the inability to use the Site or the Collections, or any content contained on the Site or in the Collections, or resulting from unauthorized access to the Collections or your transmissions of data, including, without limitation, damages for loss of profits, use, data, or other intangibles, even if the Archive has been advised of the possibility of such damages. Some jurisdictions do

PLAINTIFF'S COMPREHENSIVE ACCESS, DISSEMINATION, AND MISAPPROPRIATION ARGUMENT

not allow the limitation or exclusion of liability for incidental or consequential damages, so some of the above may not apply to you.

This Agreement, the Privacy Policy, and other policies posted on the Site constitute the full and complete agreement between you and the Archive and are not intended to inure to third-party beneficiaries.

We welcome your input. Please contact us with any comments or questions at info@archive.org.

Privacy Policy 10 March 2001

The Internet Archive (the "Archive") is committed to making its constantly growing collection of Web pages and other forms of digital content (the "Collections") freely available to researchers, historians, scholars, and others ("Researchers") for purposes of benefit to the public. The Archive offers access to some of its Collections mainly by allowing Researchers to access its Unix machines. This open approach is somewhat like the situation in a public library, where staff and patrons might see who else was in the library and a bit of what they were working on. When Researchers using the Collections log on to the same Unix machine using different accounts, some sharing of information may take place. While the Archive endeavors to enforce its Terms of Use and maintain standard computer security, it is important for both those who visit the site ("Visitors") and Researchers (collectively, "Users") to be aware of the open nature of the Archive.

The Archive may make changes to this policy from time to time and will notify you of such changes by posting an updated date in the Terms, Privacy, and Copyright link at the bottom the home page of the Archive's Web site (the "Site"). Your continued use of the Site

PLAINTIFF'S COMPREHENSIVE ACCESS, DISSEMINATION, AND MISAPPROPRIATION ARGUMENT

and/or the Collections constitutes your acceptance of any changes to the Privacy Policy concerning, but not limited to, both previously and prospectively collected information.

What Personal Information May the Archive Have on Its Computers and Systems?

Because the Archive uses standard Web logging in its Web servers, our Web server may automatically recognize the domain name of each Visitor, each Visitor's IP address, what Web page the Visitor requests, and the time of the request, along with a variety of information supplied by the visitor's browser. See www.microsoft.com and www.netscape.com for information about the Microsoft Internet Explorer and Netscape Navigator browsers, and see www.apache.org for details about Web logs.

In addition, the Archive may collect the email addresses and messages of those who communicate with it via email or who enter email addresses in forms.

The Archive may collect personally identifying information when a Researcher registers for access to the Collections, including the Researcher's name, address, telephone number, and email address, and the Researcher's proposal for using the Collections.

The Archive may use "cookies" to track Users' activities on the Site and in the Collections. Cookies are small files that a server transfers to the hard drive of someone who visits a site and that the server can access when the person returns to the site.

The primary sources of content for the Collections are publicly accessible Web pages that were collected and donated by third parties, but the Archive will expand on such sources through its own collection activities. For instructions on removing a particular set of

PLAINTIFF'S COMPREHENSIVE ACCESS, DISSEMINATION, AND MISAPPROPRIATION ARGUMENT

pages currently included in the Collections, please see our policies and procedures for page removal.

The communications between you and the Archive may pass through many machines, operating systems, programs, browsers, Web servers, networks, routers, Ethernet switches, Internet service providers, proxy servers, intranets, the public phone system, or other devices (collectively, "Devices") on your premises, at the Archive, and in between. Some of these Devices create logs of activities that are recorded on computer systems.

What Might the Internet Archive Do With the Information on Its Computers?

The Archive has no present intention to charge for access to the Collections. The Archive may transfer the information on its machines, including personally identifying information, into the Collections. The Collections are made available to researchers and may be made available on the Site, or provided to third parties, for any use, without limitation. For instance, parts of the Collections are now in the collections of the Library of Congress and the Smithsonian Institution.

Advances in data mining technology may make it possible to discover more personally identifiable information or profiles in the Collections.

The Archive may disclose any information it collects from Users if the Archive believes in good faith that such action is reasonably necessary to enforce its Terms of Use or other policies, to comply with the law, to comply with legal process, to operate its systems properly, or to protect the rights or property of itself, its Users, or others.

PLAINTIFF'S COMPREHENSIVE ACCESS, DISSEMINATION, AND MISAPPROPRIATION ARGUMENT

It is possible that the computers at the Archive could become compromised by others and that the information on the Archive's computers could be collected and disseminated without the knowledge or consent of the Archive. While the Archive endeavors to block "crackers" from breaking into its machines, the Archive is not responsible or liable for any such unauthorized uses of the Archive or its data.

How to Update Researcher Registration Information

Researchers can help the Archive maintain the accuracy of their information by notifying the Archive of any changes in their address, title, phone number, or email address. Contact the Archive by email at info@archive.org to see, update, or delete your information.

Copyright Policy 10 March 2001

The Internet Archive respects the intellectual property rights and other proprietary rights of others. The Internet Archive may, in appropriate circumstances and at its discretion, remove certain content or disable access to content that appears to infringe the copyright or other intellectual property rights of others. If you believe that your copyright has been violated by material available through the Internet Archive, please provide the Internet Archive Copyright Agent with the following information:

Identification of the copyrighted work that you claim has been infringed;

An exact description of where the material about which you complain is located within the Internet Archive collections;

Your address, telephone number, and email address;

23

PLAINTIFF'S COMPREHENSIVE ACCESS, DISSEMINATION, AND MISAPPROPRIATION ARGUMENT

A statement by you that you have a good-faith belief that the disputed use is not authorized by the copyright owner, its agent, or the law;

A statement by you, made under penalty of perjury, that the above information in your notice is accurate and that you are the owner of the copyright interest involved or are authorized to act on behalf of that owner;and

Your electronic or physical signature.

The Internet Archive Copyright Agent can be reached as follows:

Internet Archive Copyright Agent

Internet Archive

300 Funston Ave

San Francisco, CA 94118

Phone: 415-561-6767

Email: info@archive.org

For More Information

If you have any questions or comments regarding these terms and policies or the Archive's data collection practices, please contact the Archive at info@archive.org or Internet Archive, 300 Funston Ave., San Francisco, CA 94118, phone 415-561-6767.

PLAINTIFF'S COMPREHENSIVE ACCESS, DISSEMINATION, AND MISAPPROPRIATION ARGUMENT

**Declaration of Authenticity:**

I, Marc Wolstenholme, declare under penalty of perjury that the statements made are true and accurate

Executed on April 26, 2025, in Coventry, England.

Respectfully submitted,

Signature:   *M.WOLSTENHOLME.*

Marc Wolstenholme

Plaintiff in Pro Per

5 Shetland Close

Coventry, England CV5 7LS

marc@mwwolf-fiction.co.uk

25

PLAINTIFF'S COMPREHENSIVE ACCESS, DISSEMINATION, AND MISAPPROPRIATION ARGUMENT