Marc Wolstenholme
5 Shetland Close
Coventry, England CV5 7LS
Telephone: 044 7827964404
Email: marc@mwwolf-fiction.co.uk
Plaintiff in Pro Per

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARC WOLSTENHOLME,<br>　　　　　Plaintiff,<br>vs.<br>RIOT GAMES, INC.,<br>　　　　　Defendant | CASE NO. 2:25-CV-00053-FMO-BFM HON.<br><br>*Hon. Fernando M. Olguin*<br><br>DECLARATION OF MARC WOLSTENHOLME<br><br>SUMMARY OF INDUSTRY CONNECTIONS AND ACCESS TO PLAINTIFF'S MANUSCRIPT IN SUPPORT OF ACCESS ARGUMENT. |

Dated this: May 02, 2025

*M.WOLSTENHOLME.*
_____
[MARC WOLSTENHOLME]

SUMMARY OF INDUSTRY CONNECTIONS AND ACCESS TO PLAINTIFF'S MANUSCRIPT IN SUPPORT

OF ACCESS ARGUMENT.

**Table of Contents**

I. Table of Authorities

II. Introduction & Filing Context

III. Summary of Industry Connections and Access to Plaintiff's Manuscript

IV. Formal Merger Between United Talent Agency (UTA) and Curtis Brown

Group (CBG)

V. Legal Context for CBG & UTA Argument

VI. Additional Routes of Access

VII. Rebutting the "Commercial Success" Misconception

VIII. Legal Framework Supporting Inference of Access

IX. Conclusion

Declaration of Authenticity

2

SUMMARY OF INDUSTRY CONNECTIONS AND ACCESS TO PLAINTIFF'S MANUSCRIPT IN SUPPORT

OF ACCESS ARGUMENT.

**Table of Authorities**

Three Boys Music Corp. v. Bolton, 212 F.3d 477 (9th Cir. 2000)

    Access may be established by evidence that a work was widely disseminated.

Art Attacks Ink, LLC v. MGA Ent., Inc., 581 F.3d 1138 (9th Cir. 2009)

    Access established by showing opportunity to view or copy the work.

Towler v. Sayles, 76 F.3d 579 (4th Cir. 1996)

    Access may be inferred through a chain of intermediaries.

Gaste v. Kaiserman, 863 F.2d 1061 (2d Cir. 1988)

    Circumstantial evidence and industry relationships can prove access.

Community for Creative Non-Violence v. Reid, 490 U.S. 730 (1989)

    Substance-over-form doctrine applies to creative control and authorship.

Trandes Corp. v. Guy F. Atkinson Co., 996 F.2d 655 (4th Cir. 1993)

    Intellectual property is a valuable business asset in corporate valuation.

Tumey v. Ohio, 273 U.S. 510 (1927)

    Due process requires impartial decision-makers.

In re Murchison, 349 U.S. 133 (1955)

    Impartiality of the judiciary is fundamental to due process.

Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009)

    A high probability of bias violates due process.

Liteky v. United States, 510 U.S. 540 (1994)

    Deep-seated favoritism or antagonism may support disqualification.

3

SUMMARY OF INDUSTRY CONNECTIONS AND ACCESS TO PLAINTIFF'S MANUSCRIPT IN SUPPORT OF ACCESS ARGUMENT.

## I.    INTRODUCTION & FILING CONTEXT

This submission supplements and supports Plaintiff's prior filings concerning access, including but not limited to:

Plaintiff's Second Amended Complaint (Dkt. 63);

Notice of Lodging of Exhibits A–H in Support of Plaintiff's Comprehensive Access, Dissemination, and Misappropriation Argument (Dkt. 118); and

Declaration in Support of Opposition to Defendant's Motion to Dismiss and Motion to Strike Access Allegations (Dkt. 85, 108).

Together with these filings, this document forms a central part of the Plaintiff's prima facie showing of access under well-established copyright law. Courts have repeatedly held that access may be established through multiple independent or circumstantial routes, including:

Dissemination to relevant industry channels and agents (Art Attacks Ink, LLC v. MGA Ent., Inc., 581 F.3d 1138, 1143 (9th Cir. 2009)),

Submission to entities with ties to the defendant (Towler v. Sayles, 76 F.3d 579 (4th Cir. 1996)), and

Wide dissemination alone (Three Boys Music Corp. v. Bolton, 212 F.3d 477, 483 (9th Cir. 2000)).

What follows is a focused elaboration on one such access route: through a highly interconnected web of talent agencies and producers known to have been involved in the development of Arcane, and who also had access to Plaintiff's submitted manuscript Bloodborg.

4

SUMMARY OF INDUSTRY CONNECTIONS AND ACCESS TO PLAINTIFF'S MANUSCRIPT IN SUPPORT OF ACCESS ARGUMENT.

## II.    SUMMARY OF INDUSTRY CONNECTIONS AND ACCESS TO PLAINTIFF'S MANUSCRIPT

At the relevant time, Curtis Brown Group (CBG) and United Talent Agency (UTA) were closely interconnected, going through a merger and strategic partnership, which was formally announced in June 2022. Felicity Blunt (senior literary agent at CBG) and Jonny Geller (Chair of CBG) worked directly with UTA leadership, creating an integrated network between two of the most powerful agencies in publishing, television, and film. UTA is one of the biggest contributors of talent to Netflix where arcane and much of the Plaintiff's work has been distributed. The Netflix deal came in very late in the process, after CBG and UTA's web of involvement, content, manuscripts dissemination, and contacts were established.

The Magistrate Judge's suggestion that access is negated by the formal timing of the UTA-CBG merger ignores well-settled case law holding that access may be inferred through pre-merger collaboration, shared representation, and industry overlap.

See Towler v. Sayles, 76 F.3d at 583–84 (access may be shown through a chain of events via intermediaries); Gaste v. Kaiserman, 863 F.2d at 1067 (access inferred through close working relationships in the industry).

At the relevant time, even prior to formal consolidation, UTA and CBG were engaged in active joint representation of talent, project development, and cross-media collaboration, all of which created a reasonable opportunity for the Plaintiff's manuscript to reach individuals involved in Arcane's creation.

SUMMARY OF INDUSTRY CONNECTIONS AND ACCESS TO PLAINTIFF'S MANUSCRIPT IN SUPPORT OF ACCESS ARGUMENT.

The law does not require "actual viewing" or formal acquisition, only a reasonable possibility of access, which Plaintiff has shown through agency submissions, overlapping representation, and widely established working relationships between CBG, UTA, and Netflix-affiliated talent.

CBG and UTA together represented key figures directly involved in the development and production of Arcane, including Amanda Overton, an executive producer and writer on Arcane, and it is confirmed that she came with manuscripts from UTA, as well as at least six of the principal talent associated with the series, accounting for more than 50% of the total screen time. UTA and Jonny Geller also maintained longstanding representation relationships with Netflix executives and creators, providing additional strategic access to the Arcane project.

Notably, CBG publicly promoted Arcane on its Instagram and other media channels, demonstrating a direct public tie to the series' launch.

Separately, Riot Games executives, including Alex Yee and Jane Chung, have made public statements indicating that Riot routinely reviewed unsolicited manuscripts, ideas, and materials submitted through various open and partner-affiliated portals to build Arcane. Evidence indicates that at least one of the Arcane writers (Amber Overton) had submitted material through one of these channels and was represented by UTA (via Abby Glusker) during the development of Arcane.

In combination, this interconnected web of agency control, representation of key players, manuscript access pathways, and direct public promotion of Arcane creates

6

SUMMARY OF INDUSTRY CONNECTIONS AND ACCESS TO PLAINTIFF'S MANUSCRIPT IN SUPPORT
OF ACCESS ARGUMENT.

overwhelming circumstantial evidence of access to Plaintiff's manuscript, Bloodborg which will be shown to be correct via lawful discovery and not hiding, lying and manipulating of evidence and further obstructing discovery.

Additionally, Bloodborg's narrative events, characters, world-building structures, and thematic arcs are substantially similar to those depicted in Arcane, with only minor differences such as the final "rocket" scene.

This overwhelming showing of access, together with the substantial similarities, supports Plaintiff's claims of infringement and rebuts any assertion that Arcane was developed independently.

Moreover, The Plaintiff has shown that every time he has been told "Facts" or been shown "Evidence" he has possessed evidence to show that what is being presented is falsified and believes he can continue doing this until Jury trial and thereafter.

Without an impartial Judge and criminal forensic help, a fair and honest discovery process is impossible, and the evidence will continue to be manipulated and hidden against a litigant with massive disadvantages under an unethical litigation environment produced by Riot Games, it's cult and it's Legal Team's antics.

7

SUMMARY OF INDUSTRY CONNECTIONS AND ACCESS TO PLAINTIFF'S MANUSCRIPT IN SUPPORT

OF ACCESS ARGUMENT.

### III.    FORMAL MERGER BETWEEN UNITED TALENT AGENCY (UTA) AND CURTIS BROWN GROUP (CBG)

While the formal merger between United Talent Agency (UTA) and Curtis Brown Group (CBG) may have been completed later (just six months after Arcane's release), strategic collaboration, manuscript sharing, co-representation of clints, and project alignment occurred long before any formal date.

As noted in Towler v. Sayles, courts recognize access through intermediaries and affiliated agencies, not just through direct submission or completed mergers. Furthermore, courts assess relationships based on substance over form (Reid, 490 U.S. 730), and recognize that mergers are negotiated over time, with joint planning and material sharing often preceding formal closings (United States v. Bazaarvoice, 2014 WL 203966).

Accordingly, Plaintiff has shown that the CBG/UTA web of access was functionally active at the relevant time and should be treated as such under the law.

8

SUMMARY OF INDUSTRY CONNECTIONS AND ACCESS TO PLAINTIFF'S MANUSCRIPT IN SUPPORT OF ACCESS ARGUMENT.

At the time of manuscript circulation, UTA and CBG were not only merging operationally, but also actively positioning themselves for strategic expansion. In such scenarios, unsolicited works and talent pipelines serve as soft assets, enhancing agency valuation and sweetening merger offers, especially in creative sectors where IP development pipelines are critical. Courts acknowledge that IP can function as a valuation multiplier or "deal asset" (Trandes, 996 F.2d at 659), and merger law reflects that intellectual and creative assets influence negotiation and deal closing. Plaintiff's manuscript, disseminated during this strategic window, was thus vulnerable to exploitation as a content asset, even absent a formal contract. Any claim that "access" post-dates the merger is legally and factually incorrect.

Moreover, Around the time of submission, the Plaintiff did receive a call from a person suspected of being named in these proceedings and being from CBG. The Plaintiff was facing hardship and personal things at the time, as evidenced in filings. Being from an unknown and protected number, the Plaintiff defensively answered the call, not in the politest manner.

The Plaintiff said, "who is this?"

The man, clearly not happy with the reception he received, said, "No, actually it's ok. Bye."

The Plaintiff later recognized the man's voice. Thus, it is likely that this man did reach out but didn't like the tone of the Plaintiff, so he put the phone down and sold the work anyway.

## 9

SUMMARY OF INDUSTRY CONNECTIONS AND ACCESS TO PLAINTIFF'S MANUSCRIPT IN SUPPORT OF ACCESS ARGUMENT.

## IV.    LEGAL CONTEXT FOR CBG & UTA ARGUMENT:

**1. Access may be inferred from a chain of connections, not just direct access.**

Courts routinely accept a "chain of events or dealings" theory of access when a reasonable possibility exists that the work was available to the alleged infringer via intermediaries, shared agents, or industry affiliations.

*Towler v. Sayles, 76 F.3d 579, 583–84 (4th Cir. 1996):*

"Access may be inferred when the plaintiff can show a particular chain of events between the plaintiff's work and the defendant's access to that work, such as through dealings with intermediaries who had access to the work."

**2. Timing of formal business relationships is not dispositive.**

Access is based on opportunity, not on whether a formal partnership or merger existed at a precise moment. This argument focuses on a functional web of collaboration — joint dealings, shared clients, joint projects — which can establish access even if formal merger documentation came later.

10

SUMMARY OF INDUSTRY CONNECTIONS AND ACCESS TO PLAINTIFF'S MANUSCRIPT IN SUPPORT

OF ACCESS ARGUMENT.

Gaste v. Kaiserman, 863 F.2d 1061, 1067 (2d Cir. 1988):

"Plaintiff need not establish actual viewing of the work by the defendants; circumstantial evidence suffices. Such evidence may include a close working relationship between individuals in a position to access the work."

**3. Access through agencies and their agents is valid, even if the contact is indirect or the submission unsuccessful.**

In this case, the Plaintiff' has highlighted that the Bloodborg manuscript was submitted to agencies (CBG/UTA) that represented Arcane's talent and that maintained industry visibility and editorial sharing. Even if the manuscript wasn't picked up, access is satisfied if the people involved had a reasonable opportunity to review or pass on the material.

Art Attacks Ink, LLC v. MGA Ent., Inc., 581 F.3d 1138, 1143 (9th Cir. 2009):

"A plaintiff may establish access by showing that the defendant had an opportunity to view or to copy plaintiff's work."

**4. Substance Over Form Doctrine (Federal Common Law & Copyright Context)**

Courts look to substance over form, they examine the real nature of a relationship rather than the formal labels parties use. If two entities were acting as collaborators before the formal merger, that matters more than the technical merger date.

11

SUMMARY OF INDUSTRY CONNECTIONS AND ACCESS TO PLAINTIFF'S MANUSCRIPT IN SUPPORT OF ACCESS ARGUMENT.

Example:

"Courts are not bound by labels parties assign to relationships and will consider the realities of the relationship to determine the existence of access or control."

— See Community for Creative Non-Violence v. Reid, 490 U.S. 730 (1989), analyzing the real working relationship to determine authorship under copyright law.

### 5. "Chain of Access" Does Not Require Formal Affiliation

Courts recognize chains of access through industry relationships, collaborators, and agents — even when parties are not formally merged.

Towler v. Sayles, 76 F.3d 579 (4th Cir. 1996):

"Access may be inferred when the plaintiff can show a particular chain of events... such as through dealings with intermediaries who had access to the work."

UTA and CBG were already sharing clients, co-representing writers, and cross-promoting material.

### 6. Antitrust and M&A Law Acknowledges Pre-Merger Collaboration

Even outside of copyright law, antitrust and corporate law often discuss pre-merger coordination, NDAs, term sheets, joint planning, etc. These show that: Mergers are often negotiated over months or years. Access to sensitive materials (e.g. manuscripts) may occur early in the process, especially in the entertainment industry.

12

SUMMARY OF INDUSTRY CONNECTIONS AND ACCESS TO PLAINTIFF'S MANUSCRIPT IN SUPPORT OF ACCESS ARGUMENT.

**7. Creative Works = Valued Assets in M&A**

Courts and regulators routinely acknowledge that intellectual property (IP) like manuscripts, scripts, and talent rosters are "intangible assets" used to boost acquisition value.

See: Trandes Corp. v. Guy F. Atkinson Co., 996 F.2d 655, 659 (4th Cir. 1993)

"Intellectual property and proprietary designs are valuable business assets…"

The Plaintiff argues that access to Bloodborg or similar original material — circulated through shared agency networks — could have been (was) presented as an "emerging project," "intellectual property pipeline," or "prospective content asset" used to enhance UTA/CBG's pitch.

**8. "Deal Sweeteners" Influence Valuation**

Example from securities and antitrust litigation: Courts have recognized that companies may leverage "content pipelines" or upcoming projects to justify higher valuation multiples or entice partners in merger talks. That means even circulated or "under consideration" manuscripts can become de facto assets, whether or not there's a contract.

SUMMARY OF INDUSTRY CONNECTIONS AND ACCESS TO PLAINTIFF'S MANUSCRIPT IN SUPPORT OF ACCESS ARGUMENT.

**9. Inflating Future Earnings via "Slates" or Talent/Story Pipelines**

This is common in entertainment M&A. Acquirers look at:

Active client rosters

Pending pitches, pilot scripts, development slates

Unproduced but "optionable" stories

The Bloodborg manuscript, passed via CBG → UTA → Arcane producers, could have been leveraged to present Arcane or Riot as having exclusive content development capability, thus inflating deal value and justifying the merger's timing.

14

SUMMARY OF INDUSTRY CONNECTIONS AND ACCESS TO PLAINTIFF'S MANUSCRIPT IN SUPPORT

OF ACCESS ARGUMENT.

## V.    ADDITIONAL ROUTES OF ACCESS

### 1. The Riot Forge Developer Submission Portal (Route B)

As established in Exhibits D–H of Plaintiff's filing (Dkt. 118), Riot Games publicly operated an open submission portal for developers and creatives. This portal:

Allowed for the upload of attachments (including longform documents);

Did not require credentials or a login to view submission guidelines or forms;

Explicitly invited pitches for creative tools, experiences, and stories;

Accepted long-form content;

Was still accessible and open as late as 2023, as shown by Plaintiff's test submission and corresponding support ticket response.

Plaintiff's submissions to this platform included the full Bloodborg manuscript or excerpts thereof. Riot's current denials regarding the operation and openness of this portal are contradicted by their own public-facing materials and support system evidence. Claims that this route is somehow irrelevant or nonexistent are provably false and reflect, at best, concealment and, at worst, spoliation of evidence.

15

SUMMARY OF INDUSTRY CONNECTIONS AND ACCESS TO PLAINTIFF'S MANUSCRIPT IN SUPPORT OF ACCESS ARGUMENT.

**2. Wide Dissemination via Literary Agencies (Route C)**

Plaintiff submitted his manuscript Bloodborg to over 100 literary agencies and industry-facing professionals, (with many more though portals) including UTA and Curtis Brown Group, both directly and through platforms such as QueryTracker and agency-specific forms.

It is legally well-established that dissemination of a work to relevant gatekeepers—literary agents, publishers, production companies—is sufficient to support access. See Art Attacks, 581 F.3d at 1143. These submissions, especially to individuals and firms demonstrably involved in Arcane's production, create a robust inference of access.

16

SUMMARY OF INDUSTRY CONNECTIONS AND ACCESS TO PLAINTIFF'S MANUSCRIPT IN SUPPORT

OF ACCESS ARGUMENT.

## VI.    REBUTTING THE "COMMERCIAL SUCCESS" MISCONCEPTION

Defendants and associated parties have repeatedly and incorrectly asserted that "widespread dissemination" requires commercial success to be valid. This is legally inaccurate and would, if accepted, render all aspiring or unpublished writers vulnerable to intellectual property theft.

As the Ninth Circuit held in Three Boys Music, 212 F.3d at 483:

"Access may be established by evidence that the plaintiff's work has been widely disseminated."

No threshold of critical acclaim or sales is required—only that the work was available to individuals with a reasonable possibility of providing it to the alleged infringer.

To hold otherwise would destroy protections for early-career authors and elevate infringers who prey on the "slush pile"—precisely the opposite of what copyright law intends.

17

SUMMARY OF INDUSTRY CONNECTIONS AND ACCESS TO PLAINTIFF'S MANUSCRIPT IN SUPPORT OF ACCESS ARGUMENT.

## VII.    LEGAL FRAMEWORK SUPPORTING INFERENCE OF ACCESS

Plaintiff respectfully submits the following authorities and principles in support of the argument that access to his manuscript Bloodborg can be reasonably inferred through a web of agency relationships, shared representation, and strategic industry dealings prior to and during the UTA–CBG merger. The legal framework does not require direct hand-to-hand transmission, nor does it require commercial success or formal merger dates to prove access under copyright law.

### 1. Access via a Chain of Intermediaries Is Well Established

"Access may be inferred when the plaintiff can show a particular chain of events between the plaintiff's work and the defendant's access to that work, such as through dealings with intermediaries who had access to the work."

— Towler v. Sayles, 76 F.3d 579, 583–84 (4th Cir. 1996)

This "chain of access" doctrine supports the inference that access may occur through shared agents (CBG/UTA), even if there is no single point of direct transmission.

### 2. Timing of Formal Mergers Is Not Dispositive

Access concerns opportunity and exposure, not technical corporate timelines.

18

SUMMARY OF INDUSTRY CONNECTIONS AND ACCESS TO PLAINTIFF'S MANUSCRIPT IN SUPPORT OF ACCESS ARGUMENT.

"Plaintiff need not establish actual viewing of the work by the defendants; circumstantial evidence suffices. Such evidence may include a close working relationship between individuals in a position to access the work."

— Gaste v. Kaiserman, 863 F.2d 1061, 1067 (2d Cir. 1988)

### 3. Indirect Submission Still Creates a Valid Opportunity to View

Plaintiff submitted to agencies connected to the project (CBG, UTA). Even if the manuscript wasn't picked up, the legal standard is reasonable opportunity to view:

"A plaintiff may establish access by showing that the defendant had an opportunity to view or to copy plaintiff's work."

— Art Attacks Ink, LLC v. MGA Ent., Inc., 581 F.3d 1138, 1143 (9th Cir. 2009)

### 4. Substance Over Form Doctrine Applies to Relationships and Timing

"Courts are not bound by labels parties assign to relationships and will consider the realities of the relationship to determine the existence of access or control."

— Community for Creative Non-Violence v. Reid, 490 U.S. 730 (1989)

The relationship between CBG and UTA—evidenced by overlapping representation, joint promotion of talent, and shared client slates—creates a functional web of access that preceded the merger.

19

SUMMARY OF INDUSTRY CONNECTIONS AND ACCESS TO PLAINTIFF'S MANUSCRIPT IN SUPPORT OF ACCESS ARGUMENT.

**5. Creative Works Are Material Assets in Merger Valuation**

"Intellectual property and proprietary designs are valuable business assets…"

— Trandes Corp. v. Guy F. Atkinson Co., 996 F.2d 655, 659 (4th Cir. 1993)

Courts acknowledge that IP pipelines—including unproduced manuscripts—may be presented as "deal sweeteners" to enhance firm valuation.

Entertainment mergers routinely factor in:

Client and content slates

Submitted or under-consideration IP

Development pipelines and unpublished works

Plaintiff's Bloodborg manuscript could have been part of such a pipeline, especially where connected agents (CBG/UTA) were known to co-market talent and package properties.

**6. Pre-Merger Dealings Still Support Inference of Access**

Even in antitrust and M&A contexts, pre-merger conduct—including access to sensitive materials and coordination—can be relevant and probative. In the entertainment industry, early sharing of IP between future affiliates is common and legally recognized as a basis for opportunity and access.

20

SUMMARY OF INDUSTRY CONNECTIONS AND ACCESS TO PLAINTIFF'S MANUSCRIPT IN SUPPORT

OF ACCESS ARGUMENT.

## VIII.    Conclusion

Plaintiff has demonstrated, through industry relationships, submission history, agency overlap, and publicly documented practices, that the manuscript Bloodborg was accessible to key individuals and entities involved in the development of Arcane. Whether through direct agency channels, open submission portals, or strategic collaboration preceding a formal merger, the evidence supports a compelling inference of access under well-established legal standards.

Importantly, Plaintiff has rebutted the flawed suggestion that access requires commercial success or hand-to-hand delivery. Copyright law protects aspiring authors as fully as published ones, and courts routinely recognize that access can arise through intermediaries, unsolicited submissions, and circumstantial evidence.

This submission, in combination with Plaintiff's Second Amended Complaint and supporting exhibits, establishes a prima facie case of access sufficient to defeat dismissal and proceed to discovery. Any further contest on this issue must be resolved through full evidentiary inquiry—not by striking or prematurely discarding claims at the pleading stage.

Accordingly, Plaintiff respectfully requests the Court take judicial notice of the access arguments and legal authority presented herein as part of the broader access and misappropriation framework already before the Court.

21

SUMMARY OF INDUSTRY CONNECTIONS AND ACCESS TO PLAINTIFF'S MANUSCRIPT IN SUPPORT OF ACCESS ARGUMENT.

**Declaration of Authenticity:**

I, Marc Wolstenholme, declare under penalty of perjury that the statements made are true and accurate

Executed on May 02, 2025, in Coventry, England.

Respectfully submitted,

Signature:  *M.WOLSTENHOLME.*

Marc Wolstenholme

Plaintiff in Pro Per

5 Shetland Close

Coventry, England CV5 7LS

marc@mwwolf-fiction.co.uk

22

SUMMARY OF INDUSTRY CONNECTIONS AND ACCESS TO PLAINTIFF'S MANUSCRIPT IN SUPPORT

OF ACCESS ARGUMENT.